Lawrence H. Nemirow
5242 Katella Ave., Suite 104
Los Alamitos, CA 90720-2820
Tel. (562) 799-1379
Fax. (562) 799-1377

*Pro Se* for the Estate of Helene S. Nemirow et al

**FILED**

NOV 1 3 2007

NOV 1 3 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

THE ESTATE OF HELENE S. )
NEMIROW; IRMA CARVER; )
MADELEINE KATES and )
LAWRENCE H. NEMIROW, as )
survivors of HELENE S. )
NEMIROW, deceased. )
)
            Plaintiffs, )
)
v )
)
MCKAY MCKINNON, M.D., THE )
UNIVERSITY OF CHICAGO )
HOSPITALS, an Illinois )
corporation; THE UNIVERSITY )
OF CHICAGO, an Illinois not-for- )
profit corporation; and )
DOES 1 through 50, Inclusive )
)
            Defendants. )

Civil Action No.

**COMPLAINT FOR:**

**MEDICAL MALPRACTICE WRONGFUL DEATH AND SURVIVAL**

**JURY TRIAL DEMANDED**

## 07CV6413
## JUDGE MAROVICH
## MAG. JUDGE NOLAN

## NATURE OF THE ACTION

1.   This action arises as a result of Medical Malpractice which led to the wrongful death of Helene Susan Nemirow.

## JURISDICTION AND VENUE

1

1    2.  This Court has subject matter jurisdiction pursuant to <u>28 U.S.C. § 1332 (a)</u>

2 as the suit involves a controversy between citizens of different states.

3    3.  Venue is properly laid in the Southern District of Illinois pursuant to

4 <u>28 U.S.C. § 1391 (a) (1)</u> and <u>28 U.S.C. § 1391 (a) (2)</u> in that at least one of the

5 defendants resides in this district, and a substantial part of the events or ommissions

6 giving rise to this claim occurred in this district.

7

8                        **PARTIES**

9

10    4.  LAWRENCE H. NEMIROW, the administrator of the Estate of Helene S.

11 Nemirow (hereafter "the deceased"), is duly appointed to act as administrator by the

12 State of New York, is the brother of and is at all times mentioned was a resident of the

13 State of California.

14    5.  Plaintiff IRMA CARVER, is the mother of the deceased, and at all times

15 mentioned was a resident of the State of Florida.

16    6.  Plaintiff MADELEINE KATES, is the sister of the deceased and at all times

17 mentioned was a resident of the State of New Jersey.

18    7.  Defendant MCKAY MCKINNON, M.D. (hereinafter "Dr. McKinnon", is

19 a licensed medical practitioner in the State of Illinois, and at all times mentioned,

20 maintained business and residence addresses in the Southern District of State of

21 Illinois.

22    8.   Defendant UNIVERSITY OF CHICAGO HOSPITALS (hereinafter

23 "Hospital", at all times mentioned was and is an Illinois corporation, operating in the

24 Southern District of the State of Illinois.

25    9.  Defendant UNIVERSITY OF CHICAGO (hereinafter "University"), at all

26 times mentioned was, and is, an Illinois not-for-profit corporation in the Southern

27 District of the State of Illinois.

28    10.  DOE Defendants 1 through 10, inclusive, are sued herein under fictitious

COMPLAINT FOR MEDICAL MALPRACTICE; WRONGFUL DEATH AND SURVIVAL

1   names. Plaintiff is informed and believes, and thereon alleges, that said DOE
2   Defendants are the officers, directors, employers, employees (including but not limited
3   to accountants and other consultants), principals, agents or other representatives of (or
4   acting on behalf of) one or more of the named Defendants, whose individual names
5   and capacities are not currently known to Plaintiff. When their true names and
6   capacities are ascertained, Plaintiff will amend this Complaint by inserting said true
7   names and capacities. Plaintiff is informed and believes, and thereon alleges, that each
8   of the fictitiously named DOE Defendants is in some way responsible for the breaches,
9   acts and occurrences herein alleged, and that Plaintiff's damages were proximately or
10  substantially caused by such DOE Defendants in addition to the named Defendants.

11          11.  Plaintiff is informed and believes, and thereon alleges, that all Defendants
12  herein, and their directors, officers, officials, managers and supervisors are vicariously
13  liable for the breaches, acts and omissions of any and all Defendants, named or DOE,
14  committed within the course and scope of their employment and/or agency, which
15  breaches, acts and omissions are fully set forth herein.

16          12.  Plaintiff is informed and believes, and thereon alleges, that at all times
17  during the breaches, acts and occurrences herein mentioned, each of the Defendants
18  (both named and DOE) was the partner, principal, agent, employer, employee, or other
19  representative of (or co-conspirator with) each of the remaining Defendants, and in
20  doing or failing to do the things herein alleged, was acting within the scope and course
21  of such partnership, agency, employment, conspiracy, or other legal relationship, and
22  with the permission, consent and/or ratification of said remaining Defendants.

23                      **BACKGROUND OF THE ALLEGATIONS**

24          13.  The deceased, Helene S. Nemirow, was 59 years old. Prior to receiving
25  medical treatment from the defendants, she was in good health. She went to defendant
26  McKinnon for plastic surgery to remove excess skin growth on her legs
27  and thighs.

28          14.  On or about July 18, 2006, the deceased presented herself to defendant

COMPLAINT FOR MEDICAL MALPRACTICE; WRONGFUL DEATH AND SURVIVAL

1  McKinnon for evaluation and plastic surgery, and defendant McKinnon accepted the
2  deceased as a patient for consideration.

