78-063435                              BTH/CJI/sms

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

THE ESTATE OF HELENE S. NEMIROW )
IRMA CARVER; MADELEINE KATES    )
and LAWRENCE H. NEMIROW, as     )
survivors of HELENE S. NEMIROW, )
deceased.                       )
                Plaintiffs,     )
                                )          Civil Action No. 07 CV 6413
        v.                      )          Judge George Marovich
                                )          Mag. Judge Nolan
MCKAY MCKINNON, M.D., THE       )
UNIVERSITY OF CHICAGO HOSPITALS)
an Illinois corporation; THE UNIVERSITY )
OF CHICAGO, an Illinois not-for-profit  )
corporation; and DOES 1 through 50,     )
inclusive)                      )
                Defendants.     )

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT McKAY McKINNON, M.D.'S MOTION TO DISMISS

NOW COMES the Defendant, McKAY McKINNON, M.D., through his counsel, PRETZEL

& STOUFFER, CHARTERED, and submits this memorandum of law in support of its motion to

dismiss.

## I. INTRODUCTION

This case arises out of a lawsuit plaintiffs filed against Dr. McKay McKinnon, University

of Chicago and Does 1 through 50. In that Complaint, plaintiffs state that the nature of the action

arises as a result of "medical malpractice which led to the wrongful death of Helene Susan

Nemirow." (See, *Cmplt.*, Case No. 07 CV 6413, page 1, attached hereto as Exhibit 1). In the

"parties" section of the Complaint, Plaintiffs contend Dr. McKay McKinnon is a "licensed medical

practitioner" in the State of Illinois (See, *Cmplt.*, Case No. 07 CV 6413, page 2, attached hereto as

1

Exhibit 1) and that defendant University of Chicago Hospitals was and is an Illinois corporation. (See, *Cmplt.*, Case No. 07 CV 6413, page 2, attached hereto as Exhibit 1).    In the body of the Complaint itself, Plaintiffs allege that the negligent treatment occurred in the state of Illinois. (See, *Cmplt.*, Case No. 07 CV 6413, attached hereto as Exhibit 1).  In the "background of the allegations" section of the Complaint, Plaintiffs claim that the deceased, Helene S. Nemirow, went to Dr. McKinnon for plastic surgery to remove excess skin growth from her legs and thighs. (See, *Cmplt.*, Case No. 07 CV 6413, page 3, attached hereto as Exhibit 1).  Counts one through eight of plaintiffs' Complaint are directed to Dr. McKay McKinnon and seek damages from this defendant for alleged improper care and treatment rendered to the decedent. (See, *Cmplt.*, Case No. 07 CV 6413, pages 4-14, attached hereto as Exhibit 1).

## II.  ARGUMENT

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(6) tests the legal sufficiency of the Complaint.  Fed. R. Civ. P. 12(b)(6); see also *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998).   When considering a motion to dismiss for failure to state a claim, the court accepts the plaintiff's allegations as true and construes all inferences in favor of the plaintiff.  *Chapman v. Chandra*, 2007 WL 1655799 (S.D.Ill. 2007) citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

735 ILCS 5/2-622 of the Illinois Code of Civil Procedure provides, in part: "in any action, whether in tort, contract or otherwise, in which plaintiff seeks damages for injuries or death by reason of medical malpractice, hospital, or other healing art malpractice ... the plaintiff shall file an affidavit" from a medical professional indicating that the case has merit.  See 735 ILCS 5/2-622 (a)(1).  "The failure to file a certificate required by this Section shall be grounds for dismissal under

Section 2-619." See 735 ILCS 5/2-622 (g). Pursuant to *Erie R.R. Company v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), if the Federal Court finds that Section 2-622 is a substantive law, then the Court is required to apply that state law, regardless of the jurisdictional basis for the case. See *Carpenter v. Office of Lake County Sheriff,* 2005 WL 1126545 (N.D.Ill. 2005).

The United States Court of Appeals for the 7th Circuit has implicitly held that Section 2-622 is substantive law that should apply to medical malpractice claims brought in federal courts. See *Chapman,* 2007 WL 1655799, 3. In the case of *Sherrod v. Lingle,* 223 F.3d 605, 47 Fed.R.Serv.3d 156, (7th Cir. 2000), a prisoner who suffered a ruptured appendix and subsequent complications sued a prison's medical staff, the treating physician and the hospital claiming violations of his Eighth Amendment rights and medical negligence. The United States District Court for the Southern District of Illinois dismissed with prejudice the medical negligence claims based on the plaintiff's failure to file an adequate physician's certificate of merit pursuant to 735 ILCS 2-622. *Id.* at 608. In addressing the dismissal, the Seventh Circuit discussed the merits of Section 2-622 and cited the language of 2-622, noting that "a certificate and report must be filed 'as to each defendant who has been named in the Complaint...; failure to abide by this requirement' shall be grounds for dismissal." Id. at 613. The Seventh Circuit in *Sherrod* was silent as to whether Section 2-622 should be applied in Federal Court cases, but subsequent case law has interpreted the silence of the Seventh Circuit and the Court's ruling in that matter as a "strong implication" that the Seventh Circuit favors district courts applying Section 2-622 to medical malpractice claims. See *Id.*; *Chapman,* 2007 WL 1655799, 3; *Salsman v. United States of America,* 2005 WL 2001320 (S.D.Ill 2005); *Ibscher v. Snyder,* 2003 WL 21696197 (N.D.Ill.2003); *Smith v. Gottlieb,* 2002 WL 1636546 (N.D.Ill.2002); *West v.*

*Rockford Memorial Hosp.,* 1995 WL 30608 (N.D.Ill. 1995); *Wilson v. Formigioni,* 1992 WL 345399 (N.D.Ill.1992).

In the case of *Murrey v. United States,* 73 F.3d 1448 (7th Cir. 1996), the Seventh Circuit stated that when a "rule [is] limited to a particular area of law and motivated by concerns about the potential impact on primary behavior of making it too easy for plaintiffs to win a particular case," then the rule is "almost certainly" substantive law.   Of note, Illinois case law reveals that Section 5/2-622 was designed to deter filing of frivolous medical malpractice lawsuits and assure the merit of lawsuits filed.  *Peterson v. Hinsdale Hosp.,* 233 Ill.App.3d 327, 599 N.E.2d 84, 87 (2nd Dist. 1992); *Wasielewski v. Gilligan,* 189 Ill.App. 3d 945, 546 N.E.2d 15, 18 (2nd Dist. 1989).

As Section 5/2-622 is the substantive law of Illinois which must be applied to medical malpractice claims brought in Federal court, the issue is whether the plaintiffs' Complaint in this case sounds in medical negligence, thus triggering the requirements of Section 2-622.

