Lawrence H. Nemirow
5242 Katella Ave., Suite 104
Los Alamitos, CA 90720-2820
Tel. (562) 799-1379
Fax. (562) 799-1377

*Pro Se* for the Estate of Helene S. Nemirow et al

**FILED**
Jan 29 2008
JAN 29 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THE ESTATE OF HELENE S. NEMIROW; IRMA CARVER; MADELEINE KATES and LAWRENCE H. NEMIROW, as survivors of HELENE S. NEMIROW, deceased.<br><br>Plaintiffs,<br><br>v<br><br>MCKAY MCKINNON, M.D., THE UNIVERSITY OF CHICAGO HOSPITALS, an Illinois corporation; THE UNIVERSITY OF CHICAGO, an Illinois not-for-profit corporation; and DOES 1 through 50, Inclusive<br><br>Defendants. | Civil Action No. 07CV6413<br><br>Judge George Marovich<br>Mag. Judge Nolan<br><br>**DECLARATION UNDER PENALTY OF PERJURY IN OPPOSITION TO DEFENDANT McKAY McKINNON M.D.'s MOTION TO DISMISS** |

STATE OF CALIFORNIA} §
COUNTY OF ORANGE  } §

Declaration of LAWRENCE H. NEMIROW.

I, LAWRENCE H. NEMIROW, declare as follows:

1. I am the administrator of the ESTATE OF HELENE S. NEMIROW DECEASED, appearing *Pro Se* in the State of Illinois on behalf of the Estate and for myself as a plaintiff and for plaintiffs IRMA CARVER and MADELEINE KATES.

1  I am also an attorney at law in the State of California admitted to practice law in any of the State of California Courts and I am admitted to practice law in the United States District Court for the Central District of California, and if called to testify to any of the facts stated hereunder, could an would testify.

2. On September 22, 2006, I submitted a request for records to Dr. McKinnon in the subject matter case attached as Exhibit A. The only records received was from the University of Chicago Hospitals and to my knowledge, did not include Dr. McKinnon's records.

3. On March 12, 2007, I submitted a notice of claim to Dr. McKinnon (attached as Exhibit B). The last paragraph of that letter stated that I consulted with doctors in California who believed that there was a meritorious case. I received no written response to the notice of claim, and no request for a written opinion from a qualified expert.

4. The Complaint in this matter was filed on November 13, 2007.

5. At the time I filed the Complaint against Dr. McKinnon, I had a good faith belief that because of diversity and minimum contact issues, I could file the action in the US District Court for the Northern District of Illinois, and under the theory of conflict of laws, I could file the complaint under any of the laws of the state where the plaintiffs or the deceased resided without having to submit to the filing requirements of the State of Illinois.

6. To the best of my knowledge and belief, in California, the legal residence of plaintiff Lawrence H. Nemirow, a written expert opinion may not be required prior to the filing of a medical malpractice claim.

7. From knowledge and belief, In New York, the then legal residence of the deceased and plaintiff Irma Carver, at the time of filing a complaint or within 90 days thereafter, a claimant generally must file a certificate which indicates that the claimant's attorney has consulted with an expert on the case or, in the alternative, that such a consultation could not be obtained. Under this law the 90 day period does not

DECLARATION UNDER PENALTY OF PERJURY IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1 expire until February 10, 2008.

2     8. From knowledge and belief, In New Jersey, the legal residence of plaintiff Madeleine Kates, in a medical malpractice case based on facts occurring on or after June 29, 1995, within sixty days of the commencement of the action plaintiff must file an affidavit by an appropriate licensed person stating that there exists a reasonable probability that the care, skill, or knowledge exercised in the treatment fell outside acceptable professional standards or treatment practices.

    9. If my belief that I had a choice of laws was wrong, then it was a mistake to assume that I could choose the more liberal of the State laws, and the failure to obtain a written opinion should be excused because mistake, surprise and neglect to contact the Federal Court in Illinois to determine which State Law, if any, would be applied.

