Lawrence H. Nemirow
5242 Katella Ave., Suite 104
Los Alamitos, CA 90720-2820
Tel. (562) 799-1379
Fax. (562) 799-1377

*Pro Se* for the Estate of Helene S. Nemirow

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THE ESTATE OF HELENE S. NEMIROW; by the estate administrator LAWRENCE H. NEMIROW<br><br>Plaintiff,<br><br>v<br><br>MCKAY MCKINNON, M.D., THE THE UNIVERSITY OF CHICAGO HOSPITALS, an Illinois corporation; THE UNIVERSITY OF CHICAGO, an Illinois not-for-profit corporation; and DOES 1 through 50, Inclusive<br><br>Defendants. | Civil Action No. 07-cv-6413<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**MEDICAL MALPRACTICE WRONGFUL DEATH AND SURVIVAL**<br><br>**JURY TRIAL DEMANDED** |

## NATURE OF THE ACTION

1.  This action arises as a result of Medical Malpractice which led to the wrongful death of Helene Susan Nemirow.

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (a) as the suit involves a controversy between citizens of different states.

3.  Venue is properly laid in the Southern District of Illinois pursuant to

1

28 U.S.C. § 1391 (a) (1) and 28 U.S.C. § 1391 (a) (2) in that at least one of the defendants resides in this district, and a substantial part of the events or ommissions giving rise to this claim occurred in this district.

## PARTIES

4. The ESTATE OF HELENE S. NEMIROW (hereafter "the deceased"), by LAWRENCE H. NEMIROW (hereinafter "Administrator"), duly appointed to act as administrator by the State of New York. At all times mentioned the Administrator was a resident of the State of California.

5. Defendants, MCKAY MCKINNON, M.D, and DOES 1-24, and each of them, at all times mentioned, held themselves out to the public and large and to the deceased, in particular, as fully qualified physicians and surgeons, duly licensed to practice their profession in the State of Illinois.

6. Defendant UNIVERSITY OF CHICAGO HOSPITALS (hereinafter "Hospital", at all times mentioned, owned and/or operated, managed, controlled and administered a general hospital facility in the Northern District of Illinois and held itself out to the public at large, and the deceased in particular, as a properly equipped, fully accredited, competently staffed hospital with qualified and prudent personnel, and operating in compliance with the standard of care maintained in other properly and efficiently administered, accredited hospitals in the Northern District of Illinois medical community and offering full, competent and efficient hospital, medical, laboratory, x-ray, anesthesia, paramedical and other services to the general public and to the deceased herein; and said defendant UNIVERSITY OF CHICAGO HOSPITALS, administered, governed, controlled, managed and directed all the necessary functions, activities and operations of said hospital including its nursing care, training of interns, residents and house staff, and the activities of physicians and surgeons acting within said hospital.

7. At all times mentioned herein, the defendants, DOES 25 through 40, inclusive, and each of them, were the agents, servants and employees of the co-

2
FIRST AMENDED COMPLAINT FOR MEDICAL MALPRACTICE; WRONGFUL DEATH AND SURVIVAL

defendant, UNIVERSITY OF CHICAGO HOSPITALS, and at all times mentioned, were acting within the course and scope of their agency and employment with said principal or employer.

8. Defendant UNIVERSITY OF CHICAGO (hereinafter "University"), at all times mentioned was, and is, an Illinois not-for-profit corporation in the Northern District of Illinois.

9. DOES, defendants 41 through 50, inclusive, are sued herein under fictitious names. Plaintiff is informed and believes, and thereon alleges, that said DOE Defendants are whose individual names and capacities are not currently known to Plaintiff, was in some way responsible for the wrongful death of the deceased. When their true names and capacities are ascertained, Plaintiff will amend this Complaint by inserting said true names and capacities.

10. Plaintiff is informed and believes, and thereon alleges, that all Defendants herein, and their directors, officers, officials, managers and supervisors are vicariously liable for the breaches, acts and omissions of any and all Defendants, named or DOE, committed within the course and scope of their employment and/or agency, which breaches, acts and omissions are fully set forth herein.

