### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ESTATE OF HELENE S. NEMIROW;       )
IRMA CARVER; MADELEINE KATES;      )
AND LAWRENCE H. NEMIROW,           )
as survivors of HELENE S. NEMIROW, )
deceased,                          )        No. 07-cv-6413
                                   )
        Plaintiffs,                )
                                   )        Judge George M. Marovich
v.                                 )
                                   )        Magistrate Judge Nan R. Nolan
MCKAY MCKINNON, M.D.; THE          )
UNIVERSITY OF CHICAGO              )
HOSPITALS, an Illinois corporation; THE )
UNIVERSITY OF CHICAGO, an Illinois )
not-for-profit corporation; and DOES 1-50, )
                                   )
        Defendants.                )

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
### PLAITNIFF'S FIRST AMENDED COMPLAINT

Defendants, THE UNIVERSITY OF CHICAGO HOSPITALS ("UCH") and THE

UNIVERSITY OF CHICAGO ("The University") (collective "UC Defendants"), by their

attorneys, Scott R. Wolfe and Kevin J. Clancy of Lowis & Gellen, LLP, submit the following

Memorandum of Law in Support of their Motion to Dismiss Plaintiff's First Amended

Complaint.

### INTRODUCTION

Plaintiff alleges that the decedent, Helene S. Nemirow consulted former Defendant Dr.

McKinnon for evaluation about possible cosmetic surgery for the removal of excess skin from

her legs.  Plaintiff alleges that Dr. McKinnon so roughly examined the decedent that a hematoma

formed in her leg, which later became infected and led to the decedent's death.  Plaintiff also

alleges that the decedent visited UCH on July 19, 2006 for admission as a surgical candidate, but

no surgery was ever performed. She was discharged on July 22, 2006 to a non-party nursing home, Warren Barr Pavilion. Again on August 1-2, 2006 decedent visited UCH in the emergency room allegedly because of an elevated white blood cell count caused by an infection. She was not admitted to UCH at that time. She then went to stay at another local nursing home, Lakeview Nursing Home, also a non-party, from August 2-23, 2006. On August 23, 2006, Lakeview sent the decedent to UCH allegedly because her infection had worsened. She remained hospitalized at UCH until September 14, 2006 at which time she died. The death certificate allegedly listed the cause of death as a chronic infection of hematoma.

The decedent's estate originally filed this action along with the decedent's heirs. The estate has since filed a First Amended Complaint containing one cause of action for medical malpractice under the Illinois Survival Act, 755 ILCS 5/27-6. This cause of action arises from and relates to the treatment and/or alleged lack of proper medical care provided to the decedent. Although the First Amended Complaint names Dr. McKinnon as a defendant, the Plaintiff has since voluntarily dismissed Dr. McKinnon as a Defendant. As shown below, Plaintiffs' complaint must be dismissed as a matter of law for the following reasons. First, the affidavit of the health care provider attached to the complaint, stating that he has reviewed the claim and finds it meritorious, fails to meet the requirements mandated under 735 ILCS 5/2-622 and is insufficient to support the filing of this action. Second, Plaintiffs have failed to allege any viable claim based against the UC Defendants because they have failed to set forth sufficient allegations of wrongdoing against these Defendants.

## ARGUMENT

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease*

*Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir. 1997). The court may dismiss the complaint under Rule 12 if it appears that the Plaintiffs can prove no set of facts supporting her claim that would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Because this case is before the court pursuant to its diversity jurisdiction, Illinois substantive law will apply.

I.    **Plaintiffs Have Failed to Provide a Proper and Compliant Affidavit and Report From a Health Care Professional to Support the Cause of Action Alleged, and the Complaint Must Be Dismissed.**

Illinois statutes require that in any action for damages based on medical malpractice, the Plaintiff's attorney shall file an affidavit, attached to the original and all copies of the complaint, declaring:

> That the affiant has consulted and reviewed the facts of the case with a health professional who the affiant reasonably believes: (i) is knowledgeable in the relevant issues involved in the particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in the particular action; and (iii) is qualified by experience or demonstrated competence in the subject of the case; that the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action; and that the affiant has concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of such action. . . . [T]he written report must be from a physician licensed to practice medicine in all its branches. . . . A copy of the written report, clearly identifying the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists, must be attached to the affidavit . . . .

As the Seventh Circuit has recognized, the purpose of Section 622 is "to minimize frivolous malpractice suits." *Sherrod v. Lingle*, 223 F. 3d 605, 613 (7th Cir. 2000). Although this is a state pleading statute, federal courts in this District and the Seventh Circuit itself, have applied this statute to federal diversity actions as substantive law under the *Erie* doctrine. *Sherrod*, 223 F.3d at 613 (remanding case to district court for refilling with the required report); *Carpenter v. Office of the Lake County Sheriff*, 2005 WL 1126545 (N.D. Ill., May 2, 2005);

*Carter v. Finley Hosp.*, 2003 WL 1341430 (N.D. Ill., May 17, 2003); and *Smith v. Gottlieb*, 2002

WL 1636546 (N.D. Ill., July 23, 2002). The rationale behind applying this rule in federal court

is to avoid creating an opportunity for forum shopping. As one court explained, "[i]f the rule

was not applicable in federal court, the Plaintiff with a weak case would be encouraged to file

her case here to avoid the requirements of 2-622. Such a result makes little sense. Further, it

would be unfair to subject one set of plaintiffs to the requirements of 2-622 while exempting

other solely on the basis of the fortuitous existence of diversity or supplemental jurisdiction." As

a result, this requirement applies to the complaint in this case. Although the complaint in this

matter does contain an affidavit of counsel and a health care practitioner's report, the report is

deficient and fails to meet the requirements of Section 2-622.

A.    **The Report Fails to Identify the Applicable Standard of Care or How That Standard Was Breached.**

The report in this matter states in conclusory fashion that the UCH, "by and through the

actions of its [unspecified] agents, deviated from the applicable standard of care in this matter in

July and August 2006." The reporting physician, Dr. Robert Buynak, M.D., never specifies what

that applicable standard of care is at all, let alone what the standard of care is for each of the

various acts of negligence listed. Simply stating that the defendants deviated from the standard

of care is not adequate and the failure to identify the applicable standard of care specifically

renders the report inadequate and the complaint subject to dismissal. *Tucker v. St. James Hosp.*,

279 Ill. App. 3d 696, 703, 665 N.E.2d 392, 396 (1st Dist. 1996) (holding that that complaint was

properly dismissed when the report failed to specify the applicable standard of care). Even if the

report had identified some standard of care, it would still be insufficient because there are several

acts of negligence alleged related to various areas of medical treatment, and the standard of care

as to each are and each treatment would vary.

In addition, to comply with Section 2-622, the report must specify the inappropriate actions and identify specific reasons for the reviewing professional's opinion that there is a meritorious cause of action. Mere conclusory allegations do not suffice. *Jacobs v. Rush North Shore Med. Ctr.*, 284 Ill. App. 3d 995, 999-1000, 673 N.E.2d 364, 367 (1st Dist. 1996); *Peterson v. Hinsdale Hosp.*, 233 Ill. App. 3d 327, 331-332, 599 N.E.2d 84, 88 (2nd Dist. 1992). For example in *Peterson*, the court held that a 2-622 report was insufficient where it merely stated "it is not customary in a breech delivery to have a femoral fracture without a traumatic delivery secondary to inappropriate delivery techniques" and there was a delay in diagnosing the fractures. *Peterson*, 599 N.E.2d at 88. The court found that the report failed to state which actions were inappropriate. Similarly, in *Smith v. Gottlieb*, 2002 WL 1636546, *1 (N.D. Ill., July 23, 2002), the court dismissed a case in which the 2-622 report merely listed seven alleged failures to act properly, without explaining the specific factual basis for why those failures deviated from the standard of care, "which gives neither the court nor the defendants insight into the reasons a claim exists." *Id*. at *1.

Likewise, here, the report does little more than simply list several acts that the doctor believes were negligent without supporting reasons or analysis:

- the use of antibiotic medications were not having the desired effect and defendants continued to use the antibiotics and refused to admit the patient for monitoring

Which antibiotics? Why were they the wrong antibiotics? Would or could some other antibiotic have had a different effect and how? If not, there is no basis for a claim. Why was admission required? For what purpose? What standard of care is applicable to decisions to admit?

- At no time was there any surgical intervention for the infection.

What type of surgical intervention was required?  How would it have made any difference? Was this patient a proper candidate for surgery under these circumstances?  What applicable standard of care would have required surgery?

-       When the patient was admitted her narcotics dosages were not properly regulated as she exhibited persistent mental state changes

What narcotics? How did they affect mental state? What level of mental state changes is within the range of normal or expected changes? How did any such changes result in the conditions that caused the patients death?  How did they affect the infection at issue?  What is the applicable standard of care with regard to changing dosages of the unspecified narcotics?

-       Emergency room staff refused to admit the patient.

Why was admission required?  What is the standard of care applicable to the unspecified and unnamed emergency room staff?  What effect did the lack of admission at that time have, if any, on the course of the illness?

-       Neither defendant warned the patient that she may be suffering from a life threatening illness.

What warnings were given?  What warnings were required? What is the applicable standard of care for providing such warnings?  Who should have provided them?  How is the failure to provide the unknown warnings related to the injuries alleged?

The report simply lists these five failures without saying what was specifically done, what should have been done, why it should have been, what the standard of care is as to each action, and how any action contributed to the injuries alleged.  As a result, the report fails to provided the specificity and information required under the statute.

**B.    The Report Fails to Provide Any Information or Conclusions About Several of the Negligent Acts Alleged in the Complaint.**

The Plaintiff bases the malpractice claim in this matter on not only those failures listed above, on which the report is insufficient, but also on three specific acts of negligence about which the report is completely silent.  First, Plaintiff alleges that the UCH Defendants "failed to properly ensure the character, quality, ability and competence of individuals. . . treating patients in said hospital." (Am. Compl. ¶ 26).  The report contains no indication of any basis for negligence in this regard.  Second, the Plaintiff alleges that the decedent had complained of chest pains but the defendants failed to monitor her cardio-pulmonary status.  (Am. Compl. ¶ 32).  Again, the 2-622 report does not speak to this allegation at all.  Finally, the Plaintiff alleges that the defendants delayed in checking on the status of the decedent after an unnamed health care professional noted that she could not rouse the decedent.  Plaintiff alleges that this delay proximately caused the death.  There is nothing whatsoever in the 2-622 report about this alleged delay in treatment or how if at all it provides a basis for a meritorious action.  Because the report fails to speak to the bases of negligence alleged in the complaint it fails on its face to comply with the statute.

**C.    The Report Fails to Identify Who Performed What Actions**.

The report, and the complaint, speak in the most vague and ambiguous terms about the alleged failures and negligent acts.  It never identifies who prescribed or administered antibiotics and who failed to change them, if indeed a change was needed.  It fails to state who was involved in any decision to admit or not admit the patient, who was involved in providing warnings or who was in the position to have provided the warnings, and who was monitoring the narcotics or failed to do so properly.  Despite the fact that reporting physician states that he has read and is familiar with the relevant medical records, he provides no details as to this critical information,

7

without which it is impossible to assess the merit of the claims alleged.  A report under Section

2-622 is insufficient if it fails to state who did what actions.  *Mueller v. North Suburban Clinic,*

*Ltd.*, 299 Ill. App. 3d 568, 578, 701 N.E.2d 246,  253 (1st Dist. 1998) ("[T]the names of these

physicians are never mentioned other than in an introductory sentence in each report. We have

no idea which of the physician-defendants actually prescribed aspirin for the plaintiff, which of

them were involved in treating her for pericarditis, or when each of them began treating the

plaintiff.").

**D.      The Report Fails to Show That Dr. Buynak Is Qualified to Assess The
        Actions of Professionals In The Different Medical Fields Involved.**

Section 2-622 provides that the health professional must be "knowledgeable of the

relevant issues involved * * * and qualified by experience or demonstrated competence in the

subject of the case." 735 ILCS 5/2-622.  The professional must be competent in the subject area

of the allegations and the report must state with specificity the expert's qualifications.

*Cuthbertson v. Axelrod*, 282 Ill. App. 3d 1027, 1034, 669 N.E.2d 601, 606 (1st Dist. 1996).  In

this case, although the report does not name specific individuals whose actions are being

assessed, it is clear that they fit into numerous categories of medical professionals.  For example,

the report concludes that it was negligent not to perfom surgical intervention.  Yet surgeons are a

highly specialized class of physicians, and if the reporting professional is not a surgeon, he

cannot make qualified evaluations of whether the acts deviated from the standard of care.

*Tucker*, 665 N.E.2d at 395 ("Dr. Mitchell is not a surgeon; he cannot assess whether defendant

was negligent.").  Here Dr. Buynak is an internal medicine physician.  Neither his report nor his

C.V. indicate that he has any qualifications to assess the reasonableness of the acts of a surgeon

or to evaluate whether surgery should have, or in fact could have, been performed.

8

He also concludes that the narcotics, psychotropic medications, were not properly monitored or altered. He is has no training or qualifications in prescribing or monitoring psychotropic medications or monitoring or evaluating changes in mental states as a result of using such drugs, and therefore has no ability to assess or evaluate whether those dosages were proper or whether the range of mental states was within an acceptable range—perhaps the reason why the report is silent on the specific basis for that conclusion. He also makes sweeping conclusions about the actions of emergency room staff, without indicating whether those are physicians or nurses. If they are nurses, he is unequivocally unqualified to offer opinions. *Sullivan v. Edward Hosp.*, 209 Ill. 2d 100, 120, 806 N.E.2d 645, 658 (Ill. 2004). In addition, nothing in the report indicates that Dr. Buynak has any experience or qualifications to assess the reasonableness or standard of care of emergency room staff.

For all of the reasons, the 2-622 report attached to the complaint is inadequate as a matter of law and insufficient to support a cause of action for medical negligence. As a result, the Amended Complaint should be dismissed.

**II.    Plaintiffs Fail To State Sufficient Allegations to Support Their Claims.**

A complaint for medical malpractice, even under the notice pleading requirements of federal court, must state either direct or inferential allegations concerning all the material elements necessary for recovery, and can be dismissed if it fails to do so. *Copeland v. Northwestern Memorial Hosp.*, 964 F. Supp. 1225, 1241 (N.D. Ill, 1997). At a minimum, Plaintiffs must set forth enough allegations so that the defendants "determine the particular conduct in which they are alleged to have engaged . . . to allow the defendants to formulate a defense to the case." *Markham v. White*, 1995 WL 669643, *3 (N.D. Ill., Nov. 8, 1995). Moreover, to withstand a motion to dismiss, a complaint must allege the "operative facts" upon

which each claim is based. *Kyle v. Morton High School,* 144 F.3d 448, 444-45 (7th Cir.1998). Here, Plaintiffs have failed to do that. They have put forth only sweeping conclusory allegations that the UC Defendants were responsible for the death of the decedent but do not allege sufficient facts from which the Defendants can formulate a defense.

In particular, Plaintiff does not identify who performed any of the negligent acts alleged, or who was involved in any of the acts or decisions, or failures to act or decide. Plaintiff refers to an unnamed "health care professional" was unable to rouse the decedent, allegedly triggering a duty to check on the decent further. This professional is not identified. As set forth above in the discussion of the deficiencies in the 2-622 report, at every turn, there is a complete failure to identify who was involved in any action, or what specifically took place.

For example, with regard to the negligent supervision allegations, Plaintiff does nothing more than set forth conclusions of law that the UC Defendants negligently supervised unnamed and unspecified employees, without setting forth any allegations of who was involved, or how that hiring or supervision was in any way connected with the injuries alleged here. It is not possible to defend an action allegedly improper hiring, credentialing or supervision, if there is no allegation as to who was supervised improperly, or at least in what areas of the hospital the employees worked. The complaint fails to set forth adequate allegations to explain what conduct the Defendants were alleged to have engaged in and fails to afford enough information to prepare a defense. Based on the complete lack of specific information, Defendants would have to interview and investigate hundreds of potential professionals and other employees, which is an unnecessary and improper burden. As a result, the Amended Complaint should be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants THE UNIVERSITY OF CHICAGO HOSPITALS

and THE UNIVERSITY OF CHICAGO respectfully request that this Court dismiss Plaintiff's

First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and grant such

further and additional relief as the Court deems just.


Respectfully submitted,
THE UNIVERSITY OF CHICAGO HOSPITALS
and THE UNIVERSITY OF CHICAGO


By:_____
        One of Their Attorneys


Scott R. Wolfe (ARDC #6230545)
Kevin J. Clancy (ARDC #6217109)
Lowis & Gellen, LLP
200 West Adams Street
Suite 1900
Chicago, Illinois 60606
312-364-2500

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on March 30, 2008, he electronically

filed the foregoing document with the Clerk of the Court using the CM/ECF system

which will send notification of such filing all counsel of record in this case including the

following:

| Counsel for Plaintiff | Counsel for Defendant McKay McKinnon, M.D. |
|---|---|
| Lawrence Harvey Nemirow<br>**The Law Offices of Lawrence H. Nemirow, APC**<br>5242 Katella Ave<br>Suite 104<br>Los Alamitos, CA 90720<br>562-799-1379<br>Email: nemirow@aol.com | Brian Thomas Henry<br>Christine J. Iversen<br>**Pretzel & Stouffer, Chtd.**<br>One South Wacker Drive<br>Suite 2200<br>Chicago, IL 60606-4673<br>(312) 346-1973<br>bhenry@pretzel-stouffer.com<br>civersen@pretzel-stouffer.com |
| **Counsel for Plaintiff** |  |
| Robert A. Holstein<br>**Holstein Law Offices LLC**<br>19 South LaSalle Street<br>Suite 1500<br>Chicago, IL 60603<br>(312)906-8000<br>Email: holsteinlaw@sbcglobal.net |  |

# APPENDIX OF UNPUBLISHED DECISIONS

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 1126545 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

H
Carpenter v. Office of Lake County Sheriff
N.D.Ill.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Cherylann CARPENTER, Administrator of the Es-
tate of Sandra Scott, deceased, Plaintiff,
v.
OFFICE OF THE LAKE COUNTY SHERIFF, et
al., Defendants.
**No. 04 C 2275.**

May 2, 2005.

Joseph A. Power, Jr., Kenneth J. Merlino, Chicago,
IL, Robert J. Long, Waukegan, IL, for Plaintiff.
Paul J. Ciastko, Kevin T. Martin, P. Stephen Fardy,
Holly M. Travis, Joel David Groenewold, Chicago,
IL, Daniel Playfair Field, Waukegan, IL, for De-
fendants.

*MEMORANDUM OPINION AND ORDER*

ST. EVE, J.
*1 Plaintiff Cherylann Carpenter, Administrator of
the Estate of Sandra Scott, has brought a twenty-six
count Third Amended Complaint alleging civil
rights violations under 42 U.S.C. § 1983 and vari-
ous state law claims, including medical malpractice
claims. Before the Court is Defendants Correctional
Medical Services, Inc. ("CMS") and its employees
Karen Walker, Genaline Japczyk, and Richard
Wagner's Motion to Dismiss Counts 12, 14, 18, and
20 of the Third Amended Complaint pursuant to
Federal Rule of Civil Procedure 12(b)(6). For the
following reasons, the Court denies Defendants'
motion.

*BACKGROUND*

Defendant CMS provides medical and psychologic-
al services to detainees and inmates at the Lake
County Jail. (R. 94-1, Count XII, ¶ 1.) Decedent,

Sandra Scott, was a pretrial detainee at the Lake
County Jail from March 26, 2003, until March 29,
2003. (*Id.* ¶ 2.) Scott had a high risk of self-
destructive behavior and CMS employees Karen
Walker, Genaline Japczyk, and Richard Wagner
knew that Scott was a high suicide risk (*Id.* ¶ 3.)
Scott hung herself in her jail cell while under
CMS's care on March 29, 2003. (*Id.* ¶ 7.)

*LEGAL STANDARDS*

The purpose of a motion to dismiss pursuant to
Rule 12(b)(6) is to test the legal sufficiency of a
complaint, not the merits of the case. *Triad Assoc.,
Inc. v. Chicago Hous. Auth.,* 892 F.2d 583, 586 (7th
Cir.1989). The Court will only grant a motion to
dismiss if "it appears beyond doubt that the plaintiff
can prove no set of facts in support of his claim
which would entitle him to relief."*Conley v. Gib-
son,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2
L.Ed.2d 80 (1957). In making its determination, the
Court must assume the truth of the facts alleged in
the pleadings, construe the allegations liberally, and
view them in the light most favorable to the
plaintiff. *Jet, Inc. v. Shell Oil Co.,* 381 F.3d 627,
629 (7th Cir.2004). When reviewing a motion to
dismiss, the Court is restricted to reviewing the
pleadings, which consist of the complaint, any at-
tached exhibits, and the supporting briefs. *See
Thompson v. Illinois Dept. of Prof'l Regulation,* 300
F.3d 750, 753 (7th Cir.2002)."[A]ny further plead-
ings would turn the motion into a 12(c) motion for
judgment on the pleadings, or if additional evidence
was relied upon or introduced, the motion would be
converted into a 56(c) motion for summary judg-
ment."*Id.*

*ANALYSIS*

Defendants contend that because Plaintiff has failed
to comply with Section 2-622 of the Illinois Code
of Civil Procedure, the Court must dismiss
Plaintiff's medical malpractice claims. *See*735 ILCS

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1126545 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

5/2-622.[FN1]Under Section 2-622, plaintiffs who bring medical malpractice suits in Illinois courts must attach to their complaint a statement of merit from a health care professional who has reviewed the claims and finds that they have merit. *See Brandt v. Boston Scientific Corp.,* 204 Ill.2d 640, 643, 275 Ill.Dec. 65, 792 N.E.2d 296 (Ill.2003); *see also Sherrod v. Lingle,* 223 F.3d 605, 613 (7th Cir.2000). The health care professional must identify the reasons that a meritorious claim exists and explain why the alleged facts fell below the standard of care. *Avakian v. Chulengarian,* 328 Ill.App.3d 147, 160, 262 Ill.Dec. 663, 766 N.E.2d 283 (Ill.App.Ct.2002)."Illinois courts liberally construe certificates of merit in favor of the plaintiff, recognizing the statute as a tool to reduce frivolous lawsuits by requiring a minimum amount of merit, not a likelihood of success."*Sherrod,* 223 F.3d at 613.

> FN1. Although Section 2-622 is pleading requirement under the Illinois Code of Civil Procedures, courts in this district and the Seventh Circuit treat this section as substantive law under the *Erie* doctrine. *See, e.g., Sherrod v. Lingle,* 223 F.3d 605 (7th Cir.2000); *Smith v. Gottleib,* Case No. 02 C 50192, 2002 WL 1636546 (N.D.Ill. July 23, 2002).

**\*2** Defendants do not argue that Plaintiff's statements of merit are too bare-boned, vague, or do not fulfill the statutory requirements. In fact, construing Plaintiff's attached statements of merit liberally, the Court concludes that they fulfill the statutory requirements by identifying the reasons why meritorious medical malpractice claims exist and explaining why the Defendants' actions fell below the standard of care. *See Avakian,* 328 Ill.App.3d at 160, 262 Ill.Dec. 663, 766 N.E.2d 283. Nevertheless, Defendants contend that the statement of merit against CMS is deficient because the health care professional did not properly review CMS's policies or training programs as part of his opinion. Also, Defendants contend that the reviewing health professional's reports are in error because Walker, Wagner, and Japczyk did not have the opportunity to review some of the records the health professional used as a basis of his opinion.

To establish their arguments, Defendants have submitted the affidavits of Wagner, Walker, and other CMS employees that dispute and challenge certain facts, for instance, whether the health professional properly reviewed CMS's policies and training programs. To resolve Defendants' arguments, the Court would be required to go beyond the pleadings to make factual and legal determinations, something the Court is not willing to do without further briefing under Federal Rule of Civil Procedure 56 and proper Northern District of Illinois Local Rule 56.1 Statements of Fact. *See Thompson,* 300 F.3d at 753.

Accordingly, the Court denies Defendants' Motion to Strike Plaintiff's Statements of Merits and denies Defendant's Motion to Dismiss the medical malpractice counts. If Defendants wish to pursue this argument, they must bring their Motion for Summary Judgment on this matter by May 23, 2005.

N.D.Ill.,2005.
Carpenter v. Office of Lake County Sheriff
Not Reported in F.Supp.2d, 2005 WL 1126545 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 1341430 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Carter v. Finley Hosp.
N.D.Ill.,2003.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois.
CARTER
v.
FINLEY
**No. 01 C 50468.**

March 17, 2003.

ORDER

REINHARD, J.
*1 The Finley Hospital ("Defendant") filed a Motion to Compel seeking an order compelling Diane Carter ("Plaintiff") to 1) submit Plaintiff's journal to Defendant; and 2) disclose the name and address of the certifying doctor so that the Defendant may depose him/her. During an in court hearing on March 5, 2003, the Magistrate Judge granted Defendant's Motion to Compel as to the journal and set a briefing schedule as to the issue regarding the certifying doctor.[FN1]As of March 14, 2003, the Magistrate Judge is in receipt of Defendant's Motion to Compel and Plaintiff's Response to Defendant's Motion to Compel ("Plaintiff's Response"). Although given an opportunity, Defendant did not file a reply brief. For the reasons set forth below, Defendant's Motion to Compel is denied.

> FN1. It should be noted that by the March 5, 2003 hearing, Plaintiff had already filed a response to Defendant's Motion to Compel. Thus, the Magistrate Judge needed only set a date for Defendant's reply brief to be filled.

The first issue the Magistrate Judge must address is whether 735 ILCS 5/2-622 (" § 2-622") applies in federal court. Apparently, this issue has divided the Northern District of Illinois without direct guidance from the Seventh Circuit. *Compare Copeland v.*

*Northwestern Memorial Hospital,* 964 F.Supp. 1225, 1242 (N.D.Ill.1997)(stating that failing to file a affidavit of merit in a medical malpractice claim is cause for dismissal under 735 ILCS 5/2-622(g)), *with Threlkeld v. White Castle Systems,* 127 F.Supp.2d 986, 991 (N.D.Ill.2001)("In any event, I will not dismiss a state claim made in federal court for failure to comply with a state pleading rule."). Although the Seventh Circuit has yet to directly address the issue, some guidance can be attained from the treatment the Seventh Circuit has given § 2-622. In *Sherrod v. Lingle,* 223 F.3d 605, 613 (7th Cir.2000), the Seventh Circuit stated "[t]o minimize frivolous malpractice suits, Illinois law requires the plaintiff to file a physician's certificate of merit and accompanying report with every malpractice complaint."*Id.* (citing *McCastle v. Sheinkop,* 520 N.E.2d 293, 294 (1987)). This gives the court notice that "a qualified, licensed physician has reviewed the case and determined that 'there is a reasonable and meritorious cause fo the filing of such action." ' *Id.* (citing § 2-622). In remanding the case back to the district court, the Seventh Circuit held that it was an abuse of discretion to dismiss the claim without affording an opportunity for Plaintiff to amend in conformity with 2-622. *Id.* at 614.If merely procedure, the Seventh Circuit should not have sent the case back to district court for a refilling. Therefore, this court will consider 2- § 622 as substantive state law that must be applied in federal court. *See Erie RR Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *Hanna v. Plumer,* 380 U.S. 460, 468 (1965).

Once it is determined that § 2-622 applies in federal court, the next question is under what circumstances the certifying doctor is subject to discovery.Federal Rules of Civil Procedure 26 states, in pertinent part, that "a party my obtain discovery of documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative (including ... consultant ... ) only upon a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 15 of 18

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1341430 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

showing that the party seeking discovery has sub-stantial need of the materials...."Fed.R.Civ.P. 26(b)(3). The certifying doctor required under § 2-622 is analogous to a consultant (i.e. consulting expert) discussed in 26(b)(3). Defendant must therefore show a "substantial need of the material." Fed.R.Civ.P. 26(b)(3). The Defendant has failed to meet this burden. Therefore, Defendant's Motion to Compel is denied.

N.D.Ill.,2003.
Carter v. Finley Hosp.
Not Reported in F.Supp.2d, 2003 WL 1341430 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                      Page 1
Not Reported in F.Supp.2d, 2002 WL 1636546 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

H
Smith v. Gottlieb
N.D.Ill.,2002.
### No. 02 C 50192.

Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
July 23, 2002.

MEMORANDUM OPINION AND ORDER

REINHARD.
*1 Plaintiffs, James Smith and Donna Smith, filed
this action, in Illinois state court against defendants,
Justin Gottlieb, M.D., University of Wisconsin
Medical Foundation Inc., University of Wisconsin
Hospitals and Clinics, and Michael Altaweel, M.D.,
to recover damages as a result of the alleged medic-
al malpractice of defendants during James Smith's
eye surgery. Defendants Justin Gottlieb, M..D. and
University of Wisconsin Medical Foundation, Inc.,
filed a joint 12(b)(6) motion to dismiss the com-
plaint because plaintiffs failed to comply with sec-
tion 2-622 of the Illinois Code of Civil Procedure.
732 ILCS 5/2-622. Jurisdiction is proper under 28
U.S.C. § 1332, as plaintiffs are citizens of Illinois
and defendants are citizens of Wisconsin.

Section 2-622 requires that plaintiffs in an action
for "healing art malpractice" attach to their com-
plaint an affidavit from a health care professional
who has reviewed the claim and finds it meritori-
ous. The health care professional must clearly
identify the reasons that a meritorious claim exists,
state that the acts fell below the standard of care,
and why the acts fell below the standard of care.
*Avakian v. Chulengarian,* 766 N.E.2d 283, 295
(Ill.App.Ct.2002). The affidavit should not contain
generalized conclusions of malpractice, but rather
state specifically the reasons for the conclusion that
the action is meritorious. *Giegoldt v. Condell Med-
ical Center,* 767 N.E.2d 497, 501-2

(Ill.App.Ct.2002). This requirement applies to
claims in federal court. *Landstrom v. Illinois Dep't
of Children and Family Serv.,* 699 F.Supp. 1270,
1282 (7th Cir.1988), *affirmed,*892 F.2d 670 (7th
Cir.1990).

Defendants argue that plaintiffs' health care profes-
sional's affidavit consists of generalized conclu-
sions of malpractice, therefore, the affidavit fails to
comply with section 2-622. The court finds that
plaintiffs' affidavit has not met the requirements of
section 2-622. In the affidavit the health care pro-
fessional merely outlines seven failures, which
gives neither the court nor defendants insight into
the reasons a claim exist. Moreover, the affidavit
does not clearly identify what actions defendants
did wrong in their treatment of Smith. *See Premo v.
Falcone,* 554 N.E .2d 1071, 1076 (Ill.App.Ct.1990).
Plaintiffs' reliance upon cases cited in their brief
lend little to their argument because the cases ad-
dressed a different issue than the present case and
the affidavit in those cases contained more than a
scant seven lines of general conclusions. *See Sher-
rod v. Lingle,* 223 F.3d 605, 614 (7th Cir.2000)
(addressing whether the trial court abused its dis-
cretion when the court did not allow the plaintiff to
amend his complaint to comply with section
2-622); *Neuman v. Burstein,* 595 N.E.2d 659
(Ill.App.Ct.1992) (considering whether plaintiff's
failure to file a separate report for each physician
listed in the complaint required dismissal of the
claim); *Ebbing v. Prentice,* 587 N.E.2d 1115
(Ill.App.Ct.1992) (considering whether plaintiff's
failure to file a separate report for each physician
listed in the complaint required dismissal of the
claim with prejudice and whether the plaintiff
showed good cause for not filing the affidavit in a
timely manner). Plaintiffs have simply failed to
comply with the requirements of section 2-622.

*2 For the foregoing reasons, defendants motion to
dismiss is granted. Plaintiffs are given may file an
amended     complaint     within     20     days.
*See*Fed.R.Civ.P. 15(a).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 2
Not Reported in F.Supp.2d, 2002 WL 1636546 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**


N.D.Ill.,2002.
Smith v. Gottlieb
Not Reported in F.Supp.2d, 2002 WL 1636546
(N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                 Page 1
Not Reported in F.Supp., 1995 WL 669643 (N.D.Ill.), 69 Fair Empl.Prac.Cas. (BNA) 558
**(Cite as: Not Reported in F.Supp.)**

**H**
Markham v. White
N.D.Ill.,1995.

United States District Court, N.D. Illinois, Eastern
Division.
Denise MARKHAM, Marion Morgan, and Mary
Lou Ricksecker, on behalf of themselves, and all
others similarly situated, Plaintiffs,
v.
Francis E. WHITE, Melvin O. Schabilion, Michael
Flanagan, Saul "Buddy" Weinstein, Norbert Kuk-
stra, and Other Unknown Defendants, in their indi-
vidual and official capacities, the United States, and
The Drug Enforcement Administration of the
United States, Defendants.
**No. 95 C 2065.**

Nov. 8, 1995.

*MEMORANDUM OPINION AND ORDER*

PLUNKETT, District Judge.
**\*1** Plaintiffs Denise Markham, Marion Morgan, and
Mary Lou Ricksecker, police officers in Madison,
Wisconsin, have brought a putative class action suit
against the individual defendants, training officers
for the Drug Enforcement Administration of the
United States ("DEA") who taught various sem-
inars for state and local law enforcement personnel,
for violation of their constitutional right to equal
protection by creating a sexually hostile and intim-
idating atmosphere at those seminars. They have
also sued the United States and the DEA. All of the
defendants have brought motions to dismiss on
various grounds. For the reasons set forth below,
we grant the motions in part and deny them in part.

*Facts*

Plaintiff Denise Markham ("Markham") has been
employed by the police department of the City of
Madison, Wisconsin ("City"), for five years.

Plaintiffs Marion Morgan ("Morgan") and Mary
Lou Ricksecker ("Ricksecker") have each been po-
lice officers with the City for fourteen years.

Defendants Francis E. White ("White"), Melvin O.
Schabilion ("Schabilion"), Michael Flanagan
("Flanagan"), Saul "Buddy" Weinstein
("Weinstein"), and Norbert Kukstra ("Kukstra") are
law enforcement training officers employed by the
DEA out of its Chicago office. According to the
complaint, they, along with other unknown defend-
ants, have conducted training seminars throughout
the United States for state, county, and municipal
law enforcement officers, for at least six years.
These seminars provide education about illegal
drugs and law enforcement strategies and tech-
niques regarding drug-related criminal activity.
They are allegedly intended to benefit the law en-
forcement officers who participate by increasing
their technical knowledge and skills, leading both
to greater personal security for the participants and
their colleagues and to possible career advancement
for the participants. According to the complaint, the
training available at these seminars is difficult to
obtain elsewhere.

The complaint alleges that in 1991, Ricksecker at-
tended a two-day seminar in Minneapolis entitled,
"Clandestine Laboratory Investigations"; in May
1994, Morgan attended a two-week seminar in
Madison, Wisconsin, entitled, "Basic Narcotics
School"; and in September 1994, Markham atten-
ded a one-week seminar in Camp Douglas, Wiscon-
sin, entitled, "Drug Enforcement Administration
Marijuana Eradication and Narcotic Officers Sur-
vival School."Some or all of the individual defend-
ants taught at each of these seminars, and the ma-
jority of the law enforcement personnel in attend-
ance were male.

At each of the three seminars attended by the
plaintiffs, and allegedly at other seminars taught by
the defendants throughout the country, the presenta-
tions contained numerous explicit sexual references

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                  Page 2
Not Reported in F.Supp., 1995 WL 669643 (N.D.Ill.), 69 Fair Empl.Prac.Cas. (BNA) 558
**(Cite as: Not Reported in F.Supp.)**

and jokes, derogatory and demeaning references to women in general and female participants in particular, and the showing of slides of nude or scantily clad women. Specifically, the complaint alleges that the individual defendants engaged in the following conduct:

**\*2** 1) beginning each seminar with the promise that male participants would go home that night and have aggressive sexual encounters with their wives;

2) interspersing instructional slides with pictures of nude or scantily clad women;

3) referring to women in general as "bitches," and to African-American women as "brown sugar";

4) referring in obscene terms to the Attorney General of the United States as a lesbian and as having a lesbian relationship with the First Lady;

5) using sexual terms to describe law enforcement work, such as describing drug reconnaissance as "getting laid," or "getting her drunk and finding a hotel," talking about DEA agents getting "horny" if they were unable to kill people on a regular basis, commenting that using explosives would give the male participants an erection, and talking regularly about male erections in terms such as "chubby," "woody," "johnson," and "pecker," among others;

6) grabbing their own genitals repeatedly for emphasis or humor; and

7) making sexual remarks to or about female participants, which included,

a) one of the defendants, observing Markham prone on the rifle range, grabbed his genitals and yelled, "I'm getting a hard on," which caused the male participants to laugh;

b) requesting the assistance of a female participant during a demonstration because "it [is] more interesting to watch a pretty girl";

c) referring to a female participant as "jiggling" and

asking her to turn sideways so that the other participants could see her breasts; and

d) making repeated sexual references during demonstrations, such as asking a female participant to "put your hot little hands on the bag, give it a good squeeze, you'll get it going."

The defendants also allegedly conducted their presentations in a manner which glorified violence. This conduct included the following:

1) referring to shooting a "defendant" sixteen times;

2) discussing how a human head looks when hit with a rifle round;

3) describing a suspect as weighing ten pounds more after being shot than before; and

4) commenting that they would help "accredit" the training school by posting pictures of anyone shot by a seminar participant on their office walls.

The complaint alleges that this conduct created a sexually hostile and intimidating environment which prevented the female participants from benefitting to the same extent as did the male participants and which caused injury to the plaintiffs. The plaintiffs have brought five claims. The first (Count I) alleges an equal protection violation, and the second (Count II) asserts a claim of conspiracy in violation of 42 U.S.C. § 1985(3), against the individual defendants in their individual capacities. The third claim (Count III) alleges an equal protection violation, and the fourth alleges a failure to prevent the wrongful conduct in violation of 42 U.S.C. § 1986, against the unknown supervisor defendants in their individual capacities. The fifth claim asserts an equal protection violation against the United States, the DEA, and the individual defendants in their official capacities, and is brought under 5 U.S.C. § 702. The defendants have moved to dismiss all the claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                              Page 3
Not Reported in F.Supp., 1995 WL 669643 (N.D.Ill.), 69 Fair Empl.Prac.Cas. (BNA) 558
(Cite as: Not Reported in F.Supp.)

*Discussion*

### I. *Standard*

**\*3** On a motion to dismiss under Rule 12(b)(6), we must take all well-pleaded allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff. *Rueth v. United States Envtl. Protection Agency,* 13 F.3d 227, 229 (7th Cir. 1994). We may dismiss a complaint for failure to state a claim upon which relief may be granted only if it is clear from the pleading that there exists no set of facts which would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

### II. *Claims Against the Individual Defendants*

All of the individual defendants have moved to dismiss the claims against them in their individual capacities (Counts I and II) on several grounds.[FN1] We consider first the contentions which generally challenge the sufficiency of the claims against the individual defendants. First, they assert that the plaintiffs should be required to allege which individual defendant made which remarks, as the plaintiffs may be unable to allege that some of the individual defendants engaged in any actionable conduct.

We agree.[FN2] We are aware of the Seventh Circuit's recent admonitions regarding the pleading standard set by Rule 8(a) of the Federal Rules of Civil Procedure,[FN3] but here the complaint does not meet even the notice pleading standard of the rule. In the complaint's current form, the individual defendants cannot determine the particular conduct in which they are alleged to have engaged. This is important not only because the plaintiffs may not be able to attribute any comments to certain of the individual defendants, as the defendants suggest, but also to allow the defendants to formulate a defense to the case.

The plaintiffs' allegations regarding the comments made at the seminars are contained in paragraphs 10 and 11 of a preliminary "Facts" section of their complaint and are incorporated by reference into each count. Because the complaint is structured in this manner, we dismiss the entire pleading without prejudice, and we give the plaintiffs thirty days from the date of this opinion to file an amended complaint.

Second, the individual defendants contend that the allegations regarding glorification of violence in general cannot constitute sexual harassment. Since these allegations are a minor part of the complaint, and there are allegations of numerous instances of sexually demeaning or harassing conduct, their inclusion in the complaint is irrelevant to our determination on this motion. We must view the complaint as a whole to determine if it states a claim upon which relief may be granted; we may not focus on certain allegations and ignore the rest. The individual defendants do not argue that the complaint wholly fails to state a claim for sexual harassment because it alleges *only* the glorification of violence, and, in any event, a quick reading of the complaint would make such an interpretation patently inaccurate. Hence, we clearly cannot dismiss the first two counts on this basis.

**\*4** Third, the individual defendants argue that the allegations that derogatory comments about the purported sexual preferences of the Attorney General and the First Lady do not evidence hostility toward women in general, but rather hostility toward women perceived as lesbians. We understand these allegations differently. They do not indicate that the individual defendants made the alleged remarks about women they believed to be lesbians *because of* the women's sexual preferences, which might indeed fail to state an equal protection claim based on gender. Rather, taken in context, they suggest that the individual defendants labeled the Attorney General and the First Lady as lesbians out of hostility toward these women (presumably because of the positions of power, real or perceived, they hold), and that the defendants made these comments with

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 4
Not Reported in F.Supp., 1995 WL 669643 (N.D.Ill.), 69 Fair Empl.Prac.Cas. (BNA) 558
**(Cite as: Not Reported in F.Supp.)**

the intent of being sexually demeaning and hostile to the women who attended the seminars.[FN4]

Fourth, the individual defendants assert that the conduct complained of is not actionable as a matter of law because the seminars were of limited duration and because the conduct was not sufficiently egregious to constitute a hostile work environment or to adversely affect the plaintiffs' careers. In support, they argue that an equal protection claim of sexual harassment must meet the same requirements as a Title VII claim of sexual harassment, and that in all the cases in which the Seventh Circuit has found actionable conduct, some form of touching has occurred. Hence, they say, "no touching, no violation." (Weinstein Br. at 8.) They rely upon *Trautvetter v. Quick,* 916 F.2d 1140 (7th Cir. 1990), as establishing this rule.

The individual defendants misapprehend *Trautvetter* and its applicability here. First, *Trautvetter* had been decided by the district court on summary judgment, not on a motion to dismiss. 916 F.2d at 1142. Consequently, it does not stand for the proposition that a plaintiff claiming sexual harassment must allege touching in order to state a claim. Second, the plaintiff in *Trautvetter* was unsuccessful on her section 1983 equal protection claim because both the district court and the Seventh Circuit concluded that the evidence showed that the plaintiff had welcomed the sexual advances of her alleged harasser and had participated in a consensual sexual relationship with him. *Id.* at 1148-49.Nowhere in that opinion did the Seventh Circuit conclude, directly or indirectly, that a plaintiff claiming sexual harassment must allege or prove a nonconsensual touching.[FN5]Rather, it addressed the issue of discriminatory intent, namely, that the plaintiff had failed to show that the defendant had made sexual advances toward her (*i.e.,* intentionally discriminated against her) on the basis of her gender, rather than because of her personal characteristics. *Id.* at 1150-52.The defendants go on to cite the "*Trautvetter* line of cases," which they fail to identify specifically, but our research indic-

ates that the case has not been widely cited in subsequent Seventh Circuit decisions. In any event, *Trautvetter* does not mean "no touching, no violation," and the Seventh Circuit does not require a plaintiff to plead nonconsensual touching to state a claim of sexual harassment.

**\*5** Next, the individual defendants argue that the plaintiffs cannot bring a *Bivens* claim (Count I) because they have a remedy under Title VII against their employer since the seminars were job-related.[FN6]They rely upon cases in which employers have been sued for alleged harassment by third parties.[FN7] In essence, the defendants use these cases to argue that the plaintiffs may bring their suit *only* against the police department of the City of Madison under Title VII. However, the plaintiffs have made no allegation that their employer engaged in any wrongful conduct, whether by permitting harassment by a co-worker or by ignoring complaints about harassment by the defendants. Hence, we can see no basis upon which the plaintiffs could sue their employer. The mere fact that these seminars were job-related does not compel the conclusion that the plaintiffs' employer was responsible for the defendants' conduct. While the defendants suggest that the City could have put pressure on the DEA and the individual defendants to stop the misconduct, this suggestion recognizes that the actual responsibility for the conduct lies with the DEA and the individual defendants, not with the City. Because the plaintiffs do not have a Title VII remedy, there is no obstacle to their *Bivens* action.

As part of this argument, the individual defendants also contend that the plaintiffs should have been accustomed to the "vulgar language" complained of as a result of their experience as law enforcement personnel. (Weinstein Br. at 8.) This is a factual argument that goes beyond the complaint and is an inappropriate consideration on a motion to dismiss.

In their reply brief, the individual defendants assert, for the first time, that the plaintiffs have a claim under Title IX, which prohibits gender discrimination

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                              Page 5
Not Reported in F.Supp., 1995 WL 669643 (N.D.Ill.), 69 Fair Empl.Prac.Cas. (BNA) 558
(Cite as: Not Reported in F.Supp.)

in federally funded educational and training pro-
grams. (Weinstein Reply Br. at 3.) Not only is it
improper to raise a new argument in a reply brief,
but the individuals defendants have offered no basis
for us to conclude, on a motion to dismiss, that
Title IX has any applicability to DEA training sem-
inars.

As to the conspiracy claim (Count II), the individu-
al defendants assert that, because they were all act-
ing within the scope of their employment, they are
not separate persons capable of entering into a con-
spiracy (the "intra-corporate conspiracy doctrine").
In addition, they contend that the conspiracy claim
must fail because it depends upon the equal protec-
tion claim, which is inadequate. We can dispose of
the second argument quickly: the equal protection
claim is sufficient, and so we will not dismiss the
conspiracy claim on that basis alone.

The Seventh Circuit recently reiterated the parame-
ters of the intracorporate conspiracy doctrine in
*Wright v. Illinois Dep't of Children & Family
Servs.,* 40 F.3d 1492, where it said that "managers
of a corporation jointly pursuing its lawful business
do not become 'conspirators' when acts within the
scope of their employment are said to be discrimin-
atory or retaliatory." *Id.* at 1508 (quoting *Travis v.
Gary Community Mental Health Center,* 921 F.2d
108, 110 (7th Cir. 1990), *cert. denied,* 502 U.S. 812
(1991)). The plaintiffs attempt to defeat the applica-
tion of the doctrine by arguing that, in conducting
the seminars in a harassing and discriminatory way,
the defendants were acting without lawful purpose
and so were outside the scope of their employment.
(Pls.' Br. at 14.) Hence, they assert, the defendants'
conduct falls within an exception to the intra-
corporate conspiracy doctrine, for they were motiv-
ated solely by personal bias. However, as the Sev-
enth Circuit noted in *Hartman v. Board of Trustees
of Community College Dist. 508,* 4 F.3d 465 (7th
Cir. 1993), this exception must be applied with care
in the context of section 1985 lest it overwhelm the
rule. *Id.* at 470. As the court explained, conspiracy
claims under section 1985 necessarily "depend[ ]

on a showing that the conspirators share an
'invidiously discriminatory motivation,' a term that
would seem to be synonymous with 'personal racial
animus' (and not much different from 'independent
personal stake' [i.e., personal bias]) ... Thus, by
proving a prima facie case under section 1985(3),
[a] plaintiff would necessarily bring his or her
claim within the exception ..., rendering the in-
tracorporate conspiracy doctrine meaningless." *Id.*

*6 If the sole allegation here were that the defend-
ants conducted the seminars in a harassing and dis-
criminatory manner, we might be forced to con-
clude that the intracorporate conspiracy doctrine
barred the plaintiffs' section 1985(3) claim, as the
seminars themselves were the ordinary business of
the DEA. However, the plaintiffs have also alleged
that the individual defendants not only ignored
written complaints of female participants about the
manner in which the seminars were conducted, but
also deliberately destroyed those evaluations, pre-
sumably to conceal the complaints from others at
the DEA. These allegations go beyond "the lawful
business" of DEA and indicate a purely personal
motivation. On this basis, we conclude that Count
II is not barred by the intracorporate conspiracy
doctrine.

Finally, the individual defendants argue that Rick-
secker's *Bivens* claim is time-barred under the ap-
plicable two-year statute of limitations. The
plaintiffs agree. (Pls.' Br. at 14, n.7.) Therefore, we
dismiss with prejudice all allegations in Count I re-
lating to plaintiff Ricksecker.

### III. *The Defendants in Their Official Capacities*

All of the defendants have moved to dismiss Count
V on the grounds that the plaintiffs fail to state a
claim under the Administrative Procedures Act
("APA"), 5 U.S.C. § 702 *et seq.,* because there has
been no "final agency action." They rely upon the
Supreme Court's interpretation of "final agency ac-
tion" under the APA in *Lujan v. National Wildlife
Fed'n,* 497 U.S. 871 (1990). Surprisingly, in re-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 669643 (N.D.Ill.), 69 Fair Empl.Prac.Cas. (BNA) 558
(Cite as: Not Reported in F.Supp.)

sponse, the plaintiffs do not even mention *Lujan.* Instead, they counter that section 702 is actually a broad waiver of sovereign immunity, citing to the House Report accompanying the 1976 bill amending section 702 and to numerous decisions of the courts of appeals and district courts.

Section 702 of the APA allows "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" to seek judicial review "thereof" in the federal courts. 5 U.S.C. § 702. Section 704 of the APA limits judicial review to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court ..."5 U.S.C. § 704. In *Lujan,* the Supreme Court rejected a challenge to the so-called "land withdrawal review program" of the Bureau of Land Management, on the grounds that there was no final agency action subject to judicial review. 497 U.S. at 890-91. The Court explained that, "[u]nder the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm."*Id.* at 891.

We consider *Lujan* an example of the fact that there are actions by employees of federal agencies, and of the agencies themselves, that are not subject to review under section 702 of the APA. This interpretation of the scope of judicial review under the APA undermines the position espoused by the plaintiffs. It is borne out by the Supreme Court's decision in *Franklin v. Massachusetts,* 505 U.S. 788, 112 S. Ct. 2767 (1992). There, the State of Massachusetts and two of its registered voters challenged the manner in which the 1990 census had been conducted, for the census results had caused Massachusetts to lose two seats in the House of Representatives. *Id.* at 2770.In addressing the question of whether the report of the Secretary of Commerce to the President regarding the census was a "final agency action," the Court discussed the parameters of "final agency action," stating:

*7 To determine when an agency action is final, we have looked to, among other things, whether its im-

pact 'is sufficiently direct and immediate' and has a 'direct effect on ... day-to-day business.' [Citation omitted.] An agency action is not final if it is only 'the ruling of a subordinate official,' or 'tentative.' [Citation omitted.] *The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties.*

*Id.* at 2773 (emphasis added). Under this analysis, the Court concluded that the action of which Massachusetts was really complaining was that of the President and was not reviewable under the APA. *Id.*

Recently, in *Atchison, Topeka & Santa Fe Ry. Co. v. Pena,* 44 F.3d 437 (7th Cir. 1994), *cert. granted sub nom. Brotherhood of Locomotive Eng'rs v. Atchison, Topeka & Santa Fe R.R. Co.,* 515 U.S. 1141, 115 S. Ct. 2575 (June 19, 1995), the Seventh Circuit explained of "final agency action":

Several factors are significant in determining the finality of agency action, including: 1) whether the challenged action is a definitive statement of the agency's position; 2) whether the actions have the status of laws with penalties for noncompliance; 3) whether the impact on an aggrieved party is direct and immediate; and 4) whether immediate compliance was expected.

*Id.* at 441 (citation omitted). There, the court concluded that the announced re-interpretation of a federal statute by the Federal Railroad Administration, which carried penalties for non-compliance, constituted a "final agency action." *Id.* Using the same criteria, in *Taylor-Callahan-Coleman Counties Dist. Adult Probation Dep't v. Dole,* 948 F.2d 953 (5th Cir. 1991), the Fifth Circuit determined that two opinion letters issued by the Department of Labor interpreting a federal statute were "akin to threshold determinations" and did not constitute final agency action. *Id.* at 959.In *Veldhoen v. United States Coast Guard,* 35 F.3d 222 (5th Cir. 1994), the Fifth Circuit held that the Coast Guard's initiation of an investigation into a high-seas collision did not constitute a "final agency action," ex-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 7
Not Reported in F.Supp., 1995 WL 669643 (N.D.Ill.), 69 Fair Empl.Prac.Cas. (BNA) 558
**(Cite as: Not Reported in F.Supp.)**

plaining, "[n]ormally, the plaintiff must await resolution of the agency's inquiry and challenge the final agency decision."*Id.* at 225.*See also Jobs, Training & Servs., Inc. v. East Texas Council of Gov'ts,* 50 F.3d 1318, 1324 (5th Cir. 1995) (no final agency action). And, in *Capital Network Sys., Inc., v. Federal Communications Comm'n,* 3 F.3d 1526 (D.C. Cir. 1993), in addressing whether an FCC ruling denying a request for the initiation of a process to reinstate regulation of certain billing and collection services was a "final agency action," the District of Columbia Circuit explained that "an agency action is final if it (1) represents 'a terminal, complete resolution of the case before the agency' [citation omitted], and (2) 'determine[s] rights or obligations, or ha[s] some legal consequence' [citation omitted]."*Id.* at 1530.

**\*8** If the plaintiffs' interpretation of section 702 as a broad waiver of sovereign immunity were correct, each of the courts in the cases we have discussed above would been compelled to conclude that the government action or inaction at issue was subject to judicial review. But the courts did not do so, and their discussions of the meaning of "final agency action" make clear that the conduct at issue here, namely, the manner in which the individual defendants conducted the training seminars, does not constitute a "final agency action" of the DEA within the meaning of section 704 of the APA. Therefore, the plaintiffs cannot state a claim under section 702. On this basis, we dismiss Count V with prejudice as to all defendants.[FN8]

### Conclusion

For the forgoing reasons, we grant the defendants' motions to dismiss in part and deny them in part as follows:

1. Plaintiff Ricksecker's claim in Count I is dismissed with prejudiced as time-barred.

2. The complaint is dismissed without prejudice pursuant to Rule 8(a) of the Federal Rules of Civil Procedure because it does not identify which of the individual defendants made which of the comments alleged. The plaintiffs shall have thirty days from the date of this opinion to file an amended complaint.

3. The individual defendants' motion to dismiss Counts I and II is otherwise denied.

4. Count V is dismissed with prejudice as to all defendants.

> FN1. The arguments were presented by defendant Weinstein and adopted by the other four individual defendants.

> FN2. However, the defendants' reliance upon *Perkins v. Silverstein,* 939 F.2d 463 (7th Cir. 1991), is misplaced, for that case addressed conclusory allegations of law which failed to set out the bases of the plaintiffs' claims.

> FN3.*See, e.g., Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir. 1992); *Hrubec v. National R.R. Passenger Corp.,* 981 F.2d 962, 963 (7th Cir. 1992); *La Porte County Rep. Central Comm. v. Board of Comm'rs of County of La Porte,* 43 F.3d 1126, 1129 (7th Cir. 1994)

> FN4. This interpretation is supported by the language alleged, which is at best vulgar and at worst obscene. (Compl., ¶ 11(b).) The use of such language goes far beyond calling these women lesbians or voicing an objection to their perceived sexual preferences; rather, it clearly indicates that the speakers intended the comments to be demeaning and derogatory. In reading the complaint, we need not ignore the fact that it has been common in our society to use pejorative terms for homosexuals to be generally insulting.

> FN5. Although the defendants have not articulated that the touching must be noncon-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 669643 (N.D.Ill.), 69 Fair Empl.Prac.Cas. (BNA) 558
(Cite as: Not Reported in F.Supp.)

sensual, *Trautvetter* itself makes clear that sexual advances which are welcomed or sexual conduct that is consensual cannot form the basis of a sexual harassment claim. *Id.*

FN6. A *Bivens* action is unavailable to a plaintiff who has another remedy. *Davis v. Passman,* 442 U.S. 228, 242 (1979).

FN7. We note that in only two of the three cases defendants cite, *Dornhecker v. Malibu Grand Prix Corp.,* 828 F.2d 307 (5th Cir. 1987), did the plaintiff sue *only* her employer for sexual harassment committed entirely by a third party. In contrast, in *Churchman v. Pinkerton's, Inc.,* 756 F. Supp. 515 (D. Kan. 1991), the plaintiff sued her own employer for constructive discharge in retaliation for complaining about the harassment, but sued the employer of her harasser over the harassing conduct. And, in *Llewellyn v. Celanese Corp.,* 693 F. Supp. 369 (W.D.N.C. 1988), only one out of numerous incidents of harassment was committed by a third party; the vast majority were committed by the plaintiff's co-workers.

FN8. We note that the plaintiffs requested leave to amend Count V to the extent it was not clear that they were including their allegations of failure to supervise against the unknown supervisory defendants. However, because we are dismissing Count V on legal grounds, we do not grant leave to amend.

N.D.Ill.,1995.
Markham v. White
Not Reported in F.Supp., 1995 WL 669643 (N.D.Ill.), 69 Fair Empl.Prac.Cas. (BNA) 558

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.