## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| THE ESTATE OF HELENE S. NEMIROW, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| | ) ) | No. 07-cv-6413 |
| v | ) ) | |
| | ) ) | Judge George M. Marovich |
| THE UNIVERSITY OF CHICAGO HOSPITALS, an Illinois corporation; THE UNIVERSITY OF CHICAGO, an Illinois not-for-profit corporation; and DOES 1 through 50, | ) ) ) ) ) ) | Mag. Judge Nan. R. Nolan |
| Defendants. | ) ) | |

PLEASE TAKE NOTICE that I have on this 18th day of April, 2008, filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, the attached Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, a copy of which is attached and served upon you.

Respectfully Submitted

Date: April 18, 2008

By _Lawrence H. Nemirow_
LAWRENCE H. NEMIROW
Attorney for the Estate
of HELENE S. NEMIROW

1

## CERTIFICATE OF SERVICE

The Undersigned, an attorney appearing Pro Hac Vice on behalf of the Plaintiff, The Estate of Helene S. Nemirow, certifies that on April 18, 2008, he electronically filed the foregoing document titled Notice of Filing  Opposition To Defendant's The University of Chicago Hospitals and The University of Chicago's Motion To Dismiss Plaintiff's First Amended Complaint with the clerk of the court using the CM/ECF system which will send notification of such filing to all counsel of record in this case including the following:

| LOCAL ATTORNEY FOR PLAINTIFF | ATTORNEYS FOR DEFENDANTS |
|---|---|
| **Robert A. Holstein**<br>Holstein Law Offices, LLC<br>19 South LaSalle Street, Suite 1500<br>Chicago, Illinois 60603 | **Kevin J. Clancy**<br>**Scott Russell Wolfe**<br>Lowis & Gellen, LLP<br>200 West Adams Street, Suite 1900<br>Chicago, Illinois 60606<br>Representing University of Chicago Hospitals |

Lawrence H. Nemirow, Attorney Pro Hac Vice
for The Estate of Helene S. Nemirow

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

THE ESTATE OF HELENE S.     )
NEMIROW,     )
    )
        Plaintiff,     )
    )
    )     No. 07-cv-6413
v     )
    )
    )
    )     Judge George M. Marovich
THE UNIVERSITY OF CHICAGO     )
HOSPITALS, an Illinois corporation;     )
THE UNIVERSITY OF CHICAGO, an     )     Mag. Judge Nan. R. Nolan
Illinois not-for-profit corporation; and     )
DOES 1 through 50,     )
    )
        Defendants.     )
    )

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, THE ESTATE OF HELENE S. NEMIROW, by its attorney's Lawrence H.

Nemirow of The Law Offices of Lawrence H. Nemirow, PC, and Robert A. Holstein of Holstein

Law Offices, LLC, submit the following Memorandum of Law in Opposition of defendants

Motion To Dismiss Plaintiff's First Amended Complaint.

## PROCEDURAL HISTORY

The first presented  Complaint in this matter named as plaintiffs THE  ESTATE OF

HELENE S. NEMIROW; IRMA CARVER; MADELEINE KATES; and LAWRENCE H.

NEMIROW, as survivors of HELENE S. NEMIROW, deceased, and the first presented

Complaint named as defendants MCKAY  MCKINNON, M.D.; THE UNIVERSITY OF

1

CHICAGO HOSPITALS, an Illinois Corporation; THE UNIVERSITY OF CHICAGO, an

Illinois not-for-profit corporation, and DOES 1-50.

Defendants THE UNIVERSITY OF CHICAGO HOSPITALS, and THE UNIVERSITY OF

CHICAGO moved to dismiss the first presented Complaint (Document 21) because, a) the

Complaint did no comply with section 2-622 of the Illinois Code of Civil Procedure, b) these

defendants alleged that plaintiff's failed to state sufficient allegations to support their claims, c)

these defendants alleged that counts XI and XII of the first presented Complaint failed

because plaintiffs did not allege any instrumentality or agency that was under the control of the

UC defendants to support plaintiff's under the theory of Res Ipsa Loquitur, d) these defendants

alleged that Counts XIII and XIV of the first presented Complaint alleging informed consent

must be dismissed because plaintiff's did not provide the statutorily required affidavit of merit,

and e) that the survival act allegations brought on behalf of all plaintiff's other that THE

ESTATE OE HELENE S. NEMIROW must be dismissed because Illinois law holds that only the

administrator of the Estate of a decedent has standing to bring a cause of action under the

survival act.

Prior to plaintiff's submission of its response to defendants motion to dismiss the first

presented Complaint, and upon stipulation between plaintiff and the UC defendants, plaintiff

filed a First Amended Complaint including an affidavit and medical report under 2-622. The

First Amended Complaint removed all plaintiff's other than THE ESTATE OF HELENE S.

NEMIROW, and deleted the allegations under the theory of Res Ipsa Loquitur and allegations

under the survival statute.

Plaintiff also voluntarily dismissed Plaintiff MCKAY MCKINNON, M.D. without prejudice.

The UC defendants now seek to dismiss the First Amended Complaint because they claim

that the affidavit of the health care provider fails to meet the requirements mandated by 735 ILCS

5/2-622, and they further claim that the plaintiff failed to set forth sufficient allegations of

wrongdoing against the UC defendants.

2

Plaintiff contends that the affidavit of the health care provider meets the 2-622 requirements under Illinois state law, and that under Federal law, the First Amended Complaint states sufficient allegations for the case to proceed.

Plaintiff further contends that should this Court find in the UC defendants favor and grants its motions to dismiss, that the dismissal be without prejudice to the plaintiff's obtaining an amended medical report and without prejudice to plaintiff's filing a Second Amended Complaint with amended pleadings .

### ARGUMENT

### THE AFFIDAVIT AND MEDICAL REPORT
### IS IN COMPLIANCE WITH SECTION 2-622
### OF THE ILLINOIS CODE OF CIVIL PROCEDURE

In its request for dismissal of this matter Defendant states that plaintiff failed to provide a proper and complaint affidavit and report from a health care professional to support the cause of action alleged, and the complaint must be dismissed. The details that are to be included in the medical report under section 2-622 of the Illinois Code of Civil Procedure requires:

"A single written report must be filed to cover each defendant in the action. As to defendants who are individuals, the written report must be from a health professional licensed in the same profession, with the same class of license, as the defendant. For written reports filed as to all other defendants, who are not individuals, the written report must be from a physician licensed to practice medicine in all its branches who is qualified by experience with the standard of care, methods, procedures and treatments relevant to the allegations at issue in the case."

### DR. BUYNAK'S REPORT MET THE REQUIREMENTS OF 2-622

The medical affidavit attached to the first amended complaint is from a physician board certified in Internal Medicine is attached as Exhibit I to this memorandum. The Physicians CV is attached as Exhibit II to this memorandum.

The physicians report states in part as follows:

3

"I am licensed to practice medicine in all of its branches in the State of Indiana. I am board certified in internal medicine. I am familiar with the issues of care and treatment involved herein. I devote 75% of the time that I spend in either medical practices or in teaching, to the type of medicine at issue herein, and I have familiarity with the standard of care in the State of Illinois on the matters at issue herein. I am qualified by experience, education and training with the standard of care, methods and procedures and treatments relevant to the allegations at issue in this case, and I have practiced and taught in this field within the past five years. I have read and I am familiar with the relevant medical records, the representations of counsel and/or facts herein, and for the reasons set forth herein below, I hold the opinion to a reasonable degree of medical certainty that the defendant, the University of Chicago, by and through the actions of its agents, deviated from the applicable standard of care in this matter in July and August, 2006. The deviation(s) by all defendants below proximately caused or contributed to the plaintiff's death and accordingly a reasonable and meritorious basis for suit exists."

### THE REPORT ADDRESSES THE STANDARD OF CARE AND HOW THAT STANDARD WAS BREACHED

The decedent died from a infection. As the report from the Dr. Buynak states, "The records clearly indicate by multiple treaters that the infection existed but the manner in which the infection was treated is the basis for this suit".

As the preamble to the physicians report stated, "....and for the reasons set forth below I hold the opinion to a medical degree of certainty, that the defendant, University of Chicago, by and through the actions of its agents, deviated from the applicable standard of care in this matter..."

The physicians report went on to describe the deviations in the standard of care by stating as follows: "In essence the infection was treated by the defendant by the use of antibiotic

4

medications which was not having the desired effect however. When the matter did not clear up the defendant continued to use antibiotics and refused to admit her into the hospital for closer monitoring in the face of unending fever, lower extremity and back pain and high white cell count".

The physicians report then described the further deviations in the standard of care as follows: "At no time was there any surgical intervention for the infection", and further stated that "When she was finally admitted to into the hospital her narcotics dosages were not properly regulated as she exhibited persistent mental status changes".

Dr. Buynak's  report then conclusively states that "Ultimately she died from a cardio-pulmonary event, central respiratory failure and sepsis secondary to all of the above negligent acts of commission and/or omission acting either in singularity or in combination with each other."

### STATEMENT OF LAW IN SUPPORT OF DR. BUYNAK'S REPORT

As stated in the case of *Muller v. North Suburban Clinic* 701 N.E.2d 246, 233 Ill. Dec. 603 (Ill.App. 09/30/1988), "The Statute was not intended to deprive plaintiff's with legitimate claims of their right to trial on the merits by creating insurmountable pleading hurdles." also see *Steinberg v. Dunseth*, 276 Ill. App. 3d 1038, 1042, 658 N.E. 2d 1239 (1995), and *Ebbing v. Prentice*, 225 Ill. App. 3d 598, 601, 587, N.E. 2d 1115 (1992).

The *Muller* Court further held that "The requirements of section 2-622 should be liberally construed so that the controversies may be determined according to the substantive rights of the parties". That Court reversed a section 2-622 dismissal because the Court determined that the reasons stated in the physician's report filed in that case were sufficient to support that doctors ultimate determination that a reasonable and meritorious cause existed for the filing of that action.

Defendant argues that the failures described in the physicians report is deficient because it does not say what was specifically done, what should have been done, why it should have, what the standard of care is to each action, and how any action contributed to the injuries alleged.

5

In the recent decision reached in *Maldonado v. Sinai Med. Group, Inc.*, 2008 U.S. Dist. LEXIS 3262, 13-14 (D. Ill. 2008) that Court held that a medical report sufficiently justifies a conclusion that a malpractice action is meritorious if articulates "the deficiencies in the medical care provided by the defendants" which give rise to the plaintiff's cause of action, citing *Neuman v. Burstein*, 230 Ill. App. 3d 33, 40, 595 N.E.2d 659, 664, 172 Ill. Dec. 298 (2d Dist. 1992) and *Giegoldt v. Condell Med. Ctr.*, 328 Ill. App. 3d 907, 913, 767 N.E.2d 497, 502, 263 Ill. Dec. 46 (2d Dist. 2002).

It has been held that the Statutory Language as used in Dr. Buynak's not only can be used, but is preferred. *Cuthbertson v. Axelrod* 282 Ill.App.3d 1027, 669 N.E.2d 601, 218 Ill.Dec. 458 (1st Dist. 1988).

The sole cause of action alleged in the first amended complaint is medical malpractice against the University of Chicago Hospitals and The University of Chicago for failure to treat the deceased infection leading to death. The other defendant in the action, Dr. McKay Mckinnon was dismissed without prejudice.

A liberal reading of the physicians report with regard to the deceased treatment does state what was and what was not done, ie treating the deceased with antibiotics that were ineffective, refusing to admit the deceased to the hospital for closer monitoring, not performing surgical intervention for the infection, and not properly regulating the deceased's narcotics dosages which ultimately led to death.

In deciding whether the medical report is sufficient, plaintiff respectfully request that this Court keep in mind the guidance of Illinois courts which holds that section 2-622 "should not be mechanically applied to deprive the plaintiff of substantive rights," *Comfort v. Wheaton Family Practice*, 229 Ill. App. 3d 828 at 832, 594 N.E.2d 381at 384 (1992), but rather is designed to prevent the filing of frivolous lawsuits.

As the Court held in *Hagood v. O'Conner*, 165 Ill. App. 3d 367, 373, for a 2-622 to be valid, it is sufficient that the consulting health care professional has given reasons for his Conclusion that the cause has merit.

6

## DR. BUYNAK IS QUALIFIED TO ACCESS THE ACTIONS
## OF PROFESSIONALS IN THE DIFFERENT FIELDS INVOLVED

Defendant argues that the report fails to show that Dr. Buynak is qualified to assess the action of professionals in the different fields involved.

Under Illinois law, Dr. Buynak does not need to practice in the same specialty as other professionals in order to offer a valid medical report; the requirement that he must "practice[] . . . in the same area of health or medicine" requires only that he, like the defendants, must be a licensed physician. *Hagood v. O'Conner*, 165 Ill. App. 3d 367, 372-743 519 N.E.2d 66, 69, 116 Ill. Dec. 476 (3d Dist. 1988).

In *Maldonado v. Sinai Med. Group, Inc.*, 2008 U.S. Dist. LEXIS 3262, 18-19 (D. Ill. 2008) the health care professional's report stated "I am knowledgeable in the issues of medical care that were practiced in this matter. I am familiar with the standard of care for doctors in this area. I am familiar with what the standard of care requires for physicians treating patients with osteomyelitis, infection, and findings of osteomyelitis on CT scan.(Cohn Rep.) Dr. Cohn has adequately attested to his qualifications in this area and to his ability to render an opinion about the relevant standard of care of the treating physicians".

Dr. Cohn was a member of the faculty of Northwestern University's Feinberg School of Medicine, and like the physician in this case was board-certified in internal medicine. The *Maldanado* Court held that Dr. Cohn has adequately attested to his qualifications in this area and to his ability to render an opinion about the relevant standard of care of the treating physicians.

In a section 2-622 report, the precise identity of the treating physician is unimportant, because the consulting physician reviews conduct, not identity. *Avakian v. Chulengarian*, 328 Ill. App. 3d 147, at 160, 766 N.E.2d 283, at 295, 262 Ill. Dec. 663 (2d Dist. 2002). While a medical report must clearly identify each treating physician's conduct when multiple physicians are named as defendants (*Mueller v. N. Suburban Clinic*, Ltd., 299 Ill. App. 3d at 568, at 577, 701 N.E.2d at 246 at 253 (1988), only the hospital is named as a defendant in this matter.

Illinois cases have further held that when a hospital is the defendant in medical malpractice

7

action, a physician licensed in all its branches is qualified to be the reviewing health professional. *Moss vs. Gibbons*, 180 Ill. App. 3d 632, 637, 536 N.E.2d 125, 129 Ill. Dec. 441 (1989).

<u>AN AMENDMENT OF THE MEDICAL REPORT, IF NEEDED</u>
<u>MORE CLOSELY FURTHERS THE PURPOSE OF SECTION 2-622</u>

Where a minor technical error is involved, the Courts have permitted a plaintiff to amend because the amendment more closely furthers the purpose of 2-622 than dismissing with prejudice. *Thompson v. Heydemann*, 231 Ill. App. 3d 578, 582, 173 Ill. Dec. 40, 596 N.E.2d 664 (1992)

In *Steinberg v. Dunseth*, 276 Ill. App.3d 1038, 1042, 213 Ill. Dec. 218, 658 N.E.2d 1239 (1995), that Court held that while a complaint may be dismissed where it fails to comply with the substantive requirements of 2-622, that is, where it does not clearly identify the reasons for the health care professionals determination that there is a meritorious cause of action, leave to amend should be granted.

Other Courts have held that in medical malpractice cases, leave to amend may be granted more freely since "the plaintiff should be afforded every reasonable opportunity to establish his case." *Peterson v. Hinsdale Hospital*, 233 Ill. App. 3d 327, 332, 599 N.E.2d 84, 89, 174 Ill. Dec. 538 (1992). See also *Leask v. Hinrichs*, 232 Ill. App. 3d 332, 339, 595 N.E.2d 1343, 1347, 172 Ill. Dec. 673 ("amendments to medical malpractice pleadings should be liberally allowed so that the case may be decided on its merits").

**WHEREFORE**, Plaintiff respectfully requests that defendants motion to dismiss Plaintiff's first amended complaint on the basis that the physician's report did not comply with section 2-622 be denied and that the Court Order defendant to file a responsive pleading in the form of a Answer to the First Amended Complaint. If the Court grants defendants motion to dismiss, leave to amend

should be granted.

8

IN DECIDING A RULE 12(b)(6) MOTION, THE
COURT ACCEPTS ALL WELL-PLEADED FACTS
AS TRUE, AND DRAWS ALL REASONABLE INFERENCES
IN FAVOR OF THE PLAINTIFF

The Court in the matter of *Barrios v. Sherman Hosp.*, 2006 U.S. Dist. LEXIS 92146, 3-5

(D. Ill. 2006), adequately comments on the Court's role in deciding a Rule 12(b)(6) motion as

follows:

"In deciding a Rule 12(b)(6) motion, the court accepts all well-pleaded facts as true,

and draws all reasonable inferences in favor of the plaintiff. See, e.g., *Jackson v. E.J.

Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999). "The issue is not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

support the claims . . . Rule 12(b)(6) should be employed only when the complaint

does not present a legal claim." *Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 327

(7th Cir. 1999); see *Leatherman v. Tarrant County*, 507 U.S. 163, 168, 113 S. Ct.

1160, 122 L. Ed. 2d 517 (1993) (the Federal Rules of Civil Procedure allow for a

liberal system of notice pleading); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512,

122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (a complaint must only include "fair notice of

what the plaintiff's claim is and the grounds upon which it rests"); *Alliant Energy

Corp. v. Bie*, 277 F.3d 916, 919 (7th Cir. 2002) ("A complaint need only state the

nature of the claim, details can wait for later stages"). When reviewing a motion to

dismiss under Rule 12(b)(6), the court therefore merely looks at the sufficiency of the

complaint, *Swierkiewicz*, 534 U.S. at 508; *Johnson v. Rivera*, 272 F.3d 519, 520-21

(7th Cir. 2001), it does not decide whether the plaintiff has a winning claim. See

McCormick v. City of Chicago, 230 F.3d 319, 323-26 (7th Cir. 2000) (analyzing

*Leatherman*, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517, and reversing the Rule

12(b)(6) dismissal of claims based on §§ 1981 & 1983).[P]leadings in federal court

need not allege facts corresponding to each element of a statute. It is enough to state a

claim for relief - and Fed. R. Civ. P. 8 departs from the old code-pleading practice by

enabling plaintiffs to dispense with the need to identify, and plead specifically to, each ingredient of a sound legal theory. . . Plaintiffs need not plead facts; they need not plead law; they plead claims for relief. Usually they need do no more than narrate a grievance simply and directly, so that the defendant knows what he has been accused of *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005)."

<u>DISMISSAL FOR FAILURE TO STATE A CLAIM<br>IS WARRANTED ONLY WHEN IT APPEARS BEYOND DOUBT<br>THAT PLAINTIFF CAN PROVE NO SET OF FACTS IN<br>SUPPORT OF HIS CLAIM WHICH ENTITLES HIM TO RELIEF</u>

As stated above, when considering a motion to dismiss for failure to state a claim, the Court accepts the plaintiff's allegations as true, and construes all inferences in favor of the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984); *Thompson v. Ill. Dep't of Prof. Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Dismissal for failure to state a claim is warranted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Mattice v. Memorial Hosp. of South Bend*, Inc., 249 F.3d 682, 684 (7th Cir. 2001), citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). According to *Hishon*, 467 U.S. at 73 (Rule 12(b)(6) dismissal is appropriate only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations").

<u>THE COMPLAINT CONTAINS SUFFICIENT FACTS TO ENTITLE RELIEF</u>

The Complaint includes but is not limited to  the following allegations:

"16.  Plaintiff believes and therefore alleges that during the initial examination by Dr. McKinnon, against the wishes of the decedent, Dr. McKinnon performed a rough examination which caused the deceased to develop a hematoma which ultimately became infected and let to HELENE NEMIROW's death.

18.  On or about August 1, 2006, Pavilion discharged HELENE NEMIROW back to defendant Hospital because she developed an elevated white blood cell count caused by the infection. After twenty four hours in the emergency room at defendant

10

Hospital, defendant Hospital refused to readmit HELENE NEMIROW as a patient.

27.   From and after said times, defendants, and each of them so negligently examined the deceased and diagnosed and failed to diagnose her condition and so negligently treated her, and so negligently cared for here while she was in the exclusive control of the defendants, and each of them, and so negligently operated, managed, maintained, selected, designed, controlled, conducted their services, activities, personnel and equipment in connection with the deceased's care and treatment that the same proximately caused the death of HELENE NEMIROW as alleged herein.

28.   The negligent diagnosis and treatment in particular is that although defendant Hospital treated the deceased with antibiotic medications while the decedent was under the exclusive care, custody and control of defendant Hospital , the antibiotic medications were not having the desired effect, and defendant Hospital failed to ensure that the medications be changed so that the infection could be properly treated as any prudent health care facility in the Northern District of Illinois would have so done.

29.   From and after said times, defendants, and each of them, failed to warn the deceased when she developed an infection while she was in the exclusive control of the defendants, and each of them, that she may be suffering from a life threatening condition, when a reasonably prudent health care provider would have so warned. The absence of this warning served to prevent the deceased from seeking urgent care elsewhere than in the nursing homes she went to between her admissions at defendant Hospital, and the same lack of warning allowed the infection to spread untreated, which proximately led to her death.

30.   From and after the time the deceased was readmitted to defendant UNIVERSITY OF CHICAGO HOSPITAL, the deceased's narcotics dosages were not properly monitored or regulated causing her to suffer persistent mental status changes and causing her to remain in a constant stupor. A reasonably prudent health care provider in the Northern District of Illinois would have properly monitored or

11

regulated the dosages. The negligence of defendants, and each of them, in not properly regulating the narcotics dosages was the proximate cause of HELENE NEMIROW's death.

31.    From and after the time  the decedent was under the exclusive care, custody and control of defendant Hospital, no surgical intervention was performed with regard to the infection, when a reasonably prudent health care provider in the Northern District of Illinois would have performed surgical intervention. The negligence of defendants, and each of them, in not performing surgical intervention was the proximate cause of HELENE NEMIROW's death.

32.    From and after the time the decedent was under the exclusive care, custody and control of defendant Hospital, decedent complained of chest pains, but defendant Hospital failed to properly monitor her cardio-pulmonary status, when a prudent health care provider in the Northern District of Illinois would have so monitored. The negligence of defendants, and each of them, in not monitoring HELENE NEMIROW's cardio-pulmonary status, was the proximate cause of HELENE NEMIROW's death."

The above allegations clearly allow the defendants to determine the conduct in which they are alleged to have engaged so that defendants can  formulate a defense to the case.

The medical records obtained from defendant identify each doctor and nurse who administered to the decedent by date, time, and the treatment delivered.

Defendants contention that they would have to interview and investigate hundreds of potential professionals and other employees, is simply not true, as each of the employees involved in the care and treatment of the deceased are in the case case management notes equally accessible to the attorneys for the defendant.

**WHEREFORE,** plaintiff respectfully requests that defendant's motion to  dismiss the complaint the complaint for failure to state a claim be denied and that  defendant be Ordered to file a responsive pleading to the complaint.

12

## DISMISSAL OF AN ENTIRE COMPLAINT
## IS NOT WARRANTED IF SOME ACTS OF
## NEGLIGENCE ARE NOT STATED EXACTLY IN
## IN A PHYSICIAN'S REPORT

The defendant argues that the first amended complaint as a whole must fail

because three alleged acts of negligence in the first amended complaint out of approximately

eight acts of negligence are not addressed in the physician's report.

The first alleged act of negligence that defendant refers to is the allegation that the UCH

defendants failed to properly ensure the character, quality and competence of

individuals...treating patients in said hospital. The second alleged act of negligence is that after

the decedent complained of chest pains the decedent failed to monitor her cardio-pulmonary

status. The third alleged act of negligence is that the defendants delayed in checking on the status

of the decedent after an unnamed health care professional noted that she could not rouse the

decedent.

Plaintiff maintains that these three acts of alleged negligence are legal principals, and that

section 2-622 neither requires or contemplates that a health care professional comment on legal

principals. *McAlister v. Schick,* 147 Ill. 2d 84, 97-98, 588 N.E. 2D 1151 (1992).

The Illinois Courts have consistently held that technical pleading requirements imposed by

section 2-622 should not be utilized to deprive a plaintiff of a trial on the merits of a medical

malpractice claim. *Simpson v. Illinois Health Care Corp*, 225 Ill. App. 3d 685, 689 (1992);

*Requena v. Franciscan Sisters Health Care Corp.* 212 Ill. App. 3d 328, 333 (1991) .

Defendant's could have filed a Motion To Strike the allegations in the first amended

complaint that the defendant believes is not in compliance with 2-622.  Requesting that the entire

report be tossed because it does not address these three instances of negligence would be contrary

to the intent of 2-622.

**WHEREFORE,** plaintiff respectfully requests that defendant's motion to dismiss the entire

complaint because the report fails to speak to the basis of only three instances of negligence out

of eight counts of negligence alleged in the complaint be denied and that defendant be Ordered to

13

file a responsive pleading to the complaint.

## CONCLUSION

Because the medical affidavit complied with section 2-622 of the Illinois Code of Civil Procedure, and because plaintiff's factual allegations support a claim upon which relief can be granted, the Court should deny defendant's motion and retain the case on the Court's docket. In the alternative, if the Court determines that the medical affidavit is not sufficient, and/or the Court determines that plaintiff has failed to state a claim, plaintiff asks the Court leave to amend the medical affidavit and/or the First Amended Complaint.

Respectfully Submitted

Date: April 18, 2008

By _Lawrence H. Nemirow_
LAWRENCE H. NEMIROW
Attorney for the Estate
of HELENE S. NEMIROW

14

EXHIBIT I

Physician's Report and Certificate of Medical malpractice:

Re: Helene Nemirow (deceased)

I certify as follows;

I am licensed to practice medicine in all of its branches in the State of Indiana. I am board certified in internal medicine. I am familiar with the issues of care and treatment involved herein. I devote 75% of the time, that I spend in either medical practice or in teaching, to the type of medicine at issue herein, and I have familiarity with the standard of care in the State of Illinois on the matters at issue herein. I am qualified by experience, education and training with the standard of care, methods, procedures and treatments relevant to the allegations at issue in this case, and I have practiced or taught in this field within the past five years. I have read and I am familiar with the relevant medical records, the representations of counsel and/or facts herein, and for the reasons set forth herein below, I hold the opinion to a reasonable degree of medical certainty that the defendant, University of Chicago, by and through the actions of its agents, deviated from the applicable standard of care in this matter in July and August, 2006. The deviation(s) by all defendants below proximately caused or contributed to the plaintiff's death and accordingly a reasonable and meritorious basis for suit exists.

The decedent suffered from a condition known as neurofibromatosis which is characterized in part by scattered skin growths. She was intending to have plastic surgery on some of this. She also suffered from a bleeding diathesis of unknown etiology. She did suffer a bleed into one of the skin lesions secondary to handling by defendant. This then became an infected hematoma. The records clearly indicate by multiple treaters that the infection existed but the manner in which the infection was treated is the basis for this suit. In essence the infection was treated by the defendant by the use of antibiotic medications which were not having the desired effect however. When the matter did not clear up the defendant continued to use antibiotics and refused to admit her into the hospital for closer monitoring in the face of unending fever, lower extremity and back pain and high white cell count. At no time was there any surgical intervention for the infection. When she was finally admitted into the hospital her narcotics dosages were not properly regulated as she exhibited persistent mental status changes. Ultimately she died from a cardio-pulmonary event,  central respiratory failure and sepsis secondary to all of the above negligent acts of commission and/or omission acting either in singularity or in combination with each other.

The University of Chicago emergency room staff also participated in her care during the times aforesaid and they also refused to admit her into the hospital for the care set forth above but instead discharged her to a nursing care facility. Neither defendant warned plaintiff that she may be suffering from a life threatening condition when a reasonably prudent health care provider would have so warned. The absence of this warning served to prevent decedent from seeking urgent care elsewhere by depriving her of the knowledge of the dangerous and serious nature of her condition of ill being.

Robert Buynak, M.D.

02/19/08

EXHIBIT II

# Robert J. Buynak, MD, FACP
# Board Certified, Internal Medicine

Northwest Indiana Center for Clinical Research
150 W. Lincolnway
Suite 2004
Valparaiso, IN 46383
(219) 464-8302
Fax (219) 531-1825
rbuynak@att.net

*License Number 010484258*

## EMPLOYMENT

**-Indiana University School of Medicine**          Sept, 1999-Present
   Clinical Instructor of Medicine
**-Northwest Indiana Center for**
**Clinical Research**          Oct, 2004-Present
   Founder and President
**-Hilltop Community Health Center**          June 2005-Present
   Director, Internal Medicine
   Hospitalist
**-Portage Medical Group**          July, 1998-May 2005
   Private Practice
   Chief of Medicine, Porter Memorial Hospital          2001-2002
**-*Patient Care*, Medical Journal**          Sept, 1999-Present
   Board of Editors

## EDUCATION

**Mayo Clinic**          July, 1995-July, 1998
   Internal Medicine Internship and Residency
**Harvard Medical School**          Aug, 1991- May, 1995
   Doctor of Medicine (MD)
**University of Notre Dame**          Aug, 1987-May 1991
   Bachelor of Science, Biological Sciences

## HONORS and AWARDS

-Fellow, American College of Physicians (FACP) 2004
-Porter County VNA Physician of the Year, 2004
-Valedictorian, University of Notre Dame Class of 1991
-*Phi Beta Kappa, Alpha Epsilon Delta*

## PUBLICATIONS

- Buynak RJ. Diabetes 1-2-3, A Simplified Guide to Managing Type 2 Diabetes, American Diabetes Association (Manuscript approved, Publication Date February 2006)
- Buynak RJ. The Role of Primary Care in Bariatric Procedures. *Patient Care*, 2005: 39:7.
- Issue Editor, Special Focus on Neurology, *Patient Care*, 2002:7:4.
- Buynak RJ and Evans JM. Influenza in the Nursing Home: Prevention and Treatment. *Nursing Home Medicine* 1996;4:319-324.
- Buynak RJ and Winter HS. Acquired Immunodeficiency Syndrome and Gastrointestinal Immune Function. *Curr Opin Gastroenterology* 1992;8:1010-1014.

## PRESENTATIONS

-Keynote Speaker, Indiana Chapter ACP State Meeting Nov.2003
-Update in Medicine, Indiana Chapter ACP State Meeting Nov. 2002

## CLINICAL RESEARCH PROJECTS

-"Randomized, Open-Label, Multicenter Trial of the Safety and Effectiveness of Oral Telithromycin (Ketek) and Amoxicillin/Clavulanic Acid (Augmentin) in Outpatients With Respiratory Tract Infections in Usual Care Settings. Protocol# HMR3647A/3014. Aventis."

-A Multicenter, Open-Label, Crossover Study Comparing Maxalt (Rizatriptan Benzoate) with Usual Care Oral Migraine Medications. Protocol # SAIRB-02-0021. Merck."

-"REACH (REduction of Atherothrombosis for Continued Health) Registry, Sanofi."

-Impact of Point-of-Care Vs. Laboratory Testing of Hemoglobin A1C (HBA1C), and Intense Vs. Standard Monitoring of Titration Algorithm Adherence on Glycemic Control in Type 2 Diabetes Subjects, Who Are Inadequately Controlled on Oral Anti-Hyperglycemic Therapy, And Starting Lantus (Insulin Glargine Injection): A 2x2, Randomized, Open-Label Trial. Protocol # HOE-901-4033, Aventis."

-"TREAT (Trial to Reduce Cardiovascular Events with Aranesp Therapy) Protocol # 20010184 Amgen."

-"JUPITER (Justification for the Use of statins in Primary prevention: an Intervention Trial Evaluating Rosuvastatin) Randomized, Double-Blind, Placebo-Controlled, Multicenter Phase III Study of Rosuvastatin (Crestor) 20mg in the Primary prevention of Cardiovascular Events Among Subjects with Low Levels of LDL-

Cholesterol and Elevated Levels of C-Reactive Protein.  Protocol #4522US/0011AstraZeneca."

-"Randomized, Open-Label Study to Assess the Safety of Epoetin Alfa Manufactured by Deep Tank Technology and Epoetin Alfa Manufactured by Roller Bottle Technology in Subjects with Chronic Kidney Disease Not on Dialysis. Protocol # 20040259. Amgen."

-"Randomized, Multicenter, Double-Blind, Placebo-Controlled, Single Dose Comparison of the Analgesic Activity of HKT-500 and Placebo in Subjects with Shoulder Pain. Protocol     # HKT-500-US03. Hisamitsu."

-"Randomized, Multicenter, Double-Blind, Placebo-Controlled, Two-Week Study to Assess the Safety and Efficacy with Pain from Moderate Lateral Epicondylitis. Protocol# HKT-500-US-05.Hisamitsu."

-"Randomized, Multicenter, Double-Blind, Placebo-Controlled, Two-Week Study to Assess the Safety and Efficacy of HKT-500 in Subjects with Low Back Pain. Protocol# HKT-500-US-04.Hisamitsu."

-"An Open-Label Safety Study with the Intermittent Use of HKT-500 in Subjects with Lower Back Pain, Pain From Osteoarthritis of the Knee, Shoulder Pain or Lateral Epicondylitis Pain.
 Protocol# HKT-500-US-06.Hisamitsu."

-" A Double-Blind, Randomized, Placebo-Controlled Study to Evaluate the Efficacy and Safety of Oravescent Fentanyl Citrate for the Management of Breakthrough Pain in Opiod-Tolerant Patients With Chronic Neuropathic Pain.
Protocol # C25608/3041/BP/US Cephalon."

-" A Double-Blind, Randomized, Placebo-Controlled Study to Evaluate the Efficacy and Safety of Oravescent Fentanyl Citrate for Pain Management of Breakthrough Pain in Opiod-Tolerant Patients with Chronic Low Back Pain.
Protocol # C25608/3042/BP/US Cephalon."

-"A Multi-centre, Double-blind, Randomized-withdrawal, Parallel-group, Placebo-controlled Phase III Study of the Efficacy and Safety of Quetiapine Fumarate Sustained Release (SEROQUEL SR) as Monotherapy in the Maintenance Treatment of Patients with Major Depressive Disorder Following an Open-Label Stabilization Period (AMETHYST STUDY)"

-"Protocol CV181013: A Multicenter, Randomized, Double-Blind, Placebo Controlled, Phase 3 Trial to Evaluate the Efficacy and Safety of Saxaglipitin (BMS-477118)  In Combination with Thiazolidinedione Therapy in Subjects with Type 2 Diabetes Who Have Inadequate Glycemic Control on Thiazolidenedione Therapy Alone"

-"A double-blind, randomized study to evaluate the efficacy and safety of TAK-475 50 mg, 100 mg or placebo when co-administered with rosuvastatin (10 mg or 20 mg) in subjects with primary hypercholesterolemia."

-"A randomized double-blind, double-dummy, placebo-controlled, 3x4 factorial design trial to evaluate telmisartan 20 and 80 mg tablets in combination with ramipril 1.25, 10, and 20 mg capsules after eight weeks of treatment in patients with State I or II hypertension, with an ABPM sub-study.  Clinical Phase III."

## ACTIVITIES

- Chairman, Porter Memorial Hospital Diabetes Advisory Committee
- Chairman, Porter Memorial Hospital CME Committee
- Founding Member, Life Teen Program, St. Paul Church
- School Board Member, St. Paul School

## CERTIFICATE OF SERVICE

The Undersigned, an attorney appearing Pro Hac Vice on behalf of the Plaintiff, The Estate of Helene S. Nemirow, certifies that on April 18, 2008, he electronically filed the foregoing document titled Memorandum of Support In Opposition To Defendant's The University of Chicago Hospitals and The University of Chicago's Motion To Dismiss Plaintiff's First Amended Complaint with the clerk of the court using the CM/ECF system which will send notification of such filing to all counsel of record in this case including the following:

| LOCAL ATTORNEY FOR PLAINTIFF | ATTORNEYS FOR DEFENDANTS |
|---|---|
| **Robert A. Holstein**<br>Holstein Law Offices, LLC<br>19 South LaSalle Street, Suite 1500<br>Chicago, Illinois 60603 | **Kevin J. Clancy**<br>**Scott Russell Wolfe**<br>Lowis & Gellen, LLP<br>200 West Adams Street, Suite 1900<br>Chicago, Illinois 60606<br>Representing University of Chicago Hospitals |

Lawrence H. Nemirow, Attorney Pro Hac Vice
for The Estate of Helene S. Nemirow

15