IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESTATE OF HELENE S. NEMIROW; ) | |
| ) | |
| Plaintiff, ) | No. 07-cv-6413 |
| ) | |
| v. ) | |
| ) | Judge George M. Marovich |
| MCKAY MCKINNON, M.D.; THE ) | |
| UNIVERSITY OF CHICAGO ) | Magistrate Judge Nan R. Nolan |
| HOSPITALS; THE UNIVERSITY OF ) | |
| CHICAGO; and DOES 1-50, ) | |
| ) | |
| Defendants. ) | |

**REPLY IN SUPPORT OF MOTION TO DISMISS
PLAITNIFF'S FIRST AMENDED COMPLAINT**

Defendants, THE UNIVERSITY OF CHICAGO HOSPITALS ("UCH") and THE UNIVERSITY OF CHICAGO ("The University") (collective "UC Defendants"), by their attorneys, Scott R. Wolfe and Kevin J. Clancy of Lowis & Gellen, LLP, submit the following Reply in Support of their Motion to Dismiss Plaintiff's First Amended Complaint.

**I.  The Report of Dr. Buynak Did Not Comply With the Requirements of Section 2-622 and Fails to State the Applicable Standard of Care.**

Plaintiff argues that the report of Dr. Buynak sufficient identifies the alleged negligent acts, the standard of care and how that standard was breached. However, the portions of the report to which the Plaintiff cites contain numerous examples of vague and indefinite conclusions that fail to meet the letter and spirit of the requirement in Section 2-622. For example, the report states that the negligence was committed by the UC Defendants "by and through the actions of its agents." (Pl. Resp. p. 4). Nowhere does the report identify any such agents, the occupations of the agents (nurses, lab technicians, radiologists, etc.), or what these

unnamed agents did, despite the fact that Dr. Buynak asserts that he has read and reviewed the relevant medical records.

Plaintiff argues that the report specifies the standard of care and quotes to the following language, that the agents (again unnamed) "deviated from the applicable standard of care." The report never defines the "applicable standard of care." Moreover, it would be impossible for one standard to apply to each of the numerous unspecified acts alleged against the unspecified agents, because they involve different areas of medicine and surgery. Specifically, the report states that "the manner in which the infection was treated is the basis for the suit." It does not state who the treaters were, how the infection was treated, how it should have been treated or what the standard of care was for treating such infections. The report states that the "defendant" (again no individual named) "continued to use antibiotics and refused to admit [Plaintiff] into the hospital for closer monitoring." The report does not specify the identity of the actor, how or why continued use of antibiotics did not meet a standard of care, or what the standard of care was given alleged inefficacy of certain antibiotics. The report does not state who was supposed to admit the decedent to the hospital, or when, or how long antibiotics were supposed to be monitored before they are deemed ineffective. The report is nothing but speculation and conclusion, without at least some minimal specification of the actors, actions required, and alleged deviation from those actions.

The Plaintiff also argues that the standard of care is specified when the report states that "at no time was there any surgical intervention." Nowhere does the report state what the standard of care was for determining when surgical intervention is required, how or why surgical intervention would have changed anything, and when or how any of the unnamed actors (or agents) were to have recommended surgery. Next Plaintiff argues that the required information

is present when the report states that medication dosages were not properly monitored. Again, the report presents no information as to who should have monitored the dosages, what medications are in question, or when such failure occurred. The medical records are over 1,000 pages, with more than 100 individuals who performed services, some of whom may not even be employees. Without knowing who Dr. Buynak believes failed to act in some manner, it is not possible to respond to the allegations.

II.     **The Cases Upon Which Plaintiff Relies Still Require More Specific Information in a Section 2-622 Report and Support the Conclusion that Plaintiff's Report is Deficient.**

Plaintiff cites to and relies upon a number of cases for the general proposition that the requirements of Section 2-622 are not intended to deprive a plaintiff with legitimate claims to the right to trial. (Pl. Resp. at 5-6). However, even the cases upon which Plaintiff relies show that more is required in such a report than the bare and conclusory information Dr. Buynak provided here. For example, Plaintiff argues that the court in *Mueller v. North Suburban Clinic*, 299 Ill. App. 3d 568, 701 N.E. 2d 246 (1st Dist. 1998) reversed a dismissal under Section 2-622. That is an incomplete statement of that case. The court actually reversed the dismissal only as to one of the physician defendants, and upheld the dismissal as to the other three defendants, holding that the report as to the latter defendants remained deficient. The *Mueller* court's decision demonstrates what information is required and what fails to meet the standards of Section 2-622. Based on that case, the report of Dr. Buynak is deficient. In *Mueller*, the report as to the fourth doctor contained the following information. He treated pericarditis with aspirin. Although aspirin is a proper drug for treatment of this condition when clinically monitored, the dosage should have been titrated upward. The standard of care also required that he inform the patient about the effect of aspirin on vaginal bleeding and the doctor did not do this. In the presence of

trans-vaginal hemorrhage, the aspirin actually exacerbated blood loss, which in turn aggravated the resolution of the pericarditis. *Id.* at 252. The court found that this information was adequate because it described "with specificity: 1) what it is that [the doctor] did; 2) his reasons why that activity constituted a breach of the applicable standard of care; and 3) the adverse effects suffered by the plaintiff as a result of the breach." *Id.* In the present case, the Buynak report does not contain this information. It does not specify to whom (what agent) the allegations are directed, what action by the agent breached the standard of care, what the agent should have done instead, or how the alternative treatment would have changed the outcome.

The *Mueller* court also found the report as to the remaining three defendants insufficient because it did not state who was involved in what portion of the patient care and how the actions of any particular doctor fell short of the standard of care. No doctor was mentioned by name. The court criticized the report because it gave no information about "which of the physician-defendants actually prescribed aspirin for the plaintiff, which of them were involved in treating her for pericarditis, or when each of them began treating the plaintiff." *Id.* at 253. Like *Mueller*, here the report did not specify what alleged agent conducted what purportedly deficient acts. Therefore, this Court should dismiss the Amended Complaint.

In this case, the Plaintiff argues that it is not necessary to specify any particular alleged agents of the hospital that performed any of the alleged acts, because "the consulting physician reviews conduct, not identity." (Pl. Resp. at 7). That is an oversimplification. In the case Plaintiff cites, the court simply held that a report was not deficient because it mistakenly gave the wrong name of the physician. *Avakian v. Chulengarian*, 328 Ill. App. 3d 147, 160, 766 N.E.2d 283, 295 (2nd Dist. 2002). In *Avakian*, one doctor was covering another doctor's clinic, while the second doctor was on vacation, and the plaintiff was not told that the substitute doctor actually

treated him. The plaintiff received a bill with the other doctor's name on it, and incorrectly believed that doctor had treated him. However, the report clearly specified the date and location where the allegedly deficient acts took place. In the present case, there is no way to know if the report is even referring to physicians, as opposed to nurses, technicians, or other employees, let alone enough context to determine who allegedly did what. The allegations in the Amended Complaint cover four months, three hospitalizations, two nursing home admissions, one emergency room visit and outpatient care by literally hundreds of persons. Unlike *Avakian*, here it is impossible to deduce what person was allegedly negligent.

Also, Plaintiff argues that the report need not identify the individual agents because only the hospital is named as a defendant. The case law, however, holds only that a separate report as to the hospital is not needed if the action is based on respondeat superior and the actions of the agents are alleged with sufficient particularity. *Id.* Plaintiff also relies on *Comfort v. Wheaton Family Practice,* 229 Ill. App. 3d 828, 594 N.E.2d 381 (2nd Dist. 1992) for the proposition that the report is sufficient. That case, like *Avakian*, simply holds that a plaintiff need not include a separate report for the hospital if the case is based on respondeat superior; however, again in that case the individuals who performed the challenged actions were properly identified by name or by date and time of treatment. Here we do not know whether any of the alleged actors are agents or employees of the hospital because the report does not give the names of the individuals, or even any contextual information such as their profession, department, or date and time when the incidents took place.

Plaintiff also argues that the report only requires the rote recitation of the bare statutory language and cites for that proposition to *Cuthbertson v. Axelrod,* 282 Ill. App. 3d 1027, 1034, 669 N.E.2d 601, 606 (1st Dist. 1996). That case does not hold that such minimal language is

adequate. Rather, that case affirmed a dismissal with prejudice because the report did not state that the reviewing physician had the requisite experience, education or training in the subject matter at issue in the case. *Id.* 669 N.E.2d at 606-607.

Plaintiff relies on *Maldonado v. Sinai Med. Group, Inc.*, 2008 WL 161671 (N.D. Ill., Jan. 16, 2008) to support his claim that the report is adequate. However, the report that the court found adequate in *Maldonado* was significantly more detailed than the report in the present case and again, this case serves only to illustrate that the conclusory allegations in the Buynak report fail to pass muster. The court in *Maldonado* found the report sufficient because it provided the following information:

- Plaintiff underwent a CT scan in July 2004;
- The scan revealed the destruction of the bony architecture of his thoracic region;
- Drs. Russell and Glick failed to investigate the scan as they should have done;
- An MRI should have been performed to confirm the diagnosis;
- The CT scan should have been correlated clinically with the presence of staphylococcus aureus in patient's blood and complaint of back pain;
- Antibiotic treatment with nafcillin should not have been stopped, and should have been continued for 6-8 weeks;
- Patient should have been examined by a neurosurgeon;
- Had this been done, the doctors should have made the diagnosis of osteomyelitis of thoracic vertebrae;
- The antibiotic treatment with nafcillin should have continued and could have avoided ultimate paralysis.

*Id.* at *3. The *Maldonado* report specifies the actor, the treating doctor, how and why the treatment was deficient, the treatment that was required under the standard of care and how the outcome would have changed. By stark contrast, the Buynak report here contains none of this specific information. For example, although Dr. Buynak states that the decedent was treated by the use of antibiotics that were not having "the desired effect," there is no mention of: who prescribed the antibiotics, what antibiotics were used; what the "desired effect" was (total cure? reduction of infection enough to perform surgery? reduction enough to perform other procedures or administer of medications?), how long they should have been used before switching; what they should have been replaced with; etc. All of that information was present in the *Maldonado* report and that is why the court found it sufficient; e.g., the specific medication, the time period to use it; what effect it would have had; how that would have affected the outcome. Similarly, the Buynak report states that no surgical intervention was performed, but fails to state: what surgery should have been performed and why; when and how that determination should have been made; how that would have affected the outcome; and how surgery was proper, let alone mandatory. A person may be treated for pneumonia and the reviewing physician could state that there was "no surgical intervention." That may sound alarming until much later in the case when experts testify that no surgery could have been performed or would have made any difference. That is why conclusory statements that simply sound alarming, without any factual basis to explain how or why things were done wrong or could have been done better, are inadequate and cannot be the springboard for a lengthy and costly medical malpractice suit. The statute requires that there is a legitimate basis in sound medical opinion, not just a string of alarmist conclusions devoid of fact.

The last case Plaintiff relies on in this area, *Hagood v. O'Conner*, 165 Ill. App. 3d 367, 519 N.E.2d 66 (3rd Dist. 1988) likewise is inapplicable. In that case, the court simply held that the recitation of the specific statutory language that there is a "reasonable and meritorious cause" is not required in the report, if the report otherwise has the specific information needed. *Id.* 519 N.E.2d at 70. The current case has the opposite problem, the recitation of conclusions is present but the detailed basis is missing. This detailed basis for the conclusion is what Illinois law requires, not the meaningless boilerplate conclusions.

In addition to the fact that cases on which Plaintiff relies do not support his arguments, and in most cases illustrate that the Buynak report fails to contain the specificity the courts have found sufficient before, Plaintiff also fails to refute or in any way address the cases cited in the Defendants' brief. For example, he fails to make any counter-argument to: *Tucker v. St. James Hosp.*, 279 Ill. App. 3d 696, 703, 665 N.E.2d 392, 396 (1st Dist. 1996); *Jacobs v. Rush North Shore Med. Ctr.*, 284 Ill. App. 3d 995, 999-1000, 673 N.E.2d 364, 367 (1st Dist. 1996); *Peterson v. Hinsdale Hosp.*, 233 Ill. App. 3d 327, 331-332, 599 N.E.2d 84, 88 (2nd Dist. 1992); *Smith v. Gottlieb*, 2002 WL 1636546, *1 (N.D. Ill., July 23, 2002), all of which support the conclusion that the Buynak report fails to provide the information required under Section 2-622. (See Def. Mem. Pp. 4-6).

**III.   The Report Fails to Show That Dr. Buynak Is Qualified to Assess The Actions of Professionals In The Different Medical Fields Involved.**

Plaintiff contends the report is sufficient against the UCH Defendants, because the reviewing physician need only be licensed to practice medicine in all its branches. *Moss v. Gibbons*, 180 Ill. App. 3d 632, 637, 536 N.E.2d 125, 128 (4th Dist. 1989) and *Hagood*, 519 N.E.2d at 70. However, in both *Moss* and *Hagood* the reports identified the alleged agents through whom the hospital acted. Here the report does not state who was allegedly negligent.

More recent cases have held that an expert must hold the same license as the allegedly negligent health care provider. For example, in *Sullivan v. Edward Hosp.*, 209 Ill. 2d 100, 120, 806 N.E.2d 645, 658 (Ill. 2004), the Illinois Supreme Court held that a physician could not opine about the standard of care for a nurse. The Buynak report lumps all individuals at the hospital into one amorphous group of "agents," when some could be nurses, some could be technicians, some could be physicians, at least one if a surgeon, and some are psychiatrists. There is no indication of who did what and what licenses such people hold. Dr. Buynak cannot opine as to every profession in the health care field. *See Id.* Furthermore, Plaintiff not address or refute the decision in *Tucker*, 665 N.E.2d at 395, in which found that a non-surgeon could not assess whether a surgeon was negligent.

In *Maldonado*, upon which Plaintiff relies, all the court found was that the physician's report was adequate because the physician had the asserted that he had experience in treating patients with osteomyelitis, the specific etiology at issue. 2008 WL 161671 at *3. Importantly, the report identified the specific actors, their areas of expertise, and that that the author of the report practiced in those same areas. The Buynak report does not do that and is deficient for that reason.

**IV.     Plaintiff Fails To State Sufficient Allegations to Support Its Claims.**

Under the Federal pleading rules, the Plaintiff must provide enough specificity in the allegations to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955 (2007). Mere conclusions and a "formulaic recitation of the elements of a cause of action" are not sufficient. *Id.* at 1964-65. A complaint must include enough factual allegations to "raise a right to relief above a speculative level," and enough to raise a plausible claim. *Id.* In this case, Plaintiff falls

short of this standard because there is no allegations of who performed any of the negligent acts alleged, or who was involved in any of the acts, decisions, or omissions. Plaintiff does not state who performed or failed to perform any acts in any of the counts, other than Dr. McKinnon who has curiously been dismissed. These are not failures to provide "detailed facts," as Plaintiff argues. These are basic failures that strike at the heart of Defendants' right to be apprised of the claims against it (all of which are vicarious but the actors are never named) and its ability to formulate a proper defense.

Plaintiff cites to eight particular paragraphs in the Amended Complaint for the proposition that the requisite information is pled. In Paragraph 16, the allegations relate solely to Dr. McKinnon, who is no longer a defendant. In Paragraph 18, Plaintiff alleges that the decedent developed an elevated white blood cell count caused by the infection. The Buynak report does not state this, and so no claim can be based upon it. In Paragraph 27, Plaintiff alleges that "defendants and each of them" performed a list of conclusory actions or failures to act. Plaintiff claims that "defendants" "negligently operated, managed, maintained, selected, designed, controlled, conducted their services activities, personnel and equipment" such that it resulted in decedent's death, another set of claims not supported by Dr. Buynak's report. In order to respond to this, Defendants have to divine what services are at issue, what activities are at issue, what personnel are at issue, and what equipment is at issue; then, Defendants must attempt to investigate which of their hundreds or thousands of individual employees, or perhaps independent contractors (not agents) was responsible for operating them, managing them, designing them, controlling them, etc.[1] This is so far afield from the required pleading standard

---

[1] Under the *Petrillo* doctrine in Illinois, defense attorneys are precluded from interviewing non-agents, and could even be sanctioned for conducting such an investigation. *Petrillo v. Syntex Labs., Inc.*, 148 Ill.App.3d 581, 499 N.E.2d 952 (1986).

as to provide no information whatsoever. All that is alleged here is that something occurred with regard to something by someone and decedent died as a result.

In Paragraph 28, Plaintiff reiterates Dr. Buynak's vague conclusions that the antibiotics were not having the desired effect and were not monitored properly. No claim is proper based on this allegation because the report is deficient. Likewise the allegations fail to fair give notice of a valid claim. There is no mention of who did what, what medications were at issue, what this undefined "desired effect" was, and as a result Defendants cannot form a proper defense.

Paragraph 29 refers to a failure to warn. Dr. Buynak's report does not support that claim. The allegations do not refer to who should have warned or what the "life-threatening" illness was that was connected to decedent's death by alleged cardiac failure. Similarly, Paragraph 30 alleges that narcotics were not properly monitored, but does not state what those were, what they should have been, who monitored them, or what they should have done. Defendants are not suggesting that every last detail is necessary, but a complaint with none of that information is nothing other than an unsupported conclusion and affords no information for the Defendants to formulate a response.

Paragraph 31 attempts to raise a claim for res ipsa loquitor, despite the fact that the Buynak report says nothing about such a claim, and Section 2-622 specifically requires that a claim be based on the specific conclusion of the reviewing physician that res ipsa loquitor is a valid claim. This Paragraph also refers ambiguously to defendants, but does not identify any person or even any class of employee or health care professional.

Finally, Paragraph 32, refers to a failure to monitor cardio-pulmonary status. Again, this is not supported by the Buynak report. It also refers to the undefined mass of "defendants" with no information needed to formulate a defense.

V.　　**Plaintiff Cannot Expand Its Claims Beyond the Scope of the Section 2-622 Report.**

As shown in the opening motion, the Plaintiff bases the malpractice claim in this matter on not only those failures listed above, on which the report is insufficient, but also on three specific acts of negligence about which the report is completely silent—1) that the UCH Defendants "failed to properly ensure the character, quality, ability and competence of individuals. . . treating patients in said hospital"; 2) that the decedent had complained of chest pains but the defendants failed to monitor her cardio-pulmonary status; and 3) that the defendants delayed in checking on the status of the decedent after an unnamed health care professional noted that she could not rouse the decedent. Nothing in the 2-622 report supports any claims based upon any such allegations; therefore, these claims of negligence fail to comply with the statute.

Plaintiff seeks to circumvent this failure by arguing that these are mere legal conclusions, and that the reviewing physician need not report on legal principles. These are not legal conclusions and Plaintiff fails to cite to any authority to suggest that they are. They are separate and independent factual allegations of three additional factual bases for a claim of negligence. The purpose of Section 2-622 is to "reduce the number of frivolous suits that are filed and to eliminate such actions at an early stage." *Mueller*, 701 N.E.2d at 250. Therefore, whenever a claim of negligence is based on medical malpractice, the statute requires a reviewing physician to verify that there is a reasonable and meritorious claim. 735 ILS 5/2-622. Here, there were some acts that constituted alleged negligence which Dr. Buynak verified (though with no detail) were meritorious. He did not say anything, let alone go out on a limb and say there was merit to the claims, about claims based on: failure to hire or supervise, failure to monitor cardio-pulmonary functions, or failure to wake or monitor the decedent. These are not mere legal

12

conclusions as Plaintiff pretends. Rather, Plaintiff is trying to bootstrap or back door claims of negligence based on three separate actions or failure to acts, when there is no reviewing physician willing to sign off on such a claim under Section 2-622. Essentially, plaintiff is arguing that so long as there is a reviewing physician to say some alleged act presents a meritorious claim, then it is open season to attack anything else done by anybody else. If that were the law, Section 2-622 would fail of its gate-keeping function.

## CONCLUSION

For the foregoing reasons, Defendants THE UNIVERSITY OF CHICAGO HOSPITALS and THE UNIVERSITY OF CHICAGO respectfully request that this Court dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and grant such further and additional relief as the Court deems just.

> Respectfully submitted,
> THE UNIVERSITY OF CHICAGO HOSPITALS
> and THE UNIVERSITY OF CHICAGO
>
> By: _____
> One of Their Attorneys

Scott R. Wolfe (ARDC #6230545)
Kevin J. Clancy (ARDC #6217109)
Lowis & Gellen, LLP
200 West Adams Street
Suite 1900
Chicago, Illinois 60606
312-364-2500

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on May 22, 2008, he electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing all counsel of record in this case including the following:

| Counsel for Plaintiff | Counsel for Plaintiff |
|---|---|
| Lawrence Harvey Nemirow<br>**The Law Offices of Lawrence H. Nemirow, APC**<br>5242 Katella Ave<br>Suite 104<br>Los Alamitos, CA 90720<br>562-799-1379<br>Email: nemirow@aol.com | Robert A. Holstein<br>**Holstein Law Offices LLC**<br>19 South LaSalle Street<br>Suite 1500<br>Chicago, IL 60603<br>(312)906-8000<br>Email: holsteinlaw@sbcglobal.net |

*/s/ Kevin J. Clancy*