Lawrence H. Nemirow
5242 Katella Ave., Suite 104
Los Alamitos, CA 90720-2820
Tel. (562) 799-1379
Fax. (562) 799-1377

*Pro Se* for the Estate of Helene S. Nemirow et al

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THE ESTATE OF HELENE S. NEMIROW<br><br>Plaintiff,<br><br>v<br><br>THE UNIVERSITY OF CHICAGO HOSPITALS, an Illinois corporation; THE UNIVERSITY OF CHICAGO, an Illinois not-for-profit corporation; LAKEVIEW NURSING AND REHABILITATION CENTER INC., an Illinois corporation, and DOES 2 through 50, Inclusive<br><br>Defendants. | Civil Action No. 07-CV-6413<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>**MEDICAL MALPRACTICE WRONGFUL DEATH AND SURVIVAL**<br><br>**JURY TRIAL DEMANDED** |

## NATURE OF THE ACTION

1. This action arises as a result of Medical Malpractice which led to the wrongful death of Helene Susan Nemirow.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (a) as the suit involves a controversy between citizens of different states.

3. Venue is properly laid in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 (a) (1) and 28 U.S.C. § 1391 (a) (2) in that at least one of the

1

defendants resides in this district, and a substantial part of the events or ommissions giving rise to this claim occurred in this district.

## PARTIES

4. LAWRENCE H. NEMIROW, the administrator of the Estate of Helene S. Nemirow (hereafter "the deceased"), is duly appointed to act as administrator by the State of New York, is the brother of and is at all times mentioned was a resident of the State of California.

5. Defendant UNIVERSITY OF CHICAGO HOSPITALS (hereinafter "Hospital", at all times mentioned was and is an Illinois corporation, operating in the Northern District of the State of Illinois.

6. Defendant UNIVERSITY OF CHICAGO (hereinafter "University"), at all times mentioned was, and is, an Illinois not-for-profit corporation in the Northern District of the State of Illinois.

7. Defendant LAKEVIEW NURSING AND REHABILITATION CENTER, INC. (Formally Doe 1) (hereafter "Lakeview") is an Illinois Corporation located in the Northern District of Illinois.

8. DOE Defendants 2 through 60, inclusive, are all Illinois residents and are sued herein under fictitious names. Plaintiff is informed and believes, and thereon alleges, that said DOE Defendants are the officers, directors, employers, employees (including but not limited to accountants and other consultants), principals, agents or other representatives of (or acting on behalf of) one or more of the named Defendants, whose individual names and capacities are not currently known to Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this Complaint by inserting said true names and capacities. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named DOE Defendants is in some way responsible for the breaches, acts and occurrences herein alleged, and that Plaintiff's damages were proximately or substantially caused by such DOE Defendants in addition to the named Defendants.

9. Plaintiff is informed and believes, and thereon alleges, that all Defendants herein, and their directors, officers, officials, managers and supervisors are vicariously liable for the breaches, acts and omissions of any and all Defendants named DOE, and were committed within the course and scope of their employment and/or agency, which breaches, acts and omissions are fully set forth herein.

10. Plaintiff is informed and believes, and thereon alleges, that at all times during the breaches, acts and occurrences herein mentioned, each of the Defendants (both named and DOE) was the partner, principal, agent, employer, employee, or other representative of each of the remaining Defendants, and in doing or failing to do the things herein alleged, was acting within the scope and course of such partnership, agency, employment, conspiracy, or other legal relationship, and with the permission, consent and/or ratification of said remaining Defendants.

**BACKGROUND OF THE ALLEGATIONS AGAINST DEFENDANTS HOSPITAL AND UNIVERSITY**

MEDICAL MALPRACTICE/SURVIVAL ACTION AGAINST THE UNIVERSITY OF CHICAGO HOSPITALS AND THE UNIVERSITY OF CHICAGO

11. Plaintiffs reallege and incorporates herein by reference Paragraphs 1 through 10, as if fully set forth herein.

12. There was a physician-patient relationship between the deceased and defendants the UNIVERSITY OF CHICAGO HOSPITALS, and the UNIVERSITY OF CHICAGO.

13. From July 18, 2006 through July 22, 2006, and from August 23, 2006 through September 14, 2006, the deceased was in the exclusive control of the defendants, and each of them, and at no time prior to the events, conduct, activity, care and treatment as herein complained did the defendants, or any one of them, obtain the deceased's knowledgeable, informed consent for the care, treatment or conduct as herein alleged, and that prior to the initiation and or performance of said care, treatment, procedure or conduct, no opportunity was afforded to the deceased herein,

3

SECOND AMENDED COMPLAINT FOR MEDICAL MALPRACTICE AND WRONGFUL DEATH

1  to exercise voluntary, knowledgeable and informed consent to said care, treatment,
2  procedure or conduct.
3      14.  That the treatment performed by defendants, and each of them, and by
4  defendant's employees, and each of them, upon the deceased HELENE NEMIROW,
5  failed to conform to the standard of care both with respect to the care and treatment
6  rendered to the deceased, and with respect to providing the deceased information
7  about the risks and hazards, or other harmful consequences that might follow from the
8  treatment, and diagnosis that defendants, and each of them, planned for the deceased.
9      15.  At all times herein mentioned, the defendant, UNIVERSITY OF CHICAGO
10 HOSPITALS, negligently and carelessly failed to properly ensure the character,
11 quality, ability and competence of individuals, including the remaining defendants,
12 and each of them, treating patients in said hospital and as a proximate result thereof,
13 HELENE NEMIROW, passed away. For a period before the events herein set forth,
14 defendants, and each of them, undertook to and did, treat the deceased and agreed to
15 diagnose such conditions as the deceased might have and to render proper care in
16 respect thereto, and to do all things necessary and proper in connection therewith; and
17 the defendants, and each of them, thereafter entered on such employment individually
18 and by and through their employees, agents and servants.
19     16.  From and after said times, defendants, and each of them so negligently
20 examined the deceased and diagnosed and failed to diagnose her condition and so
21 negligently treated her, and so negligently cared for here while she was in the
22 exclusive control of the defendants, and each of them, and so negligently operated,
23 managed, maintained, selected, designed, controlled, conducted their services,
24 activities, personnel and equipment in connection with the deceased's care and
25 treatment that the same proximately caused the death of HELENE NEMIROW, as
26 alleged herein.
27     17.  The negligent diagnosis and treatment in particular is that although
28 defendant Hospital treated the deceased with antibiotic medications while the decedent

4
SECOND AMENDED COMPLAINT FOR MEDICAL MALPRACTICE AND WRONGFUL DEATH

was under the exclusive care, custody and control of defendant Hospital, the antibiotic medications were not having the desired effect, and defendant Hospital failed to ensure that the medications be changed so that the infection could be properly treated as any prudent health care facility in the Northern District of Illinois would have so done.

18. From and after said times, defendants, and each of them, failed to warn the deceased when she developed an infection while she was in the exclusive control of the defendants, and each of them, that she may be suffering from a life threatening condition, when a reasonably prudent health care provider would have so warned. The absence of this warning served to prevent the deceased from seeking urgent care elsewhere than in the nursing homes she went to between her admissions at defendant Hospital, and the same lack of warning allowed the infection to spread untreated, which proximately led to her death.

19. From and after the time the deceased was readmitted to defendant UNIVERSITY OF CHICAGO HOSPITAL, the deceased's narcotics dosages were not properly monitored or regulated causing her to suffer persistent mental status changes and causing her to remain in a constant stupor. A reasonably prudent health care provider in the Northern District of Illinois would have properly monitored or regulated the dosages. The negligence of defendants, and each of them, in not properly regulating the narcotics dosages was the proximate cause of HELENE NEMIROW's death.

20. From and after the time the decedent was under the exclusive care, custody and control of defendant Hospital, no surgical intervention was performed with regard to the infection, when a reasonably prudent health care provider in the Northern District of Illinois would have performed surgical intervention. The negligence of defendants, and each of them, in not performing surgical intervention was the proximate cause of HELENE NEMIROW's death.

21. From and after the time the decedent was under the exclusive care, custody

and control of defendant Hospital, decedent complained of chest pains, but defendant Hospital failed to properly monitor her cardio-pulmonary status, when a prudent health care provider in the Northern District of Illinois would have so monitored. The negligence of defendants, and each of them, in not monitoring HELENE NEMIROW's cardio-pulmonary status, was the proximate cause of HELENE NEMIROW's death.

22. On the evening of September 14, 2008, a private health care professional informed defendant DOES that are among the class of defendants described above as DOES 2-50, that said health care professional could not rouse the decedent from a deep sleep. Each of the DOES so notified was acting within the course and scope of their agency and employment with defendant UNIVERSITY OF CHICAGO HOSPITALS, and each of them, when the notice was given. None of the DOE defendants so notified checked on this report for over a hour later, when any prudent health care worker in the Northern District of Illinois would have performed a check on their patients' status. When a defendant UNIVERSITY OF CHICAGO HOSPITAL's employee checked on the deceased one hour after the report, the deceased was in cardiac arrest. The delayed response was the proximate cause of HELENE NEMIROW's death.

23. As a direct and proximate result of the negligent acts of commission and/or omission in the treatment of the decedent by defendants Hospital and University, the decedent died from a cardio-pulmonary event, central respiratory failure and sepsis.

24. The damages sought by Plaintiff have a reasonable value of at least $150,000, and the exact amount of Plaintiffs damages will be shown according to proof at the time of trial.

WHEREFORE, Plaintiff brings this cause of action pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against the Hospital and the University for the following:

(a) Compensatory damages in an amount that exceeds $150,000, the exact amount of Plaintiffs damages will be shown according to proof at the time of trial;

(b) Plaintiff's costs of this action; and

(c) Such other and further relief as this Court deems just and appropriate.

## BACKGROUND OF THE ALLEGATIONS AGAINST DEFENDANT LAKEVIEW NURSING AND REHABILITATION CENTER, INC.

### MEDICAL MALPRACTICE/SURVIVAL ACTION AGAINST THE UNIVERSITY OF CHICAGO HOSPITALS AND THE UNIVERSITY OF CHICAGO

25. Plaintiffs reallege and incorporates herein by reference Paragraphs 1 through 10, as if fully set forth herein.

26. There was a nursing home-physician-patient relationship between the deceased and defendant Lakeview Nursing and Rehabilitation Center.

27. From August 2, 2006 through August 23, 2006, the deceased was in the exclusive control of the defendant, and at no time prior to the events, conduct, activity, care and treatment as herein complained did the defendants, obtain the deceased's knowledgeable, informed consent for the care, treatment or conduct as herein alleged, and that prior to the initiation and or performance of said care, treatment, procedure or conduct, no opportunity was afforded to the deceased herein, to exercise voluntary, knowledgeable and informed consent to said care, treatment, procedure or conduct.

28. Plaintiff alleges that shortly after the deceased's admission to defendant's nursing home and rehabilitation center, defendant's physicians, nurses and agents named as Doe defendants herein because Plaintiff has not been able to confirm their names, placed the decedent in a whirlpool bath without first filling the whirlpool with water.

29. Plaintiff alleges that placing the decedent, who was admitted to defendants nursing and rehabilitation center for treatment of open wounds and infections, failed to conform to the standard of care both with respect to the care and treatment rendered to the deceased in her then physical condition, and with respect to not providing the deceased information about the risks and hazards, or other harmful consequences that

SECOND AMENDED COMPLAINT FOR MEDICAL MALPRACTICE AND WRONGFUL DEATH

1 might follow from placing her in a whirlpool without filling the whirlpool first with
2 water.

3    30. By its negligent action of not filling the whirlpool with water, the
4 defendant, LAKEVIEW NURSING AND REHABILITATION CENTER, INC., and
5 its agents and employees negligently and carelessly and proximately caused the
6 deceased to suffer new bedsores which developed into a new MSRA infection and
7 worsened the infections she already had, with ultimately led to cardiac arrest and
8 death.

9    31. From and after said times, defendants, and each of them so negligently
10 failed to diagnose her new condition and so negligently treated her, and so negligently
11 cared for here while she was in the exclusive control of the defendant, and so
12 negligently operated, managed, maintained, selected, designed, controlled, conducted
13 their services, activities, personnel and equipment in connection with the deceased's
14 care and treatment that the same proximately contributed to or caused the death of the
15 deceased HELENE NEMIROW as alleged herein.

16    32. The negligent treatment in particular after causing the new bed sores are
17 that although defendant Lakeview treated the deceased with antibiotic medications
18 while the decedent was under the exclusive care, custody and control of defendant
19 Lakeview, the deceased white blood count significantly increased. The Standard of
20 care if the antibiotic medications were not having the desired effect, was to ensure that
21 the medications be changed so that the infection could be properly treated as any
22 prudent health care facility in the Northern District of Illinois would have so done, or
23 that the deceased be sent back to the hospital for further treatment sooner than
24 defendant discharged the deceased. Plaintiff alleges that had defendant Lakeview
25 either changed the medications or discharged the deceased back to the hospital for
26 proper treatment, the deceased would have been alive today.

27    33. From and after the development of the new MSRA infection and the
28 aggravation of the existing infection, defendant Lakeview failed to warn the deceased

that she may be suffering from a life threatening condition, when a reasonably prudent health care provider would have so warned. The absence of this warning served to prevent the deceased from seeking urgent care elsewhere than at defendant Lakeview, and the same lack of warning allowed the infections to be properly untreated, which proximately led to her death.

34.  As a direct and proximate and contributing result of the negligent acts of commission and/or omission in the treatment of the decedent by defendant Lakeview, the decedent died from a cardio-pulmonary event, central respiratory failure and sepsis.

35.  The damages sought by Plaintiff have a reasonable value of at least $150,000, and the exact amount of Plaintiffs damages will be shown according to proof at the time of trial.

**WHEREFORE**, Plaintiff brings this cause of action pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act, and demands judgment against defendant Lakeview Nursing and Rehabilitation Center, Inc. for :

(a)  Compensatory damages in an amount that exceeds $150,000, the exact amount of Plaintiffs damages will be shown according to proof at the time of trial;

(b)  Plaintiff's costs of this action; and

(c)  Such other and further relief as this Court deems just and appropriate.

September 6, 2008

By _/s/ Lawrence H. Nemirow_
LAWRENCE H. NEMIROW
Attorney for the Estate
of HELENE S. NEMIROW

DECLARATION UNDER ILLINOIS STATUTES 735 ILCS 5/2-622

I, Lawrence H. Nemirow declare as follows:

1. I have consulted and reviewed the facts of the allegations against University of Chicago Hospitals and The University of Chicago filed in the First Amended Complaint and attached the identical Declaration Under Illinois Statutes 735 ILCS 5/2-622 that is attached to this Second Amended Complaint with a health care professional except for this revised paragraph 1.

2. I reasonably believe that said health care professional:
   a) Is knowledgeable in the relevant issues involved in this particular action; and,
   b) Practices or has practiced within the last 5 years or has taught with the last 5 years in the same area of health care or medicine that is in issue in this particular action; and
   c) Meets the expert witness standards set forth in paragraphs (a) through (d) of Section 8-2501;
   d) That the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in this particular action that there is a reasonable and Meritorious cause for the filing of this action; and
   e) I have concluded on the basis of the health professional's review and consultation that there is a reasonable and meritorious cause for filing of such action.
   (f) I am attaching a copy of Dr. Buynak's written report, clearly identifying The name of the deceased and the reasons for his determination that a reasonable and meritorious cause for the filing of this action exists; and
   (g) I am attaching a copy of Dr. Buynak's CV including his Indiana License Number.

1  I declare under penalty of perjury under the laws of the States of California and
2  Illinois, and the United States of America that the foregoing is true and correct.
3  Executed in Los Alamitos California on September 6, 2008

By _____
LAWRENCE H. NEMIROW
Attorney for the Estate of
Helene S. Nemirow

SECOND AMENDED COMPLAINT FOR MEDICAL MALPRACTICE AND WRONGFUL DEATH

Physician's Report and Certificate of Medical malpractice:

Re: Helene Nemirow (deceased)

I certify as follows;

I am licensed to practice medicine in all of its branches in the State of Indiana. I am board certified in internal medicine. I am familiar with the issues of care and treatment involved herein. I devote 75% of the time, that I spend in either medical practice or in teaching, to the type of medicine at issue herein, and I have familiarity with the standard of care in the State of Illinois on the matters at issue herein. I am qualified by experience, education and training with the standard of care, methods, procedures and treatments relevant to the allegations at issue in this case, and I have practiced or taught in this field within the past five years. I have read and I am familiar with the relevant medical records, the representations of counsel and/or facts herein, and for the reasons set forth herein below, I hold the opinion to a reasonable degree of medical certainty that the defendant, University of Chicago, by and through the actions of its agents, deviated from the applicable standard of care in this matter in July and August, 2006. The deviation(s) by all defendants below proximately caused or contributed to the plaintiff's death and accordingly a reasonable and meritorious basis for suit exists.

The decedent suffered from a condition known as neurofibromatosis which is characterized in part by scattered skin growths. She was intending to have plastic surgery on some of this. She also suffered from a bleeding diathesis of unknown etiology. She did suffer a bleed into one of the skin lesions secondary to handling by defendant. This then became an infected hematoma. The records clearly indicate by multiple treaters that the infection existed but the manner in which the infection was treated is the basis for this suit. In essence the infection was treated by the defendant by the use of antibiotic medications which were not having the desired effect however. When the matter did not clear up the defendant continued to use antibiotics and refused to admit her into the hospital for closer monitoring in the face of unending fever, lower extremity and back pain and high white cell count. At no time was there any surgical intervention for the infection. When she was finally admitted into the hospital her narcotics dosages were not properly regulated as she exhibited persistent mental status changes. Ultimately she died from a cardio-pulmonary event, central respiratory failure and sepsis secondary to all of the above negligent acts of commission and/or omission acting either in singularity or in combination with each other.

The University of Chicago emergency room staff also participated in her care during the times aforesaid and they also refused to admit her into the hospital for the care set forth above but instead discharged her to a nursing care facility. Neither defendant warned plaintiff that she may be suffering from a life threatening condition when a reasonably prudent health care provider would have so warned. The absence of this warning served to prevent decedent from seeking urgent care elsewhere by depriving her of the knowledge of the dangerous and serious nature of her condition of ill being.

Robert Buynak, M.D.

*[signature]*

02/19/08

# Robert J. Buynak, MD, FACP
## Board Certified, Internal Medicine

Northwest Indiana Center for Clinical Research
150 W. Lincolnway
Suite 2004
Valparaiso, IN 46383
(219) 464-8302
Fax (219) 531-1825
rbuynak@att.net

License Number 01048425B

## EMPLOYMENT

| | |
|---|---|
| **-Indiana University School of Medicine**<br>Clinical Instructor of Medicine | Sept, 1999-Present |
| **-Northwest Indiana Center for Clinical Research**<br>Founder and President | Oct, 2004-Present |
| **-Hilltop Community Health Center**<br>Director, Internal Medicine<br>Hospitalist | June 2005-Present |
| **-Portage Medical Group**<br>Private Practice | July, 1998-May 2005 |
| Chief of Medicine, Porter Memorial Hospital | 2001-2002 |
| *-Patient Care*, **Medical Journal**<br>Board of Editors | Sept, 1999-Present |

## EDUCATION

| | |
|---|---|
| **Mayo Clinic**<br>Internal Medicine Internship and Residency | July, 1995-July, 1998 |
| **Harvard Medical School**<br>Doctor of Medicine (MD) | Aug, 1991- May, 1995 |
| **University of Notre Dame**<br>Bachelor of Science, Biological Sciences | Aug, 1987-May 1991 |

## HONORS and AWARDS

-Fellow, American College of Physicians (FACP) 2004
-Porter County VNA Physician of the Year, 2004
-Valedictorian, University of Notre Dame Class of 1991
-*Phi Beta Kappa, Alpha Epsilon Delta*

## PUBLICATIONS

- Buynak RJ. *Diabetes 1-2-3, A Simplified Guide to Managing Type 2 Diabetes*, American Diabetes Association (Manuscript approved, Publication Date February 2006)
- Buynak RJ. The Role of Primary Care in Bariatric Procedures. *Patient Care*, 2005: 39:7.
- Issue Editor, Special Focus on Neurology, *Patient Care*, 2002:7:4.
- Buynak RJ and Evans JM. Influenza in the Nursing Home: Prevention and Treatment. *Nursing Home Medicine* 1996;4:319-324.
- Buynak RJ and Winter HS. Acquired Immunodeficiency Syndrome and Gastrointestinal Immune Function. *Curr Opin Gastroenterology* 1992;8:1010-1014.

## PRESENTATIONS

-Keynote Speaker, Indiana Chapter ACP State Meeting Nov. 2003
-Update in Medicine, Indiana Chapter ACP State Meeting Nov. 2002

## CLINICAL RESEARCH PROJECTS

-"Randomized, Open-Label, Multicenter Trial of the Safety and Effectiveness of Oral Telithromycin (Ketek) and Amoxicillin/Clavulanic Acid (Augmentin) in Outpatients With Respiratory Tract Infections in Usual Care Settings. Protocol# HMR3647A/3014. Aventis."

-A Multicenter, Open-Label, Crossover Study Comparing Maxalt (Rizatriptan Benzoate) with Usual Care Oral Migraine Medications. Protocol # SAIRB-02-0021. Merck."

-"REACH (REduction of Atherothrombosis for Continued Health) Registry, Sanofi."

-Impact of Point-of-Care Vs. Laboratory Testing of Hemoglobin A1C (HBA1C), and Intense Vs. Standard Monitoring of Titration Algorithm Adherence on Glycemic Control in Type 2 Diabetes Subjects, Who Are Inadequately Controlled on Oral Anti-Hyperglycemic Therapy, And Starting Lantus (Insulin Glargine Injection): A 2x2, Randomized, Open-Label Trial. Protocol # HOE-901-4033, Aventis."

-"TREAT (Trial to Reduce Cardiovascular Events with Aranesp Therapy) Protocol # 20010184 Amgen."

-"JUPITER (Justification for the Use of statins in Primary prevention: an Intervention Trial Evaluating Rosuvastatin) Randomized, Double-Blind, Placebo-Controlled, Multicenter Phase III Study of Rosuvastatin (Crestor) 20mg in the Primary prevention of Cardiovascular Events Among Subjects with Low Levels of LDL-

Cholesterol and Elevated Levels of C-Reactive Protein. Protocol #4522US/0011AstraZeneca."

-"Randomized, Open-Label Study to Assess the Safety of Epoetin Alfa Manufactured by Deep Tank Technology and Epoetin Alfa Manufactured by Roller Bottle Technology in Subjects with Chronic Kidney Disease Not on Dialysis. Protocol # 20040259. Amgen."

-"Randomized, Multicenter, Double-Blind, Placebo-Controlled, Single Dose Comparison of the Analgesic Activity of HKT-500 and Placebo in Subjects with Shoulder Pain. Protocol    # HKT-500-US03. Hisamitsu."

-"Randomized, Multicenter, Double-Blind, Placebo-Controlled, Two-Week Study to Assess the Safety and Efficacy with Pain from Moderate Lateral Epicondylitis. Protocol# HKT-500-US-05.Hisamitsu."

-"Randomized, Multicenter, Double-Blind, Placebo-Controlled, Two-Week Study to Assess the Safety and Efficacy of HKT-500 in Subjects with Low Back Pain. Protocol# HKT-500-US-04.Hisamitsu."

-"An Open-Label Safety Study with the Intermittent Use of HKT-500 in Subjects with Lower Back Pain, Pain From Osteoarthritis of the Knee, Shoulder Pain or Lateral Epicondylitis Pain.
 Protocol# HKT-500-US-06.Hisamitsu."

-" A Double-Blind, Randomized, Placebo-Controlled Study to Evaluate the Efficacy and Safety of Oravescent Fentanyl Citrate for the Management of Breakthrough Pain in Opiod-Tolerant Patients With Chronic Neuropathic Pain.
Protocol # C25608/3041/BP/US Cephalon."

-" A Double-Blind, Randomized, Placebo-Controlled Study to Evaluate the Efficacy and Safety of Oravescent Fentanyl Citrate for Pain Management of Breakthrough Pain in Opiod-Tolerant Patients with Chronic Low Back Pain.
Protocol # C25608/3042/BP/US Cephalon."

-"A Multi-centre, Double-blind, Randomized-withdrawal, Parallel-group, Placebo-controlled Phase III Study of the Efficacy and Safety of Quetiapine Fumarate Sustained Release (SEROQUEL SR) as Monotherapy in the Maintenance Treatment of Patients with Major Depressive Disorder Following an Open-Label Stabilization Period (AMETHYST STUDY)"

-"Protocol CV181013:  A Multicenter, Randomized, Double-Blind, Placebo Controlled, Phase 3 Trial to Evaluate the Efficacy and Safety of Saxagliptin (BMS-477118)  In Combination with Thiazolidinedione Therapy in Subjects with Type 2 Diabetes Who Have Inadequate Glycemic Control on Thiazolidenedione Therapy Alone"

-"A double-blind, randomized study to evaluate the efficacy and safety of TAK-475 50 mg, 100 mg or placebo when co-administered with rosuvastatin (10 mg or 20 mg) in subjects with primary hypercholesterolemia."

-"A randomized double-blind, double-dummy, placebo-controlled, 3x4 factorial design trial to evaluate telmisartan 20 and 80 mg tablets in combination with ramipril 1.25, 10, and 20 mg capsules after eight weeks of treatment in patients with State I or II hypertension, with an ABPM sub-study. Clinical Phase III."

## ACTIVITIES

- Chairman, Porter Memorial Hospital Diabetes Advisory Committee
- Chairman, Porter Memorial Hospital CME Committee
- Founding Member, Life Teen Program, St. Paul Church
- School Board Member, St. Paul School

DECLARATION UNDER ILLINOIS STATUTES 735 ILCS 5/2-622

I, Lawrence H. Nemirow declare as follows:

1. I have consulted and reviewed the facts of the allegations against Lakeview Nursing and Rehabilitation Center, Inc. in this Second Amended Complaint with a health care professional.

2. I reasonably believe that said health care professional:

   a) Is knowledgeable in the relevant issues involved in this particular action; and,

   b) Practices or has practiced within the last 6 years or has taught with the last 6 years in the same area of health care or medicine that is in issue in this particular action; and

   c) Is qualified by experience or demonstrated competence in the subject of this case.

3. The health care professional has determined in a written report (attached), that after review of the medical record and other relevant material involved in this particular action against Lakeview Nursing and Rehabilitation Center that there is a reasonable and meritorious cause for the filing of such action.

I declare under penalty of perjury under the laws of the States of California and Illinois, and the United States of America that the foregoing is true and correct. Executed in Los Alamitos California on September 6, 2008

By _____
LAWRENCE H. NEMIROW
Attorney for the Estate of
Helene S. Nemirow

12
SECOND AMENDED COMPLAINT FOR MEDICAL MALPRACTICE AND WRONGFUL DEATH

Physician's Report and Certificate of Medical malpractice:

Re: Helene Nemirow (deceased)

I certify as follows;

    I am licensed to practice medicine in all of its branches in the State of Indiana. I am board certified in internal medicine. I am familiar with the issues of care and treatment involved herein. I devote 75% of the time, that I spend in either medical practice or in teaching, to the type of medicine at issue herein, and I have familiarity with the standard of care in the State of Illinois on the matters at issue herein. I am qualified by experience, education and training with the standard of care, methods, procedures and treatments relevant to the allegations at issue in this case, and I have practiced or taught in this field within the past five years. I have read and I am familiar with the relevant medical records, the representations of counsel and/or facts herein, and for the reasons set forth herein below, I hold the opinion to a reasonable degree of medical certainty that the defendant, Lake View Nursing Home deviated from the applicable standard of care in this matter in August, 2006. The deviation(s) by this defendants proximately caused or contributed to the plaintiff's death and accordingly a reasonable and meritorious basis for suit exists.

    The decedent was receiving care at the defendant's Home for skin infections. During her stay at the nursing home she was injured in the whirlpool tub where she actually sustained further injury and infection. Her general condition and skin infections worsened at the Home and there was a negligent failure of the Home to timely cause appropriate treatment to be rendered for the infection and the aggravation of same. As a result of the foregoing she died of systemic complications of organ failure and cardiopulmonary arrest related to the infection soon thereafter.

Robert Buynak, M.D.

## CERTIFICATE OF SERVICE

The Undersigned, an attorney appearing Pro Hac Vice on behalf of the Plaintiff, The Estate of Helene S. Nemirow, certifies that on September 8, 2008, he electronically filed the foregoing document titled Second Amended Complaint (2) with the clerk of the court using the CM/ECF system which will send notification of such filing to all counsel of record in this case including the following:

| LOCAL ATTORNEY FOR PLAINTIFF | ATTORNEYS FOR DEFENDANTS |
|---|---|
| **Robert A. Holstein**<br>Holstein Law Offices, LLC<br>19 South LaSalle Street, Suite 1500<br>Chicago, Illinois 60603 | **Kevin J. Clancy**<br>**Scott Russell Wolfe**<br>Lowis & Gellen, LLP<br>200 West Adams Street, Suite 1900<br>Chicago, Illinois 60606<br>Representing University of Chicago Hospitals |

*[signature]*

Lawrence H. Nemirow,
Attorney for The Estate of Helene S. Nemirow