3      15.  On or about July 19, 2006, the deceased  presented herself to defendant
4  Hospital for admission as a surgical candidate, and defendant Hospital accepted the
5  deceased as a patient.

6      16.  On or about July 22, 2006, defendant Hospital discharged the deceased to
7  Warren Barr Pavilion (hereafter "Pavilion") nursing home.

8      17.  On or about August 1, 2006, Pavilion discharged the deceased back to
9  defendant Hospital because the deceased had an elevated white blood cell count
10  caused by an infection. After twenty four hours in the emergency room at defendant
11  Hospital, defendant Hospital refused to readmit the deceased as a patient and on
12  August 2, 2006, the deceased presented herself to Lakeview nursing home (hereafter
13  "Lakeview") and  Lakeview accepted the deceased as a patient.

14      18.  On August 23, 2006 Lakeview discharged the deceased back to defendant
15  Hospital because the infection had worsened, and defendant Hospital readmitted
16  Helene as a patient.

17      19.  On September 14, 2006, the deceased died without ever leaving defendant
18  Hospital, from cardiac arrest. The death certificate states the cause of death was
19  "Chronic Infection of Hematoma".

20                        **CAUSES OF ACTION**

21      COUNT I:   MEDICAL MALPRACTICE/SURVIVAL ACTION AGAINST

22                      MCKAY MCKINNON, M.D.

23

24      20.  Plaintiffs reallege and incorporates herein by reference Paragraphs 1
25  through 19, as if fully set forth herein.

26      21.  There was a physician-patient relationship between the deceased and
27  defendant McKay McKinnon, M.D.

28      22.  In rendering medial treatment to the deceased, defendant McKay

4

1  McKinnon, M.D. departed from accepted standards of medical practice.

2      23.  McKay McKinnon, M.D., departed from accepted standards of medical
3  practice in that McKay McKinnon so roughly examined the excess skin tissue of the
4  deceased, after being cautioned against such a rough examination, so as to cause her
5  to develop a hematoma which eventually led to her death at the age of 59.

6      24.  McKay McKinnon, M.D., departed from accepted standards of medical
7  practice in that McKay McKinnon, M.D. and the residents and nurses and medical
8  staff reporting to him negligently failed to care for the deceased properly, including
9  failure to evacuate the hematoma as reasonable health professionals would have, so
10  that the deceased died from cardiac arrest and infection.

11      25.  McKay McKinnon, M.D., departed from accepted standards of medial
12  practice in that McKay McKinnon and the nurses and staff reporting to him discharged
13  Helene while she was running a temperature which caused her infection to worsen,
14  and refused to readmit the deceased to defendant Hospital even though the medical
15  staff's at defendants Pavilion and Lakeview recommended readmission because of the
16  deceased's spiking temperatures.

17      26.  McKay McKinnon, M.D., departed from accepted standards of medical
18  practice in that McKay McKinnon, M.D. and the residents and medical staff reporting
19  to him negligently overdosed the deceased with pain killers and other medications so
20  as to keep the deceased in a state of stupor during her Hospital stay.

21      27.  McKay McKinnon, M.D., departed from accepted standards of medical
22  practice in that McKay McKinnon, M.D. and the residents and medical staff reporting
23  to him failed to monitor the deceased's heart while she was under his care as a patient
24  and complained of chest pain.

25      28.  McKay McKinnon, M.D., departed from accepted standards of medical
26  practice in that McKay McKinnon failed to inform the deceased of the possible
27  consequences of the pain medications he was prescribing for the deceased, as
28  reasonable health professionals would have.

COMPLAINT FOR MEDICAL MALPRACTICE; WRONGFUL DEATH AND SURVIVAL

29.  One or more of McKay McKinnon's departure from accepted standards of medical practice, listed above were the proximate cause of the deceased's injuries and death.

30.  The deceased and the Plaintiffs were free of any wrongdoing that may have contributed to the deceased's injury and death.

31.   The deceased suffered injuries of a personal and pecuniary nature, including conscious physical pain and suffering and mental suffering prior to her death; and had she survived, she would have been entitled to bring a cause of action for such personal and pecuniary damages, and such action survived her.

32.   **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against McKay McKinnon, M.D. for the following:

(a)  Compensatory damages in an amount that exceeds $150,000.

(b)  Plaintiffs costs of this action; and

(c)  Such other and further relief as this Court deems just and appropriate.

COUNT II: MEDICAL MALPRACTICE/WRONGFUL DEATH ACTION
AGAINST MCKAY MCKINNON, M.D.

33.   Plaintiffs reallege and incorporates herein by reference Paragraphs 1 through 32, as if fully set forth herein.

33.   There was a physician-patient relationship between the deceased and defendant McKay McKinnon, M.D.

34.   In rendering medial treatment to the deceased, defendant McKay McKinnon, M.D. departed from accepted standards of medical practice.

35.  McKay McKinnon, M.D., departed from accepted standards of medical practice in that McKay McKinnon so roughly examined the excess skin tissue of the deceased, after being cautioned against such a rough examination, so as to cause the deceased to develop a hematoma which eventually led to the deceased's death at the age of 59.

6

36.  McKay McKinnon, M.D., departed from accepted standards of medical practice in that McKay McKinnon, M.D. and the residents and nurses and medical staff reporting to him negligently failed to care for the deceased properly, so that the deceased died from cardiac arrest and infection.

37  McKay McKinnon, M.D., departed from accepted standards of medial practice in that McKay McKinnon and the nurses and staff reporting to him discharged the deceased while she was running a temperature which caused her infection to worsen, and refused to readmit the deceased to defendant Hospital

38.  McKay McKinnon, M.D., departed from accepted standards of medical practice in that McKay McKinnon, M.D. and the residents and medical staff reporting to him negligently overdosed the deceased with pain killers and other medications so as to keep the deceased in a state of stupor during her Hospital stay.

39.  McKay McKinnon, M.D., departed from accepted standards of medical practice in that McKay McKinnon, M.D. and the residents and medical staff reporting to him failed to monitor the deceased's heart while she was under his care as a patient.

40.  McKay McKinnon, M.D., departed from accepted standards of medical practice in that McKay McKinnon failed to inform the deceased of the possible consequences of the pain medications he was prescribing for the deceased, as reasonable health professionals would have.

41.  One or mor of McKay McKinnon's departure from accepted standards of medical practice, listed above were the proximate cause of the deceased's injuries and death.

42.  The deceased and Plaintiffs were free of any wrongdoing that may have contributed to the deceased's injury and death.

43.  The deceased suffered injuries and infections causing her death, and left as her survivors her mother, Irma Carver, her sister, Madeleine Kates, and her brother, Lawrence Nemirow, all of whom have sustained pecuniary damages and loss as a result of the death of the deceased, including the loss of her love and companionship.

7

1    44.  **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 740

2  ILCS 180/0.01-2.2, commonly known as the Wrongful Death Act, and demands

3  judgment against McKay McKinnon for the following:

4  (a)  Compensatory damages in an amount that exceeds $150,000.

5  (b)  Plaintiffs costs of this action; and

6  (c)  Such other and further relief as this Court deems just and appropriate.

7                COUNT III: RES ISPA LOQUITOR/SURVIVAL ACTION
                        AGAINST MCKAY MCKINNON, M.D.

8

9    45.  Plaintiffs realleges and incorporates herein by reference Paragraphs 1

10  through 44, as if fully set forth herein.

11    46.  There was a physician-patient relationship between the deceased and

12  defendant McKinnon.

13    47.  The death of a 59 year patient following an examination and treatment for

14  a hematoma that developed following the examination does not ordinally occur in the

15  absence of negligence.

16    48.  The deceased's death was caused by an instrumentality or agency under the

17  exclusive management or control of defendant McKay McKinnon, M.D.

18    49.  The deceased's death occurred under circumstances indicating that it was

19  not due to any voluntary act or negligence on the deceased or the Plaintiffs part.

20    50.  The deceased suffered injuries of a personal and pecuniary nature,

21  including conscious physical pain and suffering and mental suffering prior to her

22  death, and had she survived, she would be entitled to bring a cause of action for such

23  personal and pecuniary damages, and such action survived her.

24    51.  **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 755

25  ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against

26  McKay McKinnon, M.D. for the following:

27  (a)  Compensatory damages in an amount that exceeds $150,000.

28  (b)  Plaintiffs costs of this action; and

1  (c)  Such other and further relief as this Court deems just and appropriate.

2  COUNT IV:   RES IPSA LOQUITOR/WRONGFUL DEATH ACTION
AGAINST MCKAY MCKINNON, M.S.

3

4  52.  Plaintiffs reallege and incorporates herein by reference Paragraphs 1

5  through 51, as if fully set forth herein.

6  53.  There was a physician-patient relationship between the deceased and

7  defendant McKinnon.

8  54.  The death of a 59 year patient following an examination and treatment for

9  a hematoma that developed following the examination does not ordinally occur in the

10  absence of negligence.

11  55.  The deceased's death was caused by an instrumentality or agency under the

12  exclusive management or control of defendant McKay McKinnon, M.D.

13  56.  The deceased's death occurred under circumstances indicating that it was

14  not due to any voluntary act or negligence on her or the Plaintiffs part.

15  57.  The deceased suffered injuries causing her death, and left as her survivors

16  her mother, Irma Carver, her sister, Madeleine Kates, and her brother, Lawrence

17  Nemirow, all of whom have suffered pecuniary damages and loss as a result of the

18  death of the deceased, including the loss of her love and companionship.

19  58.  **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 740

20  ILCS 180/0.01-2.2, commonly known as the Wrongful Death Act, and demands

21  judgment against McKay McKinnon for the following:

22  (a)  Compensatory damages in an amount that exceeds $150,000.

23  (b)  Plaintiffs costs of this action; and

24  (c)  Such other and further relief as this Court deems just and appropriate.

25  ///

26  ///

27  ///

28  ///

9

COUNT V: INFORMED CONSENT/SURVIVAL ACTION
AGAINST MCKAY MCKINNON, M.D.

59.    Plaintiffs realleges and incorporates herein by reference Paragraphs 1 through 58, as if fully set forth herein..

60.    There was a physician-client relationship between the deceased and defendant McKay McKinnon, M.D.

61.    McKay McKinnon, M.D. failed to inform the deceased or the Plaintiffs of the possible consequences of his examination of Helene and his failure to evacuate the deceased's hematoma or properly treat the deceased, as reasonable health professionals would have. The "Authorization for Medical and/or Surgical Treatment" form and the other consent to medical treatment forms signed by the deceased did not warn the deceased of any possible consequences from the examination or the failure to evacuate the Hematoma, much less the consequence that followed here, the deceased's death.

62.    McKay McKinnon M.D's failure to inform the deceased or the Plaintiff's of the possible consequences of the procedure was a proximate case of the deceased's death, in that a reasonable person would not have gone forward with the procedure had she been informed of the possible consequences of death, and in fact the deceased would not have gone forward with the examination had she been informed about the possible consequences of death.

63.    The deceased suffered injuries of a personal and pecuniary nature, including conscious physical pain and suffering and mental suffering prior to her death, and had the deceased survived, she would be entitled to bring a cause of action for such personal and pecuniary damages, and such action survived the deceased.

64.    **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against McKay McKinnon, M.D. for the following:

(a)    Compensatory damages in an amount that exceeds $150,000.

10

1  (b)  Plaintiffs costs of this action; and

2  (c)  Such other and further relief as this Court deems just and appropriate.

3

4          COUNT VI:  INFORMED CONSENT/WRONGFUL DEATH ACTION
                        AGAINST MCKAY MCKINNON, M.D.

5

6          65.    Plaintiffs realleges and incorporates herein by reference Paragraphs 1

7  through 64, as if fully set forth herein.

8          66.    There was a physician-patient relationship between the deceased and

9  defendant McKay McKinnon, M.D.

10          67.  McKay McKinnon, M.D. failed to inform the deceased or the Plaintiffs of

11  the possible consequences of his examination of the deceased and McKinnon's failure

12  to evacuate the deceased's hematoma or properly treat her, as reasonable health

13  professionals would have. The "Authorization for Medical and/or Surgical Treatment"

14  form and the other consent to medical treatment forms signed by the deceased did not

15  warn the deceased of any possible consequences from the examination or the failure

16  to evacuate the Hematoma, much less the consequence that followed here: the

17  deceased's death.

18          68.  McKay McKinnon M.D's failure to inform the deceased or the Plaintiff's

19  of the possible consequences of the procedure was a proximate case of the deceased's

20  death, in that a reasonable person would not have gone forward with the procedure had

21  she been informed of the possible consequences of death, and in fact the deceased

22  would not have gone forward with the examination had the deceased been informed

23  about the possible consequences of death.

24          69.  The deceased suffered injuries causing the deceased's death, and left as her

25  survivors her mother, Irma Carver, her sister, Madeleine Kates, and her brother,

26  Lawrence Nemirow, all of whom have suffered pecuniary damages and loss as a result

27  of the death of Helene Nemirow, including the loss of her love and companionship.

28          70.  **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 740

1 ILCS 180/0.01-2.2, commonly known as the Wrongful Death Act, and demands

2 judgment against McKay McKinnon for the following:

3 (a)  Compensatory damages in an amount that exceeds $150,000.

4 (b)  Plaintiffs costs of this action; and

5 (c)  Such other and further relief as this Court deems just and appropriate.

6

7                    COUNT VII:  NEGLIGENT SUPERVISION/SURVIVAL ACTION
                            AGAINST MCKAY MCKINNON, M.D.

8

9        71.    Plaintiffs realleges and incorporates herein by reference Paragraphs 1

10 through 70, as if fully set forth herein.

11        72.    There was a physician-patient relationship between the deceased and

12 McKay McKinnon, M.D.

13        73.    McKay McKinnon, M.D., had a duty to the deceased to supervise the

14 residents and medical staff that reported to him and assisted in the treatment of the

15 deceased to ensure that the deceased was treated competently and in accordance with

16 accepted standards of medical practice, and to ensure that the staff that reported to him

17 dealt properly with any complications that might arise, in accordance with accepted

18 standards of medical practice.

19        74.  McKay McKinnon, M.D. breached this duty to the deceased in negligent

20 failing to supervise his staff, who neither performed the procedure of evacuating the

21 hematoma or controlling the resulting infections nor dealt with the complications that

22 arose in accordance with accepted standards of medical practice.

23        75. The deceased suffered injuries of a personal and pecuniary nature, including

24 conscious physical pain and suffering and mental suffering prior to her death, and had

25 the deceased survived, the deceased would be entitled to bring a cause of action for

26 such personal and pecuniary damages, and such action survived the deceased.

27        76.    **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 755

28 ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against

1 McKay McKinnon, M.D. for the following:

2 (a)  Compensatory damages in an amount that exceeds $150,000.

3 (b)  Plaintiffs costs of this action; and

4 (c)  Such other and further relief as this Court deems just and appropriate.

5

6           COUNT VIII:  NEGLIGENT SUPERVISION/WRONGFUL DEATH
                         ACTION AGAINST MCKAY MCKINNON, M.D.
7

8        77.   Plaintiffs realleges and incorporates herein by reference Paragraphs 1

9 through 76, as if fully set forth herein.

10       78.   There was a physician-patient relationship between the deceased and

11 McKay McKinnon, M.D.

12       79.   McKay McKinnon, M.D.,  had a duty to the deceased to supervise the

13 residents and medical staff that reported to him and assisted in the treatment of the

14 deceased to ensure that she was treated competently and in accordance with accepted

15 standards of medical practice, and to ensure that the staff that reported to him dealt

16 properly with any complications that might arise, in accordance with accepted

17 standards of medical practice.

18       80.  McKay McKinnon, M.D. breached this duty to the deceased in negligently

19 failing to supervise his staff, who neither performed the procedure of evacuating the

20 hematoma or controlling the resulting infections nor dealt with the complications that

21 arose in accordance with accepted standards of medical practice.

22       81.  The deceased suffered injuries causing her death, and left as her survivors

23 her mother, Irma Carver, her sister, Madeleine Kates, and her brother, Lawrence

24 Nemirow, all of whom have suffered pecuniary damages and loss as a result of the

25 death of the deceased, including the loss of her love and companionship.

26       82.  **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 740

27 ILCS 180/0.01-2.2, commonly known as the Wrongful Death Act, and demands

28 judgment against McKay McKinnon for the following:

COMPLAINT FOR MEDICAL MALPRACTICE; WRONGFUL DEATH AND SURVIVAL

1  (a)  Compensatory damages in an amount that exceeds $150,000.

2  (b)  Plaintiffs costs of this action; and

3  (c)  Such other and further relief as this Court deems just and appropriate.

4

5  COUNT IX:   MEDICAL MALPRACTICE/SURVIVAL ACTION AGAINST
              UNIVERSITY OF CHICAGO HOSPITAL AND
6             UNIVERSITY OF CHICAGO

7

8      83.    Plaintiffs reallege and incorporates herein by reference Paragraphs 1

9  through 19, as if fully set forth herein..

10     84.    There was a physician-patient relationship between the deceased and

11 defendants Hospital and University.

12     85.    In rendering medical treatment to the deceased, defendants Hospital and

13 University departed from accepted standards of medical practice.

14     86.  The Hospital and University departed from accepted standards of medical

15 practice in that the Hospital and University and its employees and agents negligently

16 failed to care for the deceased properly, by its failure to evacuate the hematoma as

17 reasonable health professionals would have, so that the deceased died from cardiac

18 arrest and infection.

19     87.  The Hospital and University departed from accepted standards of medical

20 practice in that the Hospital and University and its employees and agents negligently

21 discharged the deceased to a nursing home knowing that she had developed a

22 dangerous infection, so that the deceased died from cardiac arrest and infection.

23     88.  The Hospital and University departed from accepted standards of medical

24 practice in that the Hospital and University and its employees and agents negligently

25 refused to readmit the deceased to the Hospital from Warren Barr pavilion when the

26 knew that the infection worsened, so that the deceased died from cardiac arrest and

27 infection.

28     89.  The Hospital and University departed from accepted standards of medical

1  practice in that the Hospital and University and its employees and agents negligently
2  administered drugs without a cardiac consult, so that the deceased died from cardiac
3  arrest.

4      90.  The Hospital and University departed from accepted standards of medical
5  practice in that the Hospital and University and its agents and employees and agents
6  overdosed the deceased with pain killers which kept the deceased in a state of stupor
7  during her Hospital stay which weakened her heart, so that Helene died from cardiac
8  arrest.

9      91  The Hospital and University departed from accepted standards of medical
10  practice in that the Hospital and University and its agents and employees failed to
11  diagnosis and treat the deceased's infection, so that Helene died from cardiac arrest
12  and infection.

13      92.  The Hospital and University departed from accepted standards of medical
14  practice in that the Hospital and University and its agents and employees negligently
15  failed to monitor the deceased's recovery progress including to monitor the deceased's
16  heart, so that the deceased died from cardiac arrest and infection.

17      93.  The Hospital and University departed from accepted standards of medial
18  practice in that the Hospital and University and its agents and employees negligently
19  failed to resuscitate the deceased properly.

20      94.  The Hospital and University departed from accepted standards of medical
21  practice in that the Hospital and University negligently hired agents and employees
22  who were not competent, or who the Hospital and University in the exercise of
23  reasonable care should have known were not competent, to render to the deceased the
24  medical care the deceased required.

25      95.  The Hospital and University departed from accepted standards of medical
26  care in that the Hospital and University negligently supervised its agents and
27  employees who negligently rendered medical care to the deceased.

28  ///

COMPLAINT FOR MEDICAL MALPRACTICE; WRONGFUL DEATH AND SURVIVAL

1   96.  One or more of the Hospital's and University's departures from accepted
2   standards of medical practice, listed above, were the proximate cause of the deceased's
3   injuries and death.

4   97.  Plaintiffs were free of any wrongdoing that may have contributed to the
5   deceased's injuries and death.

6   98. The deceased suffered injuries of a personal and pecuniary nature, including
7   conscious pain and suffering and mental suffering prior to her death; and had she
8   survived, she would have been entitled to bring a cause of action for such personal and
9   pecuniary damages, and such action survived her.

10   99. **WHEREFORE**, Plaintiff brings this cause of action pursuant to 755 ILCS
11   5/27-6, commonly known as the Survival Act, and demands judgment against the
12   Hospital and the University for the following:

13   (a)  Compensatory damages in an amount that exceeds $150,000;

14   (b)  Plaintiff's costs of this action; and

15   (c)  Such other and further relief as this Court deems just and appropriate.

16   COUNT X: MEDICAL MALPRACTICE/WRONGFUL DEATH ACTION
       AGAINST UNIVERSITY OF CHICAGO HOSPITAL AND
17        UNIVERSITY OF CHICAGO

18

19   100.  Plaintiffs reallege and incorporates herein by reference Paragraphs 1
20   through 19, and 82-99, as if fully set forth herein.

21   101.  There was a physician-patient relationship between the deceased and
22   defendants Hospital and University.

23   102.  In rendering medical treatment to the deceased, defendants Hospital and
24   University departed from accepted standards of medical practice.

25   103. The Hospital and University departed from accepted standards of medical
26   practice in that the Hospital and University and its employees and agents negligently
27   failed to care for the deceased properly, by its failure to evacuate the hematoma as
28   reasonable health professionals would have, so that the deceased died from cardiac

16

1    arrest and infection.

2        104. The Hospital and University departed from accepted standards of medical
3    practice in that the Hospital and University and its employees and agents negligently
4    discharged the deceased to a nursing home knowing that she had developed a
5    dangerous infection, so that the deceased died from cardiac arrest and infection.

6        105. The Hospital and University departed from accepted standards of medical
7    practice in that the Hospital and University and its employees and agents negligently
8    refused to readmit the deceased to the Hospital from Warren Barr pavilion when the
9    knew that the infection worsened, so that the deceased died from cardiac arrest and
10   infection.

11       106. The Hospital and University departed from accepted standards of medical
12   practice in that the Hospital and University and its employees and agents negligently
13   administered drugs without a cardiac consult, so that the deceased died from cardiac
14   arrest.

15       107. The Hospital and University departed from accepted standards of medical
16   practice in that the Hospital and University and its agents and employees and agents
17   overdosed the deceased with pain killers which kept the deceased in a state of stupor
18   during the deceased Hospital stay which weakened the deceased's heart, so that the
19   deceased died from cardiac arrest.

20       108. The Hospital and University departed from accepted standards of medical
21   practice in that the Hospital and University and its agents and employees failed to
22   diagnosis and treat the deceased's infection, so that the deceased died from cardiac
23   arrest and infection.

24       109. The Hospital and University departed from accepted standards of medical
25   practice in that the Hospital and University and its agents and employees negligently
26   failed to monitor the deceased's recovery progress including to monitor the deceased's
27   heart, so that the deceased died from cardiac arrest and infection.

28       110. The Hospital and University departed from accepted standards of medial

17

1  practice in that the Hospital and University and its agents and employees negligently
2  failed to resuscitate the deceased Nemirow properly.

3       111.  The Hospital and University departed from accepted standards of medical
4  practice in that the Hospital and University negligently hired agents and employees
5  who were not competent, or who the Hospital and University in the exercise of
6  reasonable care should have known were not competent, to render to the deceased the
7  medical care she required.

8       112.  The Hospital and University departed from accepted standards of medical
9  care in that the Hospital and University negligently supervised its agents and
10  employees who negligently rendered medical care to the deceased.

11       113.  One or more of the Hospital's and University's departures from accepted
12  standards of medical practice, listed above, were the proximate cause of the deceased's
13  injuries and death.

14       114.  Plaintiffs were free of any wrongdoing that may have contributed to the
15  deceased's injuries and death.

16       115.  The deceased suffered injuries causing her death, and left as her survivor
17  her mother, Irma Carver, her sister, Madeleine Kates, and her brother, Lawrence
18  Nemirow, all of whom have sustained pecuniary damages and loss as a result of the
19  death of the deceased, including loss of her love and companionship.

20       116.  **WHEREFORE**, Plaintiff brings this cause of action pursuant to 740
21  ILCS 180/0.01-2.2, commonly known as the Wrongful Death Act, and demands
22  judgment against the Hospital and the University for the following:

23  (a)  Compensatory damages in an amount that exceeds $150,000;

24  (b)  Plaintiff's costs of this action; and

25  (c)  Such other and further relief as this Court deems just and appropriate.

26  ///

27  ///

28  ///

1
2

COUNT XI:   RES ISPA LOQUITOR ACTION AGAINST
UNIVERSITY OF CHICAGO HOSPITAL AND
UNIVERSITY OF CHICAGO

3

4   117.   Plaintiffs reallege and incorporates herein by reference Paragraphs 1
5   through 19, and 82 through 116 as if fully set forth herein.

6   118.   There was a physician-patient relationship between the deceased and
7   defendants Hospital and University.

8   119.  The death of a 59 year patient following an examination and treatment for
9   a hematoma that developed following the examination does not ordinally occur in the
10  absence of negligence.

11  120.  The deceased's death was caused by an instrumentality or agency under
12  the exclusive management or control of defendants Hospital and University.

13  121.  The deceased's death occurred under circumstances indicating that it was
14  not due to any voluntary act or negligence on her or the Plaintiffs part.

15  122.   The deceased suffered injuries of a personal and pecuniary nature,
16  including conscious physical pain and suffering and mental suffering prior to her
17  death, and had she survived, she would be entitled to bring a cause of action for such
18  personal and pecuniary damages, and such action survived her.

19  123.  **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 755
20  ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against
21  the University of Chicago Hospital and the University of Chicago for the following:
22  (a)   Compensatory damages in an amount that exceeds $150,000.
23  (b)   Plaintiffs costs of this action; and
24  (c)   Such other and further relief as this Court deems just and appropriate.
25  ///
26  ///
27  ///
28  ///

19

COUNT XII:   RES IPSA LOQUITOR/WRONGFUL DEATH ACTION
AGAINST UNIVERSITY OF CHICAGO HOSPITAL AND
UNIVERSITY OF CHICAGO

124.   Plaintiffs realleges and incorporates herein by reference Paragraphs 1 through 19, and 82 through 123 as if fully set forth herein.

125.   There was a physician-patient relationship between the deceased and defendants Hospital and University.

126.   The death of a 59 year patient following an examination and treatment for a hematoma that developed following the examination does not ordinally occur in the absence of negligence.

127.   The deceased's death was caused by an instrumentality or agency under the exclusive management or control of defendants Hospital and University

128.   The deceased's death occurred under circumstances indicating that it was not due to any voluntary act or negligence on the deceased or the Plaintiffs part.

129.   The deceased suffered injuries causing her death, and left as her survivors her mother, Irma Carver, her sister, Madeleine Kates, and her brother, Lawrence Nemirow, all of whom have suffered pecuniary damages and loss as a result of the death of Helene Nemirow, including the loss of her love and companionship.

130.   **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 740 ILCS 180/0.01-2.2, commonly known as the Wrongful Death Act, and demands judgment against the University of Chicago Hospital and the University of Chicago for the following:

(a)   Compensatory damages in an amount that exceeds $150,000.

(b)   Plaintiffs costs of this action; and

(c)   Such other and further relief as this Court deems just and appropriate.

///

//

///

20

1
2

COUNT XIII: INFORMED CONSENT/SURVIVAL ACTION
AGAINST UNIVERSITY OF CHICAGO HOSPITAL
AND UNIVERSITY OF CHICAGO

3    131.  Plaintiffs realleges and incorporates herein by reference Paragraphs 1
4 through 19, and 82 through 130 as if fully set forth herein.

5    132.  There was a physician-client relationship between the deceased and
6 defendants Hospital and University.

7    133.  Hospital and University failed to inform the deceased or the Plaintiffs of
8 the possible consequences of the failure to evacuate her hematoma or properly treat
9 her, as reasonable health professionals would have. The "Authorization for Medical
10 and/or Surgical Treatment" form and the other consent to medical treatment forms
11 signed by the deceased did not warn the deceased of any possible consequences from
12 the failure to evacuate the Hematoma, much less the consequence that followed here:
13 the deceased's death.

14    134.  The Hospital's and University's failure to inform the deceased or the
15 Plaintiff's of the possible consequences of the failure to evacuate the hematoma or
16 properly treat her was a proximate case of the deceased's death, in that a reasonable
17 person would not have gone forward with the examination or admission to the
18 Hospital had she been informed of the possible consequences of death, and in fact the
19 deceased would not have gone forward with the examination or admission to te
20 Hospital had the deceased been informed about the possible consequences of death.

21    135. The deceased suffered injuries of a personal and pecuniary nature,
22 including conscious physical pain and suffering and mental suffering prior to her
23 death, and had she survived, she would be entitled to bring a cause of action for such
24 personal and pecuniary damages and such action survived her

25    136.  **WHEREFORE,** Plaintiffs brings this cause of action pursuant to 755
26 ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against
27 the Hospital and theUniversity for the following:

28 (a)  Compensatory damages in an amount that exceeds $150,000.

1 (b)  Plaintiffs costs of this action; and

2 (c)  Such other and further relief as this Court deems just and appropriate.

3

4 COUNT XIV: INFORMED CONSENT/WRONGFUL DEATH
ACTION AGAINST UNIVERSITY OF CHICAGO
5 HOSPITAL AND UNIVERSITY OF CHICAGO

6     137.   Plaintiffs realleges and incorporates herein by reference Paragraphs 1
7 through 19, and 82 through 114 as if fully set forth herein.

8     138.   There was a physician-client relationship between the deceased and
9 defendants Hospital and University.

10     139.  Hospital and University failed to inform the deceased or the Plaintiffs of
11 the possible consequences of the failure to evacuate the deceased's hematoma or
12 properly treat the deceased, as reasonable health professionals would have. The
13 "Authorization for Medical and/or Surgical Treatment" form and the other consent to
14 medical treatment forms signed by the deceased did not warn the deceased of any
15 possible consequences from the failure to evacuate the Hematoma, much less the
16 consequence that followed here: the deceased's death.

17     140.  The Hospital's and University's failure to inform the deceased or the
18 Plaintiffs of the possible consequences of the failure to evacuate the hematoma or
19 properly treat her was a proximate case of the deceased's death, in that a reasonable
20 person would not have gone forward with the examination or admission to the
21 Hospital had the deceased been informed of the possible consequences of death, and
22 in fact the deceased would not have gone forward with the examination or admission
23 to the Hospital had the deceased been informed about the possible consequences of
24 death.

25     141.  The deceased suffered injuries causing her death, and left as her survivors
26 her mother, Irma Carver, her sister, Madeleine Kates, and her brother, Lawrence
27 Nemirow, all of whom have suffered pecuniary damages and loss as a result of the
28 death of the deceased, including the loss of her love and companionship.

22

142.  **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 740 ILCS 180/0.01-2.2, commonly known as the Wrongful Death Act, and demands judgment against the University of Chicago Hospital and the University of Chicago for the following:

(a)  Compensatory damages in an amount that exceeds $150,000

(b)  Plaintiffs costs of this action; and

(c)  Such other and further relief as this Court deems just and appropriate.

## COUNT XV: NEGLIGENT HIRING/SURVIVAL ACTION AGAINST THE UNIVERSITY OF CHICAGO HOSPITAL AND THE UNIVERSITY OF CHICAGO

143.  Plaintiffs reallege and incorporates herein by reference Paragraphs 1 through 19, and 82-142, as if fully set forth herein..

144.  There was a physician-patient relationship between the deceased and the Hospital and the University.

145.  The Hospital and the University had a duty to the deceased to hire only health professionals who were competent in treating patients with neurofirbromatosis and with hematoma's and who were competent to deal properly with any complications that might arise.

146.  The employees and agents of the Hospital and the University were not competent to deal with neurofibromatosis and hematoma's such as the deceased had and were not competent to deal properly with any complications that might (and did) arise to treat any resulting infections and administer proper medications in order to save the deceased's life.

147.  The Hospital and University knew or should have known that its employees and agents were incompetent, and breached its duty to the deceased in negligently hiring (and/or in negligently checking the qualifications of those employees and agents) and in negligently assigning them to treat the deceased, resulting in the deceased's death.

23

148. The deceased suffered injuries of a personal and pecuniary nature, including conscious physical pain and suffering and mental suffering prior to her death, and had she survived, she would be entitled to bring a cause of action for such personal and pecuniary damages and such action survived her.

149. **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against the Hospital and the University for the following:

(a)   Compensatory damages in an amount that exceeds $150,000.

(b)   Plaintiffs costs of this action; and

(c)   Such other and further relief as this Court deems just and appropriate.

### COUNT XVI: NEGLIGENT HIRING/WRONGFUL DEATH ACTION AGAINST THE UNIVERSITY OF CHICAGO HOSPITAL AND THE UNIVERSITY OF CHICAGO

150.   Plaintiffs realleges and incorporates herein by reference Paragraphs 1 through 19, and 142 through 149, as if fully set forth herein.

151.   There was a physician-patient relationship between the deceased and the Hospital and the University.

152.   The Hospital and the University had a duty to the deceased to hire only health professionals who were competent in treating patients with neurofirbromatosis and with hematoma's and who were competent to deal properly with any complications that might arise.

153.   The employees and agents of the Hospital and the University were not competent to deal with neurofibromatosis and hematoma's such as the deceased had and were not competent to deal properly with any complications that might (and did) arise to treat any resulting infections and administer proper medications in order to save the deceased's life.

154.   The Hospital and University knew or should have known that its

1  employees and agents were incompetent, and breached its duty to the deceased in
2  negligently hiring (and/or in negligently checking the qualifications of those
3  employees and agents) and in negligently assigning them to treat the deceased,
4  resulting in deceased's death.

5      155.  The deceased suffered injuries causing her death, and left as her survivors
6  her mother, Irma Carver, her sister, Madeleine Kates, and her brother, Lawrence
7  Nemirow, all of whom have suffered pecuniary damages and loss as a result of the
8  death of the deceased, including the loss of her love and companionship.

9      156.  **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 740
10 ILCS 180/0.01-2.2, commonly known as the Wrongful Death Act, and demands
11 judgment against the University of Chicago Hospital and the University of Chicago
12 for the following:

13 (a)  Compensatory damages in an amount that exceeds $150,000.

14 (b)  Plaintiffs costs of this action; and

15 (c)  Such other and further relief as this Court deems just and appropriate.

16

17 COUNT XVII: NEGLIGENT SUPERVISION/SURVIVAL ACTION AGAINST
18                   THE UNIVERSITY OF CHICAGO HOSPITAL AND
                          THE UNIVERSITY OF CHICAGO

19      157.  Plaintiffs realleges and incorporates herein by reference Paragraphs 1
20 through 19, and 142 through 156, as if fully set forth herein.

21      159.  There was a physician-patient relationship between the deceased  and the
22 Hospital and the University.

23      160.  The Hospital and the University had a duty to the deceased to supervise
24 its health professionals who were responsible for  treating patients with
25 neurofirbromatosis and with hematoma's and to ensure that its agents and employees
26 dealt properly with any complications that might arise.

27      161.  The Hospital and the University breached its duty to the deceased in
28 negligently failing to supervise its employees and agents who neither performed the

1 evacuated the hematoma or properly treated the infection nor dealt with any
2 complications that arose in accordance with accepted standards of medical practice.

3    162. The deceased suffered injuries of a personal and pecuniary nature,
4 including conscious physical pain and suffering and mental suffering prior to her
5 death, and had she survived, she would be entitled to bring a cause of action for such
6 personal and pecuniary damages and such action survived her.

7    163. **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 755
8 ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against
9 the Hospital and the University for the following:

10 (a)  Compensatory damages in an amount that exceeds $150,000.

11 (b)  Plaintiffs costs of this action; and

12 (c)  Such other and further relief as this Court deems just and appropriate.

13

14    COUNT XVII: NEGLIGENT SUPERVISION/WRONGFUL DEATH
         ACTION AGAINST THE UNIVERSITY OF CHICAGO
15         HOSPITAL AND THE UNIVERSITY OF CHICAGO

16

17    164.  Plaintiffs realleges and incorporates herein by reference Paragraphs 1
18 through 19, and 142 through 163, as if fully set forth herein.

19    165.  There was a physician-patient relationship between the deceased and the
20 Hospital and the University.

21    166.  The Hospital and the University had a duty to the deceased to supervise
22 its health professionals who were responsible for  treating patients with
23 neurofirbromatosis and with hematoma's and to ensure that its agents and employees
24 dealt properly with any complications that might arise.

25    167.  The Hospital and the University breached its duty to the deceased in
26 negligently failing to supervise its employees and agents who neither performed the
27 evacuated the hematoma or properly treated the infection nor dealt with any
28 complications that arose in accordance with accepted standards of medical practice..

1    168.   The deceased suffered injuries causing her death, and left as her survivors

2 her mother, Irma Carver, her sister, Madeleine Kates, and her brother, Lawrence

3 Nemirow, all of whom have suffered pecuniary damages and loss as a result of the

4 death of the deceased, including the loss of her love and companionship.

5    169.   **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 740

6 ILCS 180/0.01-2.2, commonly known as the Wrongful Death Act, and demands

7 judgment against the University of Chicago Hospital and the University of Chicago

8 for the following:

9 (a)   Compensatory damages in an amount that exceeds $150,000.

10 (b)   Plaintiffs costs of this action; and

11 (c)   Such other and further relief as this Court deems just and appropriate.

12 ///

13 Date: November 7, 2007

14                                          By  _Lawrence H. Nemirow_
15                                              LAWRENCE H. NEMIROW
                                                Administrator for the Estate
16                                              of HELENE S. NEMIROW
                                                in *Pro Se*

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR MEDICAL MALPRACTICE; WRONGFUL DEATH AND SURVIVAL