To determine whether a Complaint is one for malpractice requiring a Section 2-622 affidavit, Illinois courts apply the following factors:

1.   Whether the standard of care involves procedures not within the grasp of the ordinary lay jurors;

2.    Whether the activity is inherently one of medical judgment; and

3.   The type of evidence that will be necessary to establish the plaintiff's case.

*Jackson v. Chicago Classic Janitorial and Cleaning Service, Inc.,* 355 Ill.App.3d 906, 291 Ill.Dec. 469, 823 N.E.2d 1055, 1058 (1st Dist. 2005).  Courts are to keep in mind that the term "medical, hospital or other healing art malpractice" in Section 2-622 must be construed broadly  *Id.,* citing *Woodard v. Krans,* 234 Ill.App.3d 690, 703, 175 Ill.Dec. 546, 600 N.E.2d 477 (2nd Dist. 1992) and

4

that "malpractice" is defined as "failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all circumstances in the community by the average prudent reputable member of the profession with the result of injury to the recipient of those services." *Id.* at 1059.

In the case at bar, the plaintiffs clearly allege a claim of medical negligence as the language of the Complaint indicates "this action arises as a result of *medical malpractice* which led to the wrongful death of Helene Susan Nemirow" (See, *Cmplt.*, Case No. 07 CV 6413, page 1, attached hereto as Exhibit 1, emphasis added).   In the second page of the Complaint, plaintiffs indicate that Dr. McKinnon is a "licensed medical practitioner" in the State of Illinois.  (See, *Cmplt.*, Case No. 07 CV 6413, page 2, attached hereto as Exhibit 1). In the background of the allegations section of the Complaint, Plaintiffs claim  that the deceased, Helene S. Nemirow, went to Dr. McKinnon for plastic surgery to remove excess skin growth from her legs and thighs. (See, *Cmplt.*, Case No. 07 CV 6413, page 3, attached hereto as Exhibit 1).  The claims in counts one through eight satisfy the first prong of the *Jackson* factors as the individual charges against Defendant McKinnon involve medical judgment which cannot be within the grasp of a non-medically trained juror. The individual allegations claim that he "departed from acceptable standards of a medical practice" in his examination of the deceased's skin tissue; that he "negligently" failed to care for the deceased by his "failure to evacuate the hematoma as reasonable health professionals would have;" that he departed from accepted standards of medical practice when he "discharged Helene while she was running a temperature" and when he "refused to readmit the deceased" to the hospital.  The allegations also claim that Dr. McKinnon "negligently overdosed the deceased with pain killers and other medications;" that he "failed to monitor the deceased's heart" and he "failed to inform the deceased

of possible consequences of pain medications he was prescribing for the deceased." (See, *Cmplt.*, Case No. 07 CV 6413, pages 4-5, attached hereto as Exhibit 1). It is the plaintiffs' own claims within the Complaint that trigger the need for the professional's health care affidavit pursuant to Section 2-622. The allegations regarding the examination of the deceased, the care and treatment of the deceased, the prescribing of medication, the monitoring and the informing the deceased of potential consequences directly involve the substance of Dr. McKinnon's medical treatment which cannot be something within the grasp of the average lay juror. See *Salsman,* 2005 WL 2001320, 6 (finding that because the plaintiff specifically plead that the defendant was negligent in the diagnosis and treatment of plaintiff's illness, and the plaintiff himself put the diagnosis at issue which involved the substance of his medical treatment which is not something which usually is within the grasp of the average lay juror, the matter sounded medical malpractice).

Likewise, the second prong of *Jackson* as to whether the activity is one involving medical judgment is also satisfied. The plaintiffs claim that there was a failure to properly treat, examine, prescribe medications and monitor this patient which is one that inherently involves medical judgment. Just as in the *Salsman* case where a medical diagnosis was at issue, the issues here of treating, examining, monitoring, prescribing and informing a patient of side effects involve medical judgment making this a case for medical malpractice. See *Salsman,* 2005 WL 2001320, 6.

The third prong as outlined in the *Jackson* case - the evidence that will be necessary to establish the standard of care - is also met. It is well established in Illinois law that in a medical malpractice case, the standard of care must be established through expert testimony. See *Purtill v. Hess,* 111 Ill.2d 229 (1998). In plaintiff's Complaint, each of the eight allegations against Dr. McKinnon will require expert testimony to establish the standard of care and any alleged breach of

whether a Complaint sounds in malpractice, thereby triggering the Section 2-622 filing requirement, and as plaintiff has failed to comply with the mandates set forth by 735 ILCS 5/2-622, plaintiffs' Complaint must be dismissed.  See 735 ILCS 5/2-622.

## III. CONCLUSION

For each of the forgoing reasons, defendant McKay McKinnon, M.D., respectfully requests the entry of an order granting his motion to dismiss plaintiffs' Complaint with prejudice; awarding him all costs he has incurred in defending this action and providing any further relief this court deems just and appropriate.

<div style="margin-left:40%">

s/Christine J. Iversen
Christine J. Iversen (IL Bar No. 6244570)
Pretzel & Stouffer, Chartered
One South Wacker Drive - Suite 2500
Chicago, Illinois 60606
Telephone:    (312) 578-7581
Fax:    (312) 346-8242
E-Mail:    civersen@pretzel-stouffer.com
*Attorneys for Defendant,*
*Dr. McKay McKinnon*

</div>

# EXHIBIT 1

78-
063435

RECEIVED

NOV 1 9 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Lawrence H. Nemirow
5242 Katella Ave., Suite 104
Los Alamitos, CA 90720-2820
Tel. (562) 799-1379
Fax. (562) 799-1377

*Pro Se* for the Estate of Helene S. Nemirow et al

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THE ESTATE OF HELENE S. NEMIROW; IRMA CARVER; MADELEINE KATES and LAWRENCE H. NEMIROW, as survivors of HELENE S. NEMIROW, deceased. <br><br> Plaintiffs, <br><br> v <br><br> MCKAY MCKINNON, M.D.,THE UNIVERSITY OF CHICAGO HOSPITALS, an Illinois corporation; THE UNIVERSITY OF CHICAGO, an Illinois not-for-profit corporation; and DOES 1 through 50, Inclusive <br><br> Defendants. | Civil Action No. <br><br> **COMPLAINT FOR:** <br><br> **MEDICAL MALPRACTICE WRONGFUL DEATH AND SURVIVAL** <br><br> **JURY TRIAL DEMANDED** <br><br> **07CV6413** <br> **JUDGE MAROVICH** <br> **MAG. JUDGE NOLAN** |

## NATURE OF THE ACTION

1.   This action arises as a result of Medical Malpractice which led to the wrongful death of Helene Susan Nemirow.

## JURISDICTION AND VENUE

1

**EXHIBIT**

1

2.  This Court has subject matter jurisdiction pursuant to <u>28 U.S.C. § 1332 (a)</u> as the suit involves a controversy between citizens of different states.

3.  Venue is properly laid in the Southern District of Illinois pursuant to <u>28 U.S.C. § 1391 (a) (1)</u> and <u>28 U.S.C. § 1391 (a) (2)</u> in that at least one of the defendants resides in this district, and a substantial part of the events or ommissions giving rise to this claim occurred in this district.

**PARTIES**

4.  LAWRENCE H. NEMIROW, the administrator of the Estate of Helene S. Nemirow (hereafter "the deceased"), is duly appointed to act as administrator by the State of New York, is the brother of and is at all times mentioned was a resident of the State of California.

5.  Plaintiff IRMA CARVER, is the mother of the deceased, and at all times mentioned was a resident of the State of Florida.

6.  Plaintiff MADELEINE KATES, is the sister of the deceased and at all times mentioned was a resident of the State of New Jersey.

7.  Defendant MCKAY MCKINNON, M.D. (hereinafter "Dr. McKinnon", is a licensed medical practitioner in the State of Illinois, and at all times mentioned, maintained business and residence addresses in the Southern District of State of Illinois.

8.  Defendant UNIVERSITY OF CHICAGO HOSPITALS (hereinafter "Hospital", at all times mentioned was and is an Illinois corporation, operating in the Southern District of the State of Illinois.

9.  Defendant UNIVERSITY OF CHICAGO (hereinafter "University"), at all times mentioned was, and is, an Illinois not-for-profit corporation in the Southern District of the State of Illinois.

10.  DOE Defendants 1 through 10, inclusive, are sued herein under fictitious

2

COMPLAINT FOR MEDICAL MALPRACTICE; WRONGFUL DEATH AND SURVIVAL

1  names. Plaintiff is informed and believes, and thereon alleges, that said DOE

2  Defendants are the officers, directors, employers, employees (including but not limited

3  to accountants and other consultants), principals, agents or other representatives of (or

4  acting on behalf of) one or more of the named Defendants, whose individual names

5  and capacities are not currently known to Plaintiff. When their true names and

6  capacities are ascertained, Plaintiff will amend this Complaint by inserting said true

7  names and capacities. Plaintiff is informed and believes, and thereon alleges, that each

8  of the fictitiously named DOE Defendants is in some way responsible for the breaches,

9  acts and occurrences herein alleged, and that Plaintiff's damages were proximately or

10  substantially caused by such DOE Defendants in addition to the named Defendants.

11      11.  Plaintiff is informed and believes, and thereon alleges, that all Defendants

12  herein, and their directors, officers, officials, managers and supervisors are vicariously

13  liable for the breaches, acts and omissions of any and all Defendants, named or DOE,

14  committed within the course and scope of their employment and/or agency, which

15  breaches, acts and omissions are fully set forth herein.

16      12.  Plaintiff is informed and believes, and thereon alleges, that at all times

17  during the breaches, acts and occurrences herein mentioned, each of the Defendants

18  (both named and DOE) was the partner, principal, agent, employer, employee, or other

19  representative of (or co-conspirator with) each of the remaining Defendants, and in

20  doing or failing to do the things herein alleged, was acting within the scope and course

21  of such partnership, agency, employment, conspiracy, or other legal relationship, and

22  with the permission, consent and/or ratification of said remaining Defendants.

23              **BACKGROUND OF THE ALLEGATIONS**

24      13.  The deceased, Helene S. Nemirow, was 59 years old. Prior to receiving

25  medical treatment from the defendants, she was in good health. She went to defendant

26  McKinnon for plastic surgery to remove excess skin growth on her legs

27  and thighs.

28      14.  On or about July 18, 2006, the deceased presented herself to defendant

1  McKinnon for evaluation and plastic surgery, and defendant McKinnon accepted the
2  deceased as a patient for consideration.

3      15.  On or about July 19, 2006, the deceased  presented herself to defendant
4  Hospital for admission as a surgical candidate, and defendant Hospital accepted the
5  deceased as a patient.

6      16.  On or about July 22, 2006, defendant Hospital discharged the deceased to
7  Warren Barr Pavilion (hereafter "Pavilion") nursing home.

8      17.  On or about August 1, 2006, Pavilion discharged the deceased back to
9  defendant Hospital because the deceased had an elevated white blood cell count
10 caused by an infection. After twenty four hours in the emergency room at defendant
11 Hospital, defendant Hospital refused to readmit the deceased as a patient and on
12 August 2, 2006, the deceased presented herself to Lakeview nursing home (hereafter
13 "Lakeview") and  Lakeview accepted the deceased as a patient.

14     18.  On August 23, 2006 Lakeview discharged the deceased back to defendant
15 Hospital because the infection had worsened, and defendant Hospital readmitted
16 Helene as a patient.

17     19.  On September 14, 2006, the deceased died without ever leaving defendant
18 Hospital, from cardiac arrest. The death certificate states the cause of death was
19 "Chronic Infection of Hematoma".

20                        **CAUSES OF ACTION**

21     COUNT I:   MEDICAL MALPRACTICE/SURVIVAL ACTION AGAINST
22                     MCKAY MCKINNON, M.D.

23

24     20.  Plaintiffs reallege and incorporates herein by reference Paragraphs 1
25 through 19, as if fully set forth herein.

26     21.  There was a physician-patient relationship between the deceased and
27 defendant McKay McKinnon, M.D.

28     22.  In rendering medial treatment to the deceased, defendant McKay

4

1  McKinnon, M.D. departed from accepted standards of medical practice.

2      23.  McKay McKinnon, M.D., departed from accepted standards of medical
3  practice in that McKay McKinnon so roughly examined the excess skin tissue of the
4  deceased, after being cautioned against such a rough examination, so as to cause her
5  to develop a hematoma which eventually led to her death at the age of 59.

6      24.  McKay McKinnon, M.D., departed from accepted standards of medical
7  practice in that McKay McKinnon, M.D. and the residents and nurses and medical
8  staff reporting to him negligently failed to care for the deceased properly, including
9  failure to evacuate the hematoma as reasonable health professionals would have, so
10  that the deceased died from cardiac arrest and infection.

11      25.  McKay McKinnon, M.D., departed from accepted standards of medial
12  practice in that McKay McKinnon and the nurses and staff reporting to him discharged
13  Helene while she was running a temperature which caused her infection to worsen,
14  and refused to readmit the deceased to defendant Hospital even though the medical
15  staff's at defendants Pavilion and Lakeview recommended readmission because of the
16  deceased's spiking temperatures.

17      26.  McKay McKinnon, M.D., departed from accepted standards of medical
18  practice in that McKay McKinnon, M.D. and the residents and medical staff reporting
19  to him negligently overdosed the deceased with pain killers and other medications so
20  as to keep the deceased in a state of stupor during her Hospital stay.

21      27.  McKay McKinnon, M.D., departed from accepted standards of medical
22  practice in that McKay McKinnon, M.D. and the residents and medical staff reporting
23  to him failed to monitor the deceased's heart while she was under his care as a patient
24  and complained of chest pain.

25      28.  McKay McKinnon, M.D., departed from accepted standards of medical
26  practice in that McKay McKinnon failed to inform the deceased of the possible
27  consequences of the pain medications he was prescribing for the deceased, as
28  reasonable health professionals would have.

5

1   29.  One or more of McKay McKinnon's departure from accepted standards of
2   medical practice, listed above were the proximate cause of the deceased's injuries and
3   death.

4   30.  The deceased and the Plaintiffs were free of any wrongdoing that may have
5   contributed to the deceased's injury and death.

6   31.  The deceased suffered injuries of a personal and pecuniary nature,
7   including conscious physical pain and suffering and mental suffering prior to her
8   death; and had she survived, she would have been entitled to bring a cause of action
9   for such personal and pecuniary damages, and such action survived her.

10   32.  **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 755
11   ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against
12   McKay McKinnon, M.D. for the following:

13   (a)  Compensatory damages in an amount that exceeds $150,000.
14   (b)  Plaintiffs costs of this action; and
15   (c)  Such other and further relief as this Court deems just and appropriate.

16   COUNT II: MEDICAL MALPRACTICE/WRONGFUL DEATH ACTION
         AGAINST MCKAY MCKINNON, M.D.
17

18   33.  Plaintiffs reallege and incorporates herein by reference Paragraphs 1
19   through 32, as if fully set forth herein.

20   33.  There was a physician-patient relationship between the deceased and
21   defendant McKay McKinnon, M.D.

22   34.  In rendering medial treatment to the deceased, defendant McKay
23   McKinnon, M.D. departed from accepted standards of medical practice.

24   35.  McKay McKinnon, M.D., departed from accepted standards of medical
25   practice in that McKay McKinnon so roughly examined the excess skin tissue of the
26   deceased, after being cautioned against such a rough examination, so as to cause the
27   deceased to develop a hematoma which eventually led to the deceased's death at the
28   age of 59.

6

36.   McKay McKinnon, M.D., departed from accepted standards of medical practice in that McKay McKinnon, M.D. and the residents and nurses and medical staff reporting to him negligently failed to care for the deceased properly, so that the deceased died from cardiac arrest and infection.

37   McKay McKinnon, M.D., departed from accepted standards of medial practice in that McKay McKinnon and the nurses and staff reporting to him discharged the deceased while she was running a temperature which caused her infection to worsen, and refused to readmit the deceased to defendant Hospital

38.   McKay McKinnon, M.D., departed from accepted standards of medical practice in that McKay McKinnon, M.D. and the residents and medical staff reporting to him negligently overdosed the deceased with pain killers and other medications so as to keep the deceased in a state of stupor during her Hospital stay.

39.   McKay McKinnon, M.D., departed from accepted standards of medical practice in that McKay McKinnon, M.D. and the residents and medical staff reporting to him failed to monitor the deceased's heart while she was under his care as a patient.

40.   McKay McKinnon, M.D., departed from accepted standards of medical practice in that McKay McKinnon failed to inform the deceased of the possible consequences of the pain medications he was prescribing for the deceased, as reasonable health professionals would have.

41.   One or mor of McKay McKinnon's departure from accepted standards of medical practice, listed above were the proximate cause of the deceased's injuries and death.

42.   The deceased and Plaintiffs were free of any wrongdoing that may have contributed to the deceased's injury and death.

43.   The deceased suffered injuries and infections causing her death, and left as her survivors her mother, Irma Carver, her sister, Madeleine Kates, and her brother, Lawrence Nemirow, all of whom have sustained pecuniary damages and loss as a result of the death of the deceased, including the loss of her love and companionship.

44. **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 740 ILCS 180/0.01-2.2, commonly known as the Wrongful Death Act, and demands judgment against McKay McKinnon for the following:

(a) Compensatory damages in an amount that exceeds $150,000.

(b) Plaintiffs costs of this action; and

(c) Such other and further relief as this Court deems just and appropriate.

<div align="center">

COUNT III: RES ISPA LOQUITOR/SURVIVAL ACTION
AGAINST MCKAY MCKINNON, M.D.

</div>

45. Plaintiffs realleges and incorporates herein by reference Paragraphs 1 through 44, as if fully set forth herein.

46. There was a physician-patient relationship between the deceased and defendant McKinnon.

47. The death of a 59 year patient following an examination and treatment for a hematoma that developed following the examination does not ordinally occur in the absence of negligence.

48. The deceased's death was caused by an instrumentality or agency under the exclusive management or control of defendant McKay McKinnon, M.D.

49. The deceased's death occurred under circumstances indicating that it was not due to any voluntary act or negligence on the deceased or the Plaintiffs part.

50. The deceased suffered injuries of a personal and pecuniary nature, including conscious physical pain and suffering and mental suffering prior to her death, and had she survived, she would be entitled to bring a cause of action for such personal and pecuniary damages, and such action survived her.

51. **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against McKay McKinnon, M.D. for the following:

(a) Compensatory damages in an amount that exceeds $150,000.

(b) Plaintiffs costs of this action; and

<div align="center">

8

COMPLAINT FOR MEDICAL MALPRACTICE; WRONGFUL DEATH AND SURVIVAL

</div>

1   (c)  Such other and further relief as this Court deems just and appropriate.

2   COUNT IV:  RES IPSA LOQUITOR/WRONGFUL DEATH ACTION
3   AGAINST MCKAY MCKINNON, M.S.

4   52.  Plaintiffs reallege and incorporates herein by reference Paragraphs 1
5   through 51, as if fully set forth herein.

6   53.  There was a physician-patient relationship between the deceased and
7   defendant McKinnon.

8   54.  The death of a 59 year patient following an examination and treatment for
9   a hematoma that developed following the examination does not ordinally occur in the
10  absence of negligence.

11  55.  The deceased's death was caused by an instrumentality or agency under the
12  exclusive management or control of defendant McKay McKinnon, M.D.

13  56.  The deceased's death occurred under circumstances indicating that it was
14  not due to any voluntary act or negligence on her or the Plaintiffs part.

15  57.  The deceased suffered injuries causing her death, and left as her survivors
16  her mother, Irma Carver, her sister, Madeleine Kates, and her brother, Lawrence
17  Nemirow, all of whom have suffered pecuniary damages and loss as a result of the
18  death of the deceased, including the loss of her love and companionship.

19  58.  **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 740
20  ILCS 180/0.01-2.2, commonly known as the Wrongful Death Act, and demands
21  judgment against McKay McKinnon for the following:

22  (a)  Compensatory damages in an amount that exceeds $150,000.

23  (b)  Plaintiffs costs of this action; and

24  (c)  Such other and further relief as this Court deems just and appropriate.

25  ///

26  ///

27  ///

28  ///

COMPLAINT FOR MEDICAL MALPRACTICE; WRONGFUL DEATH AND SURVIVAL

## COUNT V: INFORMED CONSENT/SURVIVAL ACTION
### AGAINST MCKAY MCKINNON, M.D.

59. Plaintiffs realleges and incorporates herein by reference Paragraphs 1 through 58, as if fully set forth herein..

60. There was a physician-client relationship between the deceased and defendant McKay McKinnon, M.D.

61. McKay McKinnon, M.D. failed to inform the deceased or the Plaintiffs of the possible consequences of his examination of Helene and his failure to evacuate the deceased's hematoma or properly treat the deceased, as reasonable health professionals would have. The "Authorization for Medical and/or Surgical Treatment" form and the other consent to medical treatment forms signed by the deceased did not warn the deceased of any possible consequences from the examination or the failure to evacuate the Hematoma, much less the consequence that followed here, the deceased's death.

62. McKay McKinnon M.D's failure to inform the deceased or the Plaintiff's of the possible consequences of the procedure was a proximate case of the deceased's death, in that a reasonable person would not have gone forward with the procedure had she been informed of the possible consequences of death, and in fact the deceased would not have gone forward with the examination had she been informed about the possible consequences of death.

63. The deceased suffered injuries of a personal and pecuniary nature, including conscious physical pain and suffering and mental suffering prior to her death, and had the deceased survived, she would be entitled to bring a cause of action for such personal and pecuniary damages, and such action survived the deceased.

64. **WHEREFORE,** Plaintiffs brings this cause of action pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against McKay McKinnon, M.D. for the following:

(a) Compensatory damages in an amount that exceeds $150,000.

1  (b)  Plaintiffs costs of this action; and

2  (c)  Such other and further relief as this Court deems just and appropriate.

3

4  COUNT VI:  INFORMED CONSENT/WRONGFUL DEATH ACTION
5                         AGAINST MCKAY MCKINNON, M.D.

6  65.  Plaintiffs realleges and incorporates herein by reference Paragraphs 1
7  through 64, as if fully set forth herein.

8  66.  There was a physician-patient relationship between the deceased and
9  defendant McKay McKinnon, M.D.

10  67. McKay McKinnon, M.D. failed to inform the deceased or the Plaintiffs of
11  the possible consequences of his examination of the deceased and McKinnon's failure
12  to evacuate the deceased's hematoma or properly treat her, as reasonable health
13  professionals would have. The "Authorization for Medical and/or Surgical Treatment"
14  form and the other consent to medical treatment forms signed by the deceased did not
15  warn the deceased of any possible consequences from the examination or the failure
16  to evacuate the Hematoma, much less the consequence that followed here: the
17  deceased's death.

18  68. McKay McKinnon M.D's failure to inform the deceased or the Plaintiff's
19  of the possible consequences of the procedure was a proximate case of the deceased's
20  death, in that a reasonable person would not have gone forward with the procedure had
21  she been informed of the possible consequences of death, and in fact the deceased
22  would not have gone forward with the examination had the deceased been informed
23  about the possible consequences of death.

24  69. The deceased suffered injuries causing the deceased's death, and left as her
25  survivors her mother, Irma Carver, her sister, Madeleine Kates, and her brother,
26  Lawrence Nemirow, all of whom have suffered pecuniary damages and loss as a result
27  of the death of Helene Nemirow, including the loss of her love and companionship.

28  70.  **WHEREFORE,** Plaintiffs brings this cause of action pursuant to 740

11
COMPLAINT FOR MEDICAL MALPRACTICE; WRONGFUL DEATH AND SURVIVAL

1 ILCS 180/0.01-2.2, commonly known as the Wrongful Death Act, and demands
2 judgment against McKay McKinnon for the following:

3 (a)  Compensatory damages in an amount that exceeds $150,000.

4 (b)  Plaintiffs costs of this action; and

5 (c)  Such other and further relief as this Court deems just and appropriate.

6

7 COUNT VII:  NEGLIGENT SUPERVISION/SURVIVAL ACTION
8 AGAINST MCKAY MCKINNON, M.D.

9    71.   Plaintiffs realleges and incorporates herein by reference Paragraphs 1
10 through 70, as if fully set forth herein.

11    72.   There was a physician-patient relationship between the deceased and
12 McKay McKinnon, M.D.

13    73.   McKay McKinnon, M.D., had a duty to the deceased to supervise the
14 residents and medical staff that reported to him and assisted in the treatment of the
15 deceased to ensure that the deceased was treated competently and in accordance with
16 accepted standards of medical practice, and to ensure that the staff that reported to him
17 dealt properly with any complications that might arise, in accordance with accepted
18 standards of medical practice.

19    74.   McKay McKinnon, M.D. breached this duty to the deceased in negligent
20 failing to supervise his staff, who neither performed the procedure of evacuating the
21 hematoma or controlling the resulting infections nor dealt with the complications that
22 arose in accordance with accepted standards of medical practice.

23    75. The deceased suffered injuries of a personal and pecuniary nature, including
24 conscious physical pain and suffering and mental suffering prior to her death, and had
25 the deceased survived, the deceased would be entitled to bring a cause of action for
26 such personal and pecuniary damages, and such action survived the deceased.

27    76.   **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 755
28 ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against

1 McKay McKinnon, M.D. for the following:

2 (a)  Compensatory damages in an amount that exceeds $150,000.

3 (b)  Plaintiffs costs of this action; and

4 (c)  Such other and further relief as this Court deems just and appropriate.

5

6                 COUNT VIII:  NEGLIGENT SUPERVISION/WRONGFUL DEATH
7                                           ACTION AGAINST MCKAY MCKINNON, M.D.

8       77.    Plaintiffs realleges and incorporates herein by reference Paragraphs 1
9 through 76, as if fully set forth herein.

10      78.    There was a physician-patient relationship between the deceased and
11 McKay McKinnon, M.D.

12      79.    McKay McKinnon, M.D.,  had a duty to the deceased to supervise the
13 residents and medical staff that reported to him and assisted in the treatment of the
14 deceased to ensure that she was treated competently and in accordance with accepted
15 standards of medical practice, and to ensure that the staff that reported to him dealt
16 properly with any complications that might arise, in accordance with accepted
17 standards of medical practice.

18      80.  McKay McKinnon, M.D. breached this duty to the deceased in negligently
19 failing to supervise his staff, who neither performed the procedure of evacuating the
20 hematoma or controlling the resulting infections nor dealt with the complications that
21 arose in accordance with accepted standards of medical practice.

22      81.  The deceased suffered injuries causing her death, and left as her survivors
23 her mother, Irma Carver, her sister, Madeleine Kates, and her brother, Lawrence
24 Nemirow, all of whom have suffered pecuniary damages and loss as a result of the
25 death of the deceased, including the loss of her love and companionship.

26      82.   **WHEREFORE,** Plaintiffs brings this cause of action pursuant to 740
27 ILCS 180/0.01-2.2, commonly known as the Wrongful Death Act, and demands
28 judgment against McKay McKinnon for the following:

1  (a)  Compensatory damages in an amount that exceeds $150,000.

2  (b)  Plaintiffs costs of this action; and

3  (c)  Such other and further relief as this Court deems just and appropriate.

4

5  COUNT IX:  MEDICAL MALPRACTICE/SURVIVAL ACTION AGAINST
6              UNIVERSITY OF CHICAGO HOSPITAL AND
              UNIVERSITY OF CHICAGO

7

8  83.  Plaintiffs reallege and incorporates herein by reference Paragraphs 1
9  through 19, as if fully set forth herein..

10  84.  There was a physician-patient relationship between the deceased and
11  defendants Hospital and University.

12  85.  In rendering medical treatment to the deceased, defendants Hospital and
13  University departed from accepted standards of medical practice.

14  86.  The Hospital and University departed from accepted standards of medical
15  practice in that the Hospital and University and its employees and agents negligently
16  failed to care for the deceased properly, by its failure to evacuate the hematoma as
17  reasonable health professionals would have, so that the deceased died from cardiac
18  arrest and infection.

19  87.  The Hospital and University departed from accepted standards of medical
20  practice in that the Hospital and University and its employees and agents negligently
21  discharged the deceased to a nursing home knowing that she had developed a
22  dangerous infection, so that the deceased died from cardiac arrest and infection.

23  88.  The Hospital and University departed from accepted standards of medical
24  practice in that the Hospital and University and its employees and agents negligently
25  refused to readmit the deceased to the Hospital from Warren Barr pavilion when the
26  knew that the infection worsened, so that the deceased died from cardiac arrest and
27  infection.

28  89.  The Hospital and University departed from accepted standards of medical

14

1 practice in that the Hospital and University and its employees and agents negligently
2 administered drugs without a cardiac consult, so that the deceased died from cardiac
3 arrest.

4    90. The Hospital and University departed from accepted standards of medical
5 practice in that the Hospital and University and its agents and employees and agents
6 overdosed the deceased with pain killers which kept the deceased in a state of stupor
7 during her Hospital stay which weakened her heart, so that Helene died from cardiac
8 arrest.

9    91 The Hospital and University departed from accepted standards of medical
10 practice in that the Hospital and University and its agents and employees failed to
11 diagnosis and treat the deceased's infection, so that Helene died from cardiac arrest
12 and infection.

13    92. The Hospital and University departed from accepted standards of medical
14 practice in that the Hospital and University and its agents and employees negligently
15 failed to monitor the deceased's recovery progress including to monitor the deceased's
16 heart, so that the deceased died from cardiac arrest and infection.

17    93. The Hospital and University departed from accepted standards of medial
18 practice in that the Hospital and University and its agents and employees negligently
19 failed to resuscitate the deceased properly.

20    94. The Hospital and University departed from accepted standards of medical
21 practice in that the Hospital and University negligently hired agents and employees
22 who were not competent, or who the Hospital and University in the exercise of
23 reasonable care should have known were not competent, to render to the deceased the
24 medical care the deceased required.

25    95. The Hospital and University departed from accepted standards of medical
26 care in that the Hospital and University negligently supervised its agents and
27 employees who negligently rendered medical care to the deceased.

28 ///

96.   One or more of the Hospital's and University's departures from accepted standards of medical practice, listed above, were the proximate cause of the deceased's injuries and death.

97.   Plaintiffs were free of any wrongdoing that may have contributed to the deceased's injuries and death.

98.   The deceased suffered injuries of a personal and pecuniary nature, including conscious pain and suffering and mental suffering prior to her death; and had she survived, she would have been entitled to bring a cause of action for such personal and pecuniary damages, and such action survived her.

99.   **WHEREFORE**, Plaintiff brings this cause of action pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against the Hospital and the University for the following:

(a)   Compensatory damages in an amount that exceeds $150,000;

(b)   Plaintiff's costs of this action; and

(c)   Such other and further relief as this Court deems just and appropriate.

COUNT X: MEDICAL MALPRACTICE/WRONGFUL DEATH ACTION
AGAINST UNIVERSITY OF CHICAGO HOSPITAL AND
UNIVERSITY OF CHICAGO

100.   Plaintiffs reallege and incorporates herein by reference Paragraphs 1 through 19, and 82-99, as if fully set forth herein.

101.   There was a physician-patient relationship between the deceased and defendants Hospital and University.

102.   In rendering medical treatment to the deceased, defendants Hospital and University departed from accepted standards of medical practice.

103.   The Hospital and University departed from accepted standards of medical practice in that the Hospital and University and its employees and agents negligently failed to care for the deceased properly, by its failure to evacuate the hematoma as reasonable health professionals would have, so that the deceased died from cardiac

16

1   arrest and infection.

2       104.  The Hospital and University departed from accepted standards of medical
3   practice in that the Hospital and University and its employees and agents negligently
4   discharged the deceased to a nursing home knowing that she had developed a
5   dangerous infection, so that the deceased died from cardiac arrest and infection.

6       105.  The Hospital and University departed from accepted standards of medical
7   practice in that the Hospital and University and its employees and agents negligently
8   refused to readmit the deceased to the Hospital from Warren Barr pavilion when the
9   knew that the infection worsened, so that the deceased died from cardiac arrest and
10  infection.

11      106.  The Hospital and University departed from accepted standards of medical
12  practice in that the Hospital and University and its employees and agents negligently
13  administered drugs without a cardiac consult, so that the deceased died from cardiac
14  arrest.

15      107.  The Hospital and University departed from accepted standards of medical
16  practice in that the Hospital and University and its agents and employees and agents
17  overdosed the deceased with pain killers which kept the deceased in a state of stupor
18  during the deceased Hospital stay which weakened the deceased's heart, so that the
19  deceased died from cardiac arrest.

20      108.  The Hospital and University departed from accepted standards of medical
21  practice in that the Hospital and University and its agents and employees failed to
22  diagnosis and treat the deceased's infection, so that the deceased died from cardiac
23  arrest and infection.

24      109.  The Hospital and University departed from accepted standards of medical
25  practice in that the Hospital and University and its agents and employees negligently
26  failed to monitor the deceased's recovery progress including to monitor the deceased's
27  heart, so that the deceased died from cardiac arrest and infection.

28      110.  The Hospital and University departed from accepted standards of medial

17

1  practice in that the Hospital and University and its agents and employees negligently
2  failed to resuscitate the deceased Nemirow properly.

3      111.  The Hospital and University departed from accepted standards of medical
4  practice in that the Hospital and University negligently hired agents and employees
5  who were not competent, or who the Hospital and University in the exercise of
6  reasonable care should have known were not competent, to render to the deceased the
7  medical care she required.

8      112.  The Hospital and University departed from accepted standards of medical
9  care in that the Hospital and University negligently supervised its agents and
10 employees who negligently rendered medical care to the deceased.

11     113.  One or more of the Hospital's and University's departures from accepted
12 standards of medical practice, listed above, were the proximate cause of the deceased's
13 injuries and death.

14     114.  Plaintiffs were free of any wrongdoing that may have contributed to the
15 deceased's injuries and death.

16     115.  The deceased suffered injuries causing her death, and left as her survivor
17 her mother, Irma Carver, her sister, Madeleine Kates, and her brother, Lawrence
18 Nemirow, all of whom have sustained pecuniary damages and loss as a result of the
19 death of the deceased, including loss of her love and companionship.

20     116.  **WHEREFORE**, Plaintiff brings this cause of action pursuant to 740
21 ILCS 180/0.01-2.2, commonly known as the Wrongful Death Act, and demands
22 judgment against the Hospital and the University for the following:

23 (a)  Compensatory damages in an amount that exceeds $150,000;

24 (b)  Plaintiff's costs of this action; and

25 (c)  Such other and further relief as this Court deems just and appropriate.

26 ///

27 ///

28 ///

COUNT XI:  RES ISPA LOQUITOR ACTION AGAINST
UNIVERSITY OF CHICAGO HOSPITAL AND
UNIVERSITY OF CHICAGO

117.   Plaintiffs reallege and incorporates herein by reference Paragraphs 1 through 19, and 82 through 116 as if fully set forth herein.

118.   There was a physician-patient relationship between the deceased and defendants Hospital and University.

119.  The death of a 59 year patient following an examination and treatment for a hematoma that developed following the examination does not ordinally occur in the absence of negligence.

120.  The deceased's death was caused by an instrumentality or agency under the exclusive management or control of defendants Hospital and University.

121.  The deceased's death occurred under circumstances indicating that it was not due to any voluntary act or negligence on her or the Plaintiffs part.

122.   The deceased suffered injuries of a personal and pecuniary nature, including conscious physical pain and suffering and mental suffering prior to her death, and had she survived, she would be entitled to bring a cause of action for such personal and pecuniary damages, and such action survived her.

123.   **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against the University of Chicago Hospital and the University of Chicago for the following:

(a)   Compensatory damages in an amount that exceeds $150,000.

(b)   Plaintiffs costs of this action; and

(c)   Such other and further relief as this Court deems just and appropriate.

///

///

///

///

19

COUNT XII: RES IPSA LOQUITOR/WRONGFUL DEATH ACTION
AGAINST UNIVERSITY OF CHICAGO HOSPITAL AND
UNIVERSITY OF CHICAGO

124. Plaintiffs realleges and incorporates herein by reference Paragraphs 1 through 19, and 82 through 123 as if fully set forth herein.

125. There was a physician-patient relationship between the deceased and defendants Hospital and University.

126. The death of a 59 year patient following an examination and treatment for a hematoma that developed following the examination does not ordinally occur in the absence of negligence.

127. The deceased's death was caused by an instrumentality or agency under the exclusive management or control of defendants Hospital and University

128. The deceased's death occurred under circumstances indicating that it was not due to any voluntary act or negligence on the deceased or the Plaintiffs part.

129. The deceased suffered injuries causing her death, and left as her survivors her mother, Irma Carver, her sister, Madeleine Kates, and her brother, Lawrence Nemirow, all of whom have suffered pecuniary damages and loss as a result of the death of Helene Nemirow, including the loss of her love and companionship.

130. **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 740 ILCS 180/0.01-2.2, commonly known as the Wrongful Death Act, and demands judgment against the University of Chicago Hospital and the University of Chicago for the following:

(a) Compensatory damages in an amount that exceeds $150,000.

(b) Plaintiffs costs of this action; and

(c) Such other and further relief as this Court deems just and appropriate.

///
//
///

COMPLAINT FOR MEDICAL MALPRACTICE; WRONGFUL DEATH AND SURVIVAL

COUNT XIII: INFORMED CONSENT/SURVIVAL ACTION
AGAINST UNIVERSITY OF CHICAGO HOSPITAL
AND UNIVERSITY OF CHICAGO

131.  Plaintiffs realleges and incorporates herein by reference Paragraphs 1 through 19, and 82 through 130 as if fully set forth herein.

132.  There was a physician-client relationship between the deceased and defendants Hospital and University.

133.  Hospital and University failed to inform the deceased or the Plaintiffs of the possible consequences of the failure to evacuate her hematoma or properly treat her, as reasonable health professionals would have. The "Authorization for Medical and/or Surgical Treatment" form and the other consent to medical treatment forms signed by the deceased did not warn the deceased of any possible consequences from the failure to evacuate the Hematoma, much less the consequence that followed here: the deceased's death.

134.  The Hospital's and University's failure to inform the deceased or the Plaintiff's of the possible consequences of the failure to evacuate the hematoma or properly treat her was a proximate case of the deceased's death, in that a reasonable person would not have gone forward with the examination or admission to the Hospital had she been informed of the possible consequences of death, and in fact the deceased would not have gone forward with the examination or admission to te Hospital had the deceased been informed about the possible consequences of death.

135.  The deceased suffered injuries of a personal and pecuniary nature, including conscious physical pain and suffering and mental suffering prior to her death, and had she survived, she would be entitled to bring a cause of action for such personal and pecuniary damages and such action survived her

136.  **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against the Hospital and theUniversity for the following:

(a)  Compensatory damages in an amount that exceeds $150,000.

21

1  (b)  Plaintiffs costs of this action; and

2  (c)  Such other and further relief as this Court deems just and appropriate.

3

4  ## COUNT XIV: INFORMED CONSENT/WRONGFUL DEATH
5  ## ACTION AGAINST UNIVERSITY OF CHICAGO HOSPITAL AND UNIVERSITY OF CHICAGO

6  137.  Plaintiffs realleges and incorporates herein by reference Paragraphs 1
7  through 19, and 82 through 114 as if fully set forth herein.

8  138.  There was a physician-client relationship between the deceased and
9  defendants Hospital and University.

10  139.  Hospital and University failed to inform the deceased or the Plaintiffs of
11  the possible consequences of the failure to evacuate the deceased's hematoma or
12  properly treat the deceased, as reasonable health professionals would have. The
13  "Authorization for Medical and/or Surgical Treatment" form and the other consent to
14  medical treatment forms signed by the deceased did not warn the deceased of any
15  possible consequences from the failure to evacuate the Hematoma, much less the
16  consequence that followed here: the deceased's death.

17  140.  The Hospital's and University's failure to inform the deceased or the
18  Plaintiffs of the possible consequences of the failure to evacuate the hematoma or
19  properly treat her was a proximate case of the deceased's death, in that a reasonable
20  person would not have gone forward with the examination or admission to the
21  Hospital had the deceased been informed of the possible consequences of death, and
22  in fact the deceased would not have gone forward with the examination or admission
23  to the Hospital had the deceased been informed about the possible consequences of
24  death.

25  141.  The deceased suffered injuries causing her death, and left as her survivors
26  her mother, Irma Carver, her sister, Madeleine Kates, and her brother, Lawrence
27  Nemirow, all of whom have suffered pecuniary damages and loss as a result of the
28  death of the deceased, including the loss of her love and companionship.

1    142.  **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 740
2   ILCS 180/0.01-2.2, commonly known as the Wrongful Death Act, and demands
3   judgment against the University of Chicago Hospital and the University of Chicago
4   for the following:

5   (a)  Compensatory damages in an amount that exceeds $150,000

6   (b)  Plaintiffs costs of this action; and

7   (c)  Such other and further relief as this Court deems just and appropriate.

8

9   COUNT XV: NEGLIGENT HIRING/SURVIVAL ACTION AGAINST
           THE UNIVERSITY OF CHICAGO HOSPITAL AND
10                  THE UNIVERSITY OF CHICAGO

11    143.  Plaintiffs reallege and incorporates herein by reference Paragraphs 1
12   through 19, and 82-142, as if fully set forth herein..

13    144.  There was a physician-patient relationship between the deceased and the
14   Hospital and the University.

15    145.  The Hospital and the University had a duty to the deceased to hire only
16   health professionals who were competent in treating patients with neurofirbromatosis
17   and with hematoma's and who were competent to deal properly with any
18   complications that might arise.

19    146.  The employees and agents of the Hospital and the University were not
20   competent to deal with neurofibromatosis and hematoma's such as the deceased had
21   and were not competent to deal properly with any complications that might (and did)
22   arise to treat any resulting infections and administer proper medications in order to
23   save the deceased's life.

24    147.  The Hospital and University knew or should have known that its
25   employees and agents were incompetent, and breached its duty to the deceased in
26   negligently hiring (and/or in negligently checking the qualifications of those
27   employees and agents) and in negligently assigning them to treat the deceased,
28   resulting in the deceased's death.

1   148. The deceased suffered injuries of a personal and pecuniary nature,
2   including conscious physical pain and suffering and mental suffering prior to her
3   death, and had she survived, she would be entitled to bring a cause of action for such
4   personal and pecuniary damages and such action survived her.

5   149. **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 755
6   ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against
7   the Hospital and the University for the following:

8   (a)  Compensatory damages in an amount that exceeds $150,000.

9   (b)  Plaintiffs costs of this action; and

10  (c)  Such other and further relief as this Court deems just and appropriate.

11

12                COUNT XVI: NEGLIGENT HIRING/WRONGFUL DEATH
13                    ACTION AGAINST THE UNIVERSITY OF
                   CHICAGO HOSPITAL AND THE UNIVERSITY
14                          OF CHICAGO

15  150. Plaintiffs realleges and incorporates herein by reference Paragraphs 1
16  through 19, and 142 through 149, as if fully set forth herein.

17  151. There was a physician-patient relationship between the deceased and the
18  Hospital and the University.

19  152. The Hospital and the University had a duty to the deceased to hire only
20  health professionals who were competent in treating patients with neurofirbromatosis
21  and with hematoma's and who were competent to deal properly with any
22  complications that might arise.

23  153. The employees and agents of the Hospital and the University were not
24  competent to deal with neurofibromatosis and hematoma's such as the deceased had
25  and were not competent to deal properly with any complications that might (and did)
26  arise to treat any resulting infections and administer proper medications in order to
27  save the deceased's life.

28  154. The Hospital and University knew or should have known that its

24

1 employees and agents were incompetent, and breached its duty to the deceased in
2 negligently hiring (and/or in negligently checking the qualifications of those
3 employees and agents) and in negligently assigning them to treat the deceased,
4 resulting in deceased's death.

5    155.  The deceased suffered injuries causing her death, and left as her survivors
6 her mother, Irma Carver, her sister, Madeleine Kates, and her brother, Lawrence
7 Nemirow, all of whom have suffered pecuniary damages and loss as a result of the
8 death of the deceased, including the loss of her love and companionship.

9    156.  **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 740
10 ILCS 180/0.01-2.2, commonly known as the Wrongful Death Act, and demands
11 judgment against the University of Chicago Hospital and the University of Chicago
12 for the following:

13 (a)  Compensatory damages in an amount that exceeds $150,000.

14 (b)  Plaintiffs costs of this action; and

15 (c)  Such other and further relief as this Court deems just and appropriate.

16

17 COUNT XVII: NEGLIGENT SUPERVISION/SURVIVAL ACTION AGAINST
THE UNIVERSITY OF CHICAGO HOSPITAL AND
18 THE UNIVERSITY OF CHICAGO

19    157.  Plaintiffs realleges and incorporates herein by reference Paragraphs 1
20 through 19, and 142 through 156, as if fully set forth herein.

21    159.  There was a physician-patient relationship between the deceased  and the
22 Hospital and the University.

23    160.  The Hospital and the University had a duty to the deceased to supervise
24 its health professionals who were responsible for  treating patients with
25 neurofirbromatosis and with hematoma's and to ensure that its agents and employees
26 dealt properly with any complications that might arise.

27    161.  The Hospital and the University breached its duty to the deceased in
28 negligently failing to supervise its employees and agents who neither performed the

1 evacuated the hematoma or properly treated the infection nor dealt with any
2 complications that arose in accordance with accepted standards of medical practice.

3    162. The deceased suffered injuries of a personal and pecuniary nature,
4 including conscious physical pain and suffering and mental suffering prior to her
5 death, and had she survived, she would be entitled to bring a cause of action for such
6 personal and pecuniary damages and such action survived her.

7    163. **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 755
8 ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against
9 the Hospital and the University for the following:

10 (a) Compensatory damages in an amount that exceeds $150,000.

11 (b) Plaintiffs costs of this action; and

12 (c) Such other and further relief as this Court deems just and appropriate.

13

14 COUNT XVII: NEGLIGENT SUPERVISION/WRONGFUL DEATH
15 ACTION AGAINST THE UNIVERSITY OF CHICAGO
HOSPITAL AND THE UNIVERSITY OF CHICAGO

16

17    164. Plaintiffs realleges and incorporates herein by reference Paragraphs 1
18 through 19, and 142 through 163, as if fully set forth herein.

19    165. There was a physician-patient relationship between the deceased and the
20 Hospital and the University.

21    166. The Hospital and the University had a duty to the deceased to supervise
22 its health professionals who were responsible for treating patients with
23 neurofirbromatosis and with hematoma's and to ensure that its agents and employees
24 dealt properly with any complications that might arise.

25    167. The Hospital and the University breached its duty to the deceased in
26 negligently failing to supervise its employees and agents who neither performed the
27 evacuated the hematoma or properly treated the infection nor dealt with any
28 complications that arose in accordance with accepted standards of medical practice..

26

1    168.  The deceased suffered injuries causing her death, and left as her survivors

2 her mother, Irma Carver, her sister, Madeleine Kates, and her brother, Lawrence

3 Nemirow, all of whom have suffered pecuniary damages and loss as a result of the

4 death of the deceased, including the loss of her love and companionship.

5    169.  **WHEREFORE**, Plaintiffs brings this cause of action pursuant to 740

6 ILCS 180/0.01-2.2, commonly known as the Wrongful Death Act, and demands

7 judgment against the University of Chicago Hospital and the University of Chicago

8 for the following:

9 (a)  Compensatory damages in an amount that exceeds $150,000.

10 (b)  Plaintiffs costs of this action; and

11 (c)  Such other and further relief as this Court deems just and appropriate.

12 ///

13 Date: November 7, 2007

14                                    By  _Lawrence H. Nemirow_

15                                        LAWRENCE H. NEMIROW
                                         Administrator for the Estate
16                                       of HELENE S. NEMIROW
                                         in *Pro Se*

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR MEDICAL MALPRACTICE; WRONGFUL DEATH AND SURVIVAL