    10. It would be in the interest of justice and fair play to allow plaintiff leave to amend the complaint and give plaintiff additional time to obtain the expert opinion.

    11. Defendant would not be prejudiced by the granting of additional time as the Statute of Limitations does not expire until September 14, 2008

I, LAWRENCE H. NEMIROW declare, under penalty of perjury under the laws of the State of California, the State of Illinois, and United States of America, the foregoing is true and correct.

EXECUTED on January 24, 2008

                                                LAWRENCE H. NEMIROW

DECLARATION UNDER PENALTY OF PERJURY IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

EXHIBIT A

THE LAW OFFICES OF

# LAWRENCE H. NEMIROW
ATTORNEY AT LAW
A PROFESSIONAL CORPORATION

5242 Katella Avenue,
Suite 104
Los Alamitos, CA 90720-2820
(562) 799-1379
Fax (562) 799-1377
nemirow@aol.com

September 22, 2006

Dr. McKay McKinnon, MD
The University of Chicago Hospitals
5841 South Maryland Ave. MC1098
Chicago, Illinois 60637

Re: Helene Nemirow
SS Number 13-38-8905
Death of Death September 14, 2006

Dear Dr. McKinnon:

This letter is written on behalf of my mother, myself, and my sister Madeleine Kates to request that you send to my office a copy of all my sisters medical records from the date of her first admission to The University of Chicago Hospitals to the date of her death including but not limited to admission forms, incident reports, AMA forms, emergency room records, diagnostic reports, all electrocardiogram reports/tracings and other electronic, diagnostic materials, radiology and other imaging reports, consultation reports, anesthesia records, pathology reports, laboratory analyses, admission history and physical examination forms, physicians orders, physician's progress records, death summary, narrative nursing notes, graphic record/vital signs record, intake and output reports, intravenous fluid reports, reports of all drugs administered including dosages and emergency resuscitation reports.

I am enclosing a blank check made payable to the University of Chicago Hospitals in an amount not to exceed $500 to cover the copying costs, if any.

This letter is also written to advise you any communications that you or your fellow physicians have in the future must be limited to myself.

Very Truly Yours,

Lawrence H. Nemirow

EXHIBIT B

THE LAW OFFICES OF

# LAWRENCE H. NEMIROW
ATTORNEY AT LAW
A PROFESSIONAL CORPORATION

5242 Katella Avenue,
Suite 104
Los Alamitos, CA 90720-2820
(562) 799-1379
Fax (562) 799-1377
nemirow@aol.com

March 12, 2007

McKay McKinnon, MD
680 North Lake Shore Dr., Ste 1208
Chicago, IL 60611

Re: <u>Estate of Helene Nemirow vs. McKay McKinnon, MD</u>

Dear Dr. McKinnon:

This letter is written to advise that on behalf of the Estate of Helene Nemirow (hereinafter "Helene"), that upon review of the medical records and upon personal knowledge, we intend to file a wrongful death action against you unless we can settle this matter without litigation.

The statement of facts in this matter is as follows:

As you have been informed, in 2005, Helene saw an Oprah Winfree show regarding you. According to the show you removed a 200 lb. Tumor from a woman with NF in Romania. Helene contacted your office and your office stated that you would see her.

Helene's condition of Neurofibromatosis caused excess skin grown on both of her legs. As the skin grew, it became more uncomfortable to dress, especially with putting on pants.

Testimony will show that In May, 2006 Helene contacted your office to see if you would travel to Florida to examine her. The family offered to pay all of your expenses. You was aware of her difficulties with travel. The family agreed to fund the cost of her travel, along with her 80 year old mother to go to Chicago to see you. and that you replied that you would only see Helene if she came to Chicago.

Helene's mother will testify that in July, 2006, she and Helene and Traveled to Chicago and Checked into Hotel at a cost of $700 per week to keep appoint with your office on July 18,2006.

March 12, 2007
page 2

     We will allege through competent testimony, that in your July 18, 2006 examination of Helene, you manipulated the flesh around her thighs in such a rough manner as to cause her a Hematoma. Witnesses will testify that you had been advised by Helene that prior doctors cautioned against such manipulation with her condition. Helene was admitted to University of Chicago Hospital on that date.

     Based upon all facts and evidence as reported to us by Helene and her mother, on July 19, 2006 you walked into Helene's room and observed her trying to clean the Hematoma site which had begun to drain blood. It is alleged that you accused her of causing her of causing the Hematoma so that you would operate on her. Testimony will show that Helene informed you that she did not cause the Hematoma, and that the Hematoma probably occurred because of the way you examined her the day before.

     We have been advised that you did not see your patient Helene until July 20, 2006 after she was prepped her for surgery and taken to the operating room. We believe that the evidence will show that you walked into the operating room and made the decision not to operate, and not to evacuate the Hematoma. Based upon information and belief, we will allege and prove that an infection developed as a result of your refusal to evacuate and clean the Hematoma.

     We will allege and prove that on July 22, 2006, despite Helene's infection you recommended that Helene go home to Florida and that you discharged her while she suffered from the infection. Evidence and testimony will show that Helene, being too sick to travel back to Florida, was sent to Warren Barr Pavilion.

     The evidence and testimiony will show that on August 1, 2006 Warren Barr sent Helene back to UCI ER for evaluation because of a high WBC count (21.9) caused by the infection. Based upon information and belief, the ER at UCI kept Helene and her mother waiting in ER for ten hours and did not admit her because you did not believe her condition appeared life threatening and Helene was again discharged, this time to Lakeview nursing home.

     Evidence and testimony will further show that on August 17, 2006 the doctors at Lakeview were concerned about the spiking WBC levels caused by the infection. The doctors at Lakeview sent Helene back to UCI. and that you again felt that her condition did not warrant admission to the Hospital and that you refused to admit her.

March 12, 2007
page 3

      I will testify that on August 22, 2006, I was called by the doctors at Lakeview who were very concerned about Helene's condition. That they advised me that she needed hospitalization, and that UCI was refusing to admit her.

      I will further testify that I flew to Chicago and called Helene's UCI hematologist who asked that Helene be admitted to UCI without further delay.

      My testimony and the records will show that in the three days I was with Helene at UCI, from August 23, 2006 to August 25, 2006 her infection was so bad that she had to be placed on five different antibiotics.

      I will testify along with other witnesses, including UCI's Barbara Passman, that when you, finally came into my sisters room the morning of August 25, you surmised that my sister could be discharged in about a week or two and that she was well enough to go back to Florida.

      I will testify that I advised you directly that I believed Helene was being over medicated because she would not be able to stay awake. I advised you that she would fall asleep and could not be aroused, or that during a conversation she would drag on each word with pauses of several seconds and sometimes minutes between words and she would be unawares of doing it. In the middle of a phone conversation she would be drop the phone and sleep.

      Multiple witness will testify that during this three week period, conversations with Helene were becoming more difficult. She would be asleep more than she was awake and when she was lucid she would advise me that the nurses were making mistakes with the medical dosages. I spoke with one of her attending doctors (I believe it was a GI named Dr. Susan Hong) and she agreed to look into it.

      Throughout this period, the family was advised that you failed to treat Helene, and that the UCI staff, based upon your recommendations informed the family that the staff believed that Helene had stabilized enough to go home to Florida or to an acute care facility (similar to Kindred) in Chicago.

March 12, 2007
page 4


The death certificate states the illness that led to Helene's death was Neurofibromatosis and that the death was due to or as consequence of "Chronic Infection of Hematoma".

We will show at trial that but for your negligent failure to prevent the infection by evacuating the hematoma in a timely manner, and your failure to treat the infection promptly and properly once the infection began, and your failing to prevent the overdosing of medications, that Helene would have been alive today.

I have consulted with doctors in California who believe that the death was wrongful. To spare the family an expensive wrenching legal action and the hiring of expert doctors, we are prepared to entertain a settlement offer consistent with other wrongful death settlements in the State of Illinois.

Your prompt response would be appreciated.

Very Truly Yours,

Lawrence H. Nemirow