12. Plaintiff is informed and believes, and thereon alleges, that at all times during the breaches, acts and occurrences herein mentioned, each of the Defendants (both named and DOE) was the partner, principal, agent, employer, employee, or other representative of (or co-conspirator with) each of the remaining Defendants, and in doing or failing to do the things herein alleged, was acting within the scope and course of such partnership, agency, employment, conspiracy, or other legal relationship, and with the permission, consent and/or ratification of said remaining Defendants.

## BACKGROUND OF THE ALLEGATIONS

13. The deceased, HELENE S. NEMIROW, was at the time of her death a resident of the State of New York and also resided in the State of Florida. Prior to receiving medical treatment from the defendants, she was in good health. She went

3
FIRST AMENDED COMPLAINT FOR MEDICAL MALPRACTICE; WRONGFUL DEATH AND SURVIVAL

to defendant McKinnon for plastic surgery to remove excess skin growth on her legs and thighs.

14. On or about July 18, 2006, the deceased consulted Dr. McKay McKinnon, Chief of the Plastics Unit at Defendant Hospital for evaluation and plastic surgery. Dr. McKinnon informed the deceased that the procedure could be performed safely and without any inherent or attendant perils at the defendant Hospital.

15. On or about July 19, 2006, defendant Hospital accepted the deceased as a patient.

16. Plaintiff believes and therefore alleges that during the initial examination by Dr. McKinnon, against the wishes of the decedent, Dr. McKinnon performed a rough examination which caused the deceased to develop a hematoma which ultimately became infected and let to HELENE NEMIROW's death.

17. On or about July 22, 2006, defendant Hospital discharged the deceased to Warren Barr Pavilion (hereafter "Pavilion") nursing home to be treated for the infection.

18. On or about August 1, 2006, Pavilion discharged HELENE NEMIROW back to defendant Hospital because she developed an elevated white blood cell count caused by the infection. After twenty four hours in the emergency room at defendant Hospital, defendant Hospital refused to readmit HELENE NEMIROW as a patient.

19. On August 2, 2006, the HELENE NEMIROW presented herself to Lakeview nursing home (hereafter "Lakeview") and Lakeview accepted her as a patient for treatment an open wound at the site of the hematoma and for the unending infection.

20. On August 23, 2006 Lakeview discharged HELENE NEMIROW back to defendant Hospital because the infection had worsened, and defendant Hospital readmitted HELENE NEMIROW as a patient.

21. HELENE NEMIROW was in the care, custody and control of defendant Hospital continuously from her readmission on August 23, 2006 through her date of

4

death on September 14, 2006. At the time of her death, HELENE NEMIROW (hereinafter "the deceased") was 59 years old. The death certificate states the cause of death of HELENE NEMIROW was "Chronic Infection of Hematoma".

## CAUSE OF ACTION

### MEDICAL MALPRACTICE/SURVIVAL ACTION AGAINST MCKAY MCKINNON, MD, AND THE UNIVERSITY OF CHICAGO HOSPITALS AND UNIVERSITY OF CHICAGO

22. Plaintiffs reallege and incorporates herein by reference Paragraphs 1 through 21, as if fully set forth herein.

23. There was a physician-patient relationship between the deceased and defendants MCKAY MCKINNON, MD, the UNIVERSITY OF CHICAGO HOSPITALS, and the UNIVERSITY OF CHICAGO.

24. From July 18, 2006 through July 22, 2006, and from August 23, 2006 through September 14, 2006, the deceased was in the exclusive control of the defendants, and each of them, and at no time prior to the events, conduct, activity, care and treatment as herein complained did the defendants, or any one of them, obtain the deceased's knowledgeable, informed consent for the care, treatment or conduct as herein alleged, and that prior to the initiation and or performance of said care, treatment, procedure or conduct, no opportunity was afforded to the deceased herein, to exercise voluntary, knowledgeable and informed consent to said care, treatment, procedure or conduct.

25. That the treatment performed by defendants, and each of them, and by defendant's employees, and each of them, upon the deceased HELENE NEMIROW, failed to conform to the standard of care both with respect to the care and treatment rendered to the deceased, and with respect to providing the deceased information about the risks and hazards, or other harmful consequences that might follow from the treatment, and diagnosis that defendants, and each of them, planned for plaintiff.

26. At all times herein mentioned, the defendant, UNIVERSITY OF CHICAGO

HOSPITALS, negligently and carelessly failed to properly ensure the character, quality, ability and competence of individuals, including the remaining defendants, and each of them, treating patients in said hospital and as a proximate result thereof, HELENE NEMIROW, passed away. For a period before the events herein set forth, defendants, and each of them, undertook to and did, treat the deceased and agreed to diagnose such conditions as the deceased might have and to render proper care in respect thereto, and to do all things necessary and proper in connection therewith; and the defendants, and each of them, thereafter entered on such employment individually and by and through their employees, agents and servants.

27. From and after said times, defendants, and each of them so negligently examined the deceased and diagnosed and failed to diagnose her condition and so negligently treated her, and so negligently cared for here while she was in the exclusive control of the defendants, and each of them, and so negligently operated, managed, maintained, selected, designed, controlled, conducted their services, activities, personnel and equipment in connection with the deceased's care and treatment that the same proximately caused the death of HELENE NEMIROW as alleged herein.

28. The negligent diagnosis and treatment in particular is that although defendant Hospital treated the deceased with antibiotic medications while the decedent was under the exclusive care, custody and control of defendant Hospital, the antibiotic medications were not having the desired effect, and defendant Hospital failed to ensure that the medications be changed so that the infection could be properly treated as any prudent health care facility in the Northern District of Illinois would have so done.

29. From and after said times, defendants, and each of them, failed to warn the deceased when she developed an infection while she was in the exclusive control of the defendants, and each of them, that she may be suffering from a life threatening condition, when a reasonably prudent health care provider would have so warned.

The absence of this warning served to prevent the deceased from seeking urgent care elsewhere than in the nursing homes she went to between her admissions at defendant Hospital, and the same lack of warning allowed the infection to spread untreated, which proximately led to her death.

30. From and after the time the deceased was readmitted to defendant UNIVERSITY OF CHICAGO HOSPITAL, the deceased's narcotics dosages were not properly monitored or regulated causing her to suffer persistent mental status changes and causing her to remain in a constant stupor. A reasonably prudent health care provider in the Northern District of Illinois would have properly monitored or regulated the dosages. The negligence of defendants, and each of them, in not properly regulating the narcotics dosages was the proximate cause of HELENE NEMIROW's death.

31. From and after the time the decedent was under the exclusive care, custody and control of defendant Hospital, no surgical intervention was performed with regard to the infection, when a reasonably prudent health care provider in the Northern District of Illinois would have performed surgical intervention. The negligence of defendants, and each of them, in not performing surgical intervention was the proximate cause of HELENE NEMIROW's death.

32. From and after the time the decedent was under the exclusive care, custody and control of defendant Hospital, decedent complained of chest pains, but defendant Hospital failed to properly monitor her cardio-pulmonary status, when a prudent health care provider in the Northern District of Illinois would have so monitored. The negligence of defendants, and each of them, in not monitoring HELENE NEMIROW's cardio-pulmonary status, was the proximate cause of HELENE NEMIROW's death.

33. On the evening of September 14, 2008, a private health care professional informed defendant DOES that are among the class of defendants described above as DOES 25-40, that said health care professional could not rouse the decedent from a deep sleep. Each of the DOES so notified was acting within the course and scope of

7
FIRST AMENDED COMPLAINT FOR MEDICAL MALPRACTICE; WRONGFUL DEATH AND SURVIVAL

their agency and employment with defendant UNIVERSITY OF CHICAGO HOSPITALS, and each of them, when the notice was given. None of the DOE defendants so notified checked on this report for over a hour later, when any prudent health care worker in the Northern District of Illinois would have performed a check on their patients' status. When a defendant UNIVERSITY OF CHICAGO HOSPITAL's employee checked on the deceased one hour after the report, the deceased was in cardiac arrest. The delayed response was the proximate cause of HELENE NEMIROW's death.

34. As a direct and proximate result of the negligent acts of commission and/or omission in the treatment of the decedent by defendants Hospital and University, the decedent died from a cardio-pulmonary event, central respiratory failure and sepsis.

35. The damages sought by Plaintiff have a reasonable value of at least $150,000, and the exact amount of Plaintiffs damages will be shown according to proof at the time of trial.

**WHEREFORE**, Plaintiff brings this cause of action pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against the Hospital and the University for the following:

(a) Compensatory damages in an amount that exceeds $150,000, the exact amount of Plaintiffs damages will be shown according to proof at the time of trial;

(b) Plaintiff's costs of this action; and

(c) Such other and further relief as this Court deems just and appropriate.

Date: March 8, 2008

By _____
LAWRENCE H. NEMIROW
Administrator for the Estate
of HELENE S. NEMIROW
in *Pro Se*

DECLARATION UNDER ILLINOIS STATUTES 735 ILCS 5/2-622

I, Lawrence H. Nemirow declare as follows:

1. I have consulted and reviewed the facts of this First Amended Complaint with a health care professional.

2. I reasonably believe that said health care professional:

   a) Is knowledgeable in the relevant issues involved in this particular action; and,

   b) Practices or has practiced within the last 5 years or has taught with the last 5 years in the same area of health care or medicine that is in issue in this particular action; and

   c) Meets the expert witness standards set forth in paragraphs (a) through (d) of Section 8-2501;

   d) That the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in this particular action that there is a reasonable and Meritorious cause for the filing of this action; and

   e) I have concluded on the basis of the health professional's review and consultation that there is a reasonable and meritorious cause for filing of such action.

   (f) I am attaching a copy of Dr. Buynak's written report, clearly identifying The name of the deceased and the reasons for his determination that a reasonable and meritorious cause for the filing of this action exists; and

   (g) I am attaching a copy of Dr. Buynak's CV including his Indiana License Number.

I declare under penalty of perjury under the laws of the States of California and Illinois, and the United States of America that the foregoing is true and correct.

///

///

Executed in Los Alamitos California on March 8, 2008

By _____
LAWRENCE H. NEMIROW

Physician's Report and Certificate of Medical malpractice:

Re: Helene Nemirow (deceased)

I certify as follows;

I am licensed to practice medicine in all of its branches in the State of Indiana. I am board certified in internal medicine. I am familiar with the issues of care and treatment involved herein. I devote 75% of the time, that I spend in either medical practice or in teaching, to the type of medicine at issue herein, and I have familiarity with the standard of care in the State of Illinois on the matters at issue herein. I am qualified by experience, education and training with the standard of care, methods, procedures and treatments relevant to the allegations at issue in this case, and I have practiced or taught in this field within the past five years. I have read and I am familiar with the relevant medical records, the representations of counsel and/or facts herein, and for the reasons set forth herein below, I hold the opinion to a reasonable degree of medical certainty that the defendant, University of Chicago, by and through the actions of its agents, deviated from the applicable standard of care in this matter in July and August, 2006. The deviation(s) by all defendants below proximately caused or contributed to the plaintiff's death and accordingly a reasonable and meritorious basis for suit exists.

The decedent suffered from a condition known as neurofibromatosis which is characterized in part by scattered skin growths. She was intending to have plastic surgery on some of this. She also suffered from a bleeding diathesis of unknown etiology. She did suffer a bleed into one of the skin lesions secondary to handling by defendant. This then became an infected hematoma. The records clearly indicate by multiple treaters that the infection existed but the manner in which the infection was treated is the basis for this suit. In essence the infection was treated by the defendant by the use of antibiotic medications which were not having the desired effect however. When the matter did not clear up the defendant continued to use antibiotics and refused to admit her into the hospital for closer monitoring in the face of unending fever, lower extremity and back pain and high white cell count. At no time was there any surgical intervention for the infection. When she was finally admitted into the hospital her narcotics dosages were not properly regulated as she exhibited persistent mental status changes. Ultimately she died from a cardio-pulmonary event, central respiratory failure and sepsis secondary to all of the above negligent acts of commission and/or omission acting either in singularity or in combination with each other.

The University of Chicago emergency room staff also participated in her care during the times aforesaid and they also refused to admit her into the hospital for the care set forth above but instead discharged her to a nursing care facility. Neither defendant warned plaintiff that she may be suffering from a life threatening condition when a reasonably prudent health care provider would have so warned. The absence of this warning served to prevent decedent from seeking urgent care elsewhere by depriving her of the knowledge of the dangerous and serious nature of her condition of ill being.

Robert Buynak, M.D.

*[signature]*

02/19/08

# Robert J. Buynak, MD, FACP
# Board Certified, Internal Medicine

Northwest Indiana Center for Clinical Research
150 W. Lincolnway
Suite 2004
Valparaiso, IN 46383
(219) 464-8302
Fax (219) 531-1825
rbuynak@att.net

License Number 01048425B

## EMPLOYMENT

| | |
|---|---|
| **-Indiana University School of Medicine**<br>Clinical Instructor of Medicine | Sept, 1999-Present |
| **-Northwest Indiana Center for Clinical Research**<br>Founder and President | Oct, 2004-Present |
| **-Hilltop Community Health Center**<br>Director, Internal Medicine<br>Hospitalist | June 2005-Present |
| **-Portage Medical Group**<br>Private Practice | July, 1998-May 2005 |
| Chief of Medicine, Porter Memorial Hospital | 2001-2002 |
| *-Patient Care,* **Medical Journal**<br>Board of Editors | Sept, 1999-Present |

## EDUCATION

| | |
|---|---|
| **Mayo Clinic**<br>Internal Medicine Internship and Residency | July, 1995-July, 1998 |
| **Harvard Medical School**<br>Doctor of Medicine (MD) | Aug, 1991- May, 1995 |
| **University of Notre Dame**<br>Bachelor of Science, Biological Sciences | Aug, 1987-May 1991 |

## HONORS and AWARDS

-Fellow, American College of Physicians (FACP) 2004
-Porter County VNA Physician of the Year, 2004
-Valedictorian, University of Notre Dame Class of 1991
-*Phi Beta Kappa, Alpha Epsilon Delta*

## PUBLICATIONS

- Buynak RJ. <u>Diabetes 1-2-3, A Simplified Guide to Managing Type 2 Diabetes</u>, American Diabetes Association (Manuscript approved, Publication Date February 2006)
- Buynak RJ. <u>The Role of Primary Care in Bariatric Procedures.</u> *Patient Care*, 2005: 39:7.
- Issue Editor, <u>Special Focus on Neurology</u>, *Patient Care*, 2002:7:4.
- Buynak RJ and Evans JM. <u>Influenza in the Nursing Home: Prevention and Treatment</u>. *Nursing Home Medicine* 1996;4:319-324.
- Buynak RJ and Winter HS. <u>Acquired Immunodeficiency Syndrome and Gastrointestinal Immune Function</u>. *Curr Opin Gastroenterology* 1992;8:1010-1014.

## PRESENTATIONS

-Keynote Speaker, Indiana Chapter ACP State Meeting Nov.2003
-Update in Medicine, Indiana Chapter ACP State Meeting Nov. 2002

## CLINICAL RESEARCH PROJECTS

-"Randomized, Open-Label, Multicenter Trial of the Safety and Effectiveness of Oral Telithromycin (Ketek) and Amoxicillin/Clavulanic Acid (Augmentin) in Outpatients With Respiratory Tract Infections in Usual Care Settings. Protocol# HMR3647A/3014. Aventis."

-A Multicenter, Open-Label, Crossover Study Comparing Maxalt (Rizatriptan Benzoate) with Usual Care Oral Migraine Medications. Protocol # SAIRB-02-0021. Merck."

-"REACH (**RE**duction of **A**therothrombosis for **C**ontinued **H**ealth) Registry, Sanofi."

-Impact of Point-of-Care Vs. Laboratory Testing of Hemoglobin A1C (HBA1C), and Intense Vs. Standard Monitoring of Titration Algorithm Adherence on Glycemic Control in Type 2 Diabetes Subjects, Who Are Inadequately Controlled on Oral Anti-Hyperglycemic Therapy, And Starting Lantus (Insulin Glargine Injection): A 2x2, Randomized, Open-Label Trial. Protocol # HOE-901-4033, Aventis."

-"TREAT (Trial to Reduce Cardiovascular Events with Aranesp Therapy) Protocol # 20010184 Amgen."

-"JUPITER (Justification for the Use of statins in Primary prevention: an Intervention Trial Evaluating Rosuvastatin) Randomized, Double-Blind, Placebo-Controlled, Multicenter Phase III Study of Rosuvastatin (Crestor) 20mg in the Primary prevention of Cardiovascular Events Among Subjects with Low Levels of LDL-

Cholesterol and Elevated Levels of C-Reactive Protein.  Protocol #4522US/0011AstraZeneca."

-"Randomized, Open-Label Study to Assess the Safety of Epoetin Alfa Manufactured by Deep Tank Technology and Epoetin Alfa Manufactured by Roller Bottle Technology in Subjects with Chronic Kidney Disease Not on Dialysis. Protocol # 20040259. Amgen."

-"Randomized, Multicenter, Double-Blind, Placebo-Controlled, Single Dose Comparison of the Analgesic Activity of HKT-500 and Placebo in Subjects with Shoulder Pain. Protocol    # HKT-500-US03. Hisamitsu."

-"Randomized, Multicenter, Double-Blind, Placebo-Controlled, Two-Week Study to Assess the Safety and Efficacy with Pain from Moderate Lateral Epicondylitis. Protocol# HKT-500-US-05.Hisamitsu."

-"Randomized, Multicenter, Double-Blind, Placebo-Controlled, Two-Week Study to Assess the Safety and Efficacy of HKT-500 in Subjects with Low Back Pain. Protocol# HKT-500-US-04.Hisamitsu."

-"An Open-Label Safety Study with the Intermittent Use of HKT-500 in Subjects with Lower Back Pain, Pain From Osteoarthritis of the Knee, Shoulder Pain or Lateral Epicondylitis Pain.
 Protocol# HKT-500-US-06.Hisamitsu."

-" A Double-Blind, Randomized, Placebo-Controlled Study to Evaluate the Efficacy and Safety of Oravescent Fentanyl Citrate for the Management of Breakthrough Pain in Opiod-Tolerant Patients With Chronic Neuropathic Pain.
Protocol # C25608/3041/BP/US Cephalon."

-" A Double-Blind, Randomized, Placebo-Controlled Study to Evaluate the Efficacy and Safety of Oravescent Fentanyl Citrate for Pain Management of Breakthrough Pain in Opiod-Tolerant Patients with Chronic Low Back Pain.
Protocol # C25608/3042/BP/US Cephalon."

-"A Multi-centre, Double-blind, Randomized-withdrawal, Parallel-group, Placebo-controlled Phase III Study of the Efficacy and Safety of Quetiapine Fumarate Sustained Release (SEROQUEL SR) as Monotherapy in the Maintenance Treatment of Patients with Major Depressive Disorder Following an Open-Label Stabilization Period (AMETHYST STUDY)"

-"Protocol CV181013:  A Multicenter, Randomized, Double-Blind, Placebo Controlled, Phase 3 Trial to Evaluate the Efficacy and Safety of Saxaglipitin (BMS-477118)  In Combination with Thiazolidinedione Therapy in Subjects with Type 2 Diabetes Who Have Inadequate Glycemic Control on Thiazolidenedione Therapy Alone"

-"A double-blind, randomized study to evaluate the efficacy and safety of TAK-475 50 mg, 100 mg or placebo when co-administered with rosuvastatin (10 mg or 20 mg) in subjects with primary hypercholesterolemia."

-"A randomized double-blind, double-dummy, placebo-controlled, 3x4 factorial design trial to evaluate telmisartan 20 and 80 mg tablets in combination with ramipril 1.25, 10, and 20 mg capsules after eight weeks of treatment in patients with State I or II hypertension, with an ABPM sub-study. Clinical Phase III."

## ACTIVITIES

- Chairman, Porter Memorial Hospital Diabetes Advisory Committee
- Chairman, Porter Memorial Hospital CME Committee
- Founding Member, Life Teen Program, St. Paul Church
- School Board Member, St. Paul School

## CERTIFICATE OF SERVICE

The Undersigned, an attorney in the State of California and in Pro Se, certifies that on March 8, 2008, he electronically filed the foregoing document with the clerk of the court using the CM/ECF system which will send notification of such filing to all counsel of record in this case including the following:

Brian T. Henry, Esq.
Law Offices of Pretzel & Stouffer
One South Wacker Drive, Suite 2500
Chicago, Illinois 60606-4673

Kevin J. Clancy, Esq.
Lowis & Gellen, LLP
200 West Adams Street, Suite 1900
Chicago, Illinois 60606

_____
Lawrence H. Nemirow, Pro Se for
The Estate of Helene S. Nemirow