UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF HELENE S. NEMIROW | ) | |
| by the estate administrator | ) | |
| LAWRENCE H. NEMIROW, | ) | |
| | ) | No. 07 C 6413 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge George M. Marovich |
| | ) | |
| THE UNIVERSITY OF CHICAGO | ) | |
| HOSPITALS, THE UNIVERSITY | ) | |
| OF CHICAGO, and DOES 1-50, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Estate of Helene S. Nemirow ("Nemirow") by estate administrator Lawrence H. Nemirow filed a first amended complaint for medical negligence against defendants McKay McKinnon, M.D. ("Dr. McKinnon"), the University of Chicago Hospitals, the University of Chicago and Does 1-50. Plaintiff has voluntarily dismissed the claims against Dr. McKay McKinnon. The University of Chicago Hospitals (the "Hospital") and the University of Chicago have filed a motion to dismiss plaintiff's first amended complaint. For the reasons set forth below, the Court denies the motion to dismiss.

**I.  Background**

For purposes of a motion to dismiss, the Court takes as true the allegations in plaintiff's complaint.

Nemirow sought treatment at the University of Chicago Hospitals because she wanted to have excess skins growths removed. On July 19, 2006, she consulted with Dr. McKinnon, who was the Chief of the Plastics Department at the Hospital. Dr. McKinnon "performed a rough

examination" on Nemirow that caused Nemirow to develop a hematoma. The hematoma became infected. Nemirow seems to have stayed at the Hospital until July 22, 2006, when she was discharged to Warren Barr Pavilion nursing home for treatment of the infection. Nemirow stayed at Warren Barr Pavilion until August 1, 2006, when Warren Barr discharged her.

Nemirow returned to the University of Chicago Hospital emergency room the same day. She had an elevated white blood cell count. Nemirow spent 24 hours at the University of Chicago Hospital emergency room, but the Hospital refused to admit her.

From August 2, 2006 until August 23, 2006, Nemirow was treated at the Lakeview Nursing Home. The Lakeview Nursing Home treated Nemirow for an open wound at the site of the hematoma and for infection. Lakeview Nursing Home discharged Nemirow on August 23, 2006.

That same day, Nemirow returned to the University of Chicago Hospital, where she remained until her death on September 14, 2006. Plaintiff alleges that defendants' treatment of Nemirow failed to conform to the standard of care. Specifically, plaintiff alleges that defendants failed to change the antibiotics they prescribed Nemirow when the antibiotics they had prescribed failed to have the desired effect. Plaintiff alleges that defendants failed to monitor properly Nemirow's narcotics doses. Plaintiff alleges that defendants failed to perform a surgical intervention with respect to Nemirow's infected hematoma. Plaintiff alleges that defendants failed to monitor Nemirow's cardio-pulmonary status. Plaintiff further alleges that these failures proximately caused Nemirow's death. Plaintiff alleges that the University of Chicago and the University of Chicago Hospitals are vicariously liable for the failures of their employees.

When plaintiff filed the first amended complaint, it attached a physician's report and certificate of medical malpractice. The report states:

I certify as follows:

I am licensed to practice medicine in all of its branches in the State of Indiana. I am board certified in internal medicine. I am familiar with the issues of care and treatment involved herein. I devote 75% of the time, that I spend in either medical practice or in teaching, to the type of medicine at issue herein, and I have familiarity with the standard of care in Illinois on the matters at issue herein. I am qualified by experience, education and training with the standard of care, methods, procedures and treatments relevant to the allegations at issue in this case, and I have practiced or taught in this field within the past five years. I have read and I am familiar with the relevant Medical records, the representations of counsel and/or facts herein, and for the reasons set forth herein below, I hold the opinion to a reasonable degree of medical certainty that the defendant, University of Chicago, by and through the actions of its agents, deviated from the applicable standard of care in this matter in July and August, 2006. The deviation(s) by all defendants below proximately caused or contributed to the plaintiff's death and accordingly a reasonable and meritorious basis for suit exists.

The decedent suffered from a condition known as neurofibromatosis which is characterized in part by scattered skin growths. She was intending to have plastic surgery on some of this. She also suffered from a bleeding diathesis of unknown etiology. She did suffer a bleed into one of the skin lesions secondary to handling by defendant. This then became an infected hematoma. The records clearly indicate by multiple treaters that the infection existed but the manner in which the infection was treated is the basis for this suit. In essence the infection was treated by the defendant by the use of antibiotic medications which were not having the desired effect however. When the matter did not clear up the defendants continued to use antibiotics and refused to admit her into the hospital for closer monitoring in the face of unending fever, lower extremity and back pain and high white cell count. At no time was there any surgical intervention for the infection. When she was finally admitted into the hospital her narcotics dosages were not properly regulated as she exhibited persistent mental status changes. Ultimately she died from a cardio-pulmonary event, central respiratory failure and sepsis secondary to all of the above negligent acts of commission and/or omission acting either in singularity or in combination with each other.

The University of Chicago emergency room staff also participated in her care during the times aforesaid and they also refused to admit her into the hospital for the care set forth above but instead discharged her to a nursing care facility. Neither defendant warned plaintiff that she may be suffering from a life threatening condition when a reasonably prudent health care provider would have so warned. The absence of this warning served to prevent decedent from seeking urgent care elsewhere by depriving her of the knowledge of the dangerous and serious nature of her condition of ill being.

Robert Buynak, M.D.

Defendants University of Chicago Hospitals and the University of Chicago move to dismiss plaintiff's claims on the grounds that plaintiff's physician report fails to meet the requirements of 735 ILCS 5-2/622 and that plaintiff's first amended complaint fails to state a claim upon which relief may be granted.

## II. Standard on a motion to dismiss

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiffs' favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombley*, 127 S.Ct. at 1964-1965. A complaint must include enough factual allegations to "raise a right to relief above a speculative level." *Twombley*, 127 S.Ct. at 1965. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Not all claims require the same level of detail in order to be considered plausible. *See Tamayo*, 526 F.3d at 1083. The Seventh Circuit noted, as an example, that "[t]o survive dismissal at [the 12(b)(6)]

stage, the complaint need not state the respects in which the defendant was alleged to be negligent (i.e., driving too fast, driving drunk, etc.), although such specificity certainly would be required at the summary judgment stage." *Tamayo*, 526 F.3d at 1084-1085.

### III. Discussion

#### A. Plaintiff's physician's report

"To minimize frivolous malpractice suits, Illinois law requires the plaintiff to file a physician's certificate of merit and accompanying report with every malpractice complaint." *Sherrod v. Lingle, RN*, 223 F.3d 605, 613 (7th Cir. 2000). Section 5/2-622 of Chapter 735 of the Illinois Compiled Statutes sets out the requirements for the physician's report:

> A single written report must be filed to cover each defendant in the action. As to defendants who are individuals, the written report must be from a health professional licensed in the same profession, with the same class of license, as the defendant. For written reports filed as to all other defendants, who are not individuals, the written report must be from a physician licensed to practice medicine in all its branches who is qualified by experience with the standard of care, methods, procedures and treatments relevant to the allegations at issue in the case. In either event, the written report must identify the profession of the reviewing health professional. A copy of the written report, clearly identifying the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for filing the action exists . . . must be attached.

735 ILCS 5/2-622(a)(1). The statute further provides that the failure to file the report in compliance with the statute is grounds for dismissal. *See* 735 ILCS 5/2-622(g). Courts are to "liberally construe certificates of merit in favor of the plaintiff [because] the statute [is] a tool to reduce frivolous lawsuits by requiring a minimum amount of merit, not a likelihood of success." *Sherrod*, 223 F.3d at 613.

The requirements of §2-622 have been applied in federal court, and neither party argues that it is a procedural requirement inapplicable to claims in federal court. *See Sherrod*, 223 F.3d

at 613-614 (applying statute to claim in federal court); *Maldonado v. Sinai Medical Group, Inc.*, Case No. 06 C 4149, 2008 WL 161671 at *4 (N.D. Ill. Jan. 16, 2008).

Defendants argue that the physician's report is insufficient because the physician, Dr. Buynak, is not, according to defendants, qualified to evaluate whether one needs surgery and whether particular drugs should have been prescribed. The Court disagrees that such a showing is necessary at this stage. The statute explicitly requires, with respect to defendants who are not individuals, that the physician "be licensed to practice medicine in all its branches . . ." 735 ILCS 5/2-622(a)(1). These defendants are not individuals, and Dr. Buynak's report states that he is a physician licensed to practice medicine in all its branches. This is a motion to dismiss, not a motion to exclude the testimony of an expert witness. Dr. Buynak's statement suffices at this time.

Next, defendants argue that the physician's report is insufficient because it fails to adequately describe defendants' failures with respect to Nemirow's treatment and fails to say which individual's actions were deficient. "A medical report sufficiently justifies that a malpractice case is meritorious if it articulates 'the deficiencies in the medical care provided by the defendants which give rise to the plaintiff's cause of action." *Maldonado*, 2008 WL 161671 at *4 (finding a report sufficient where it set out "both the failure of Maldonado's doctors (they did not investigate the spinal damage) and what they should have done (diagnose osteomyelitis)."); *Hagood v. O'Conner*, 519 N.E.2d 66, 70 (Ill.App.Ct. 1988) (report sufficient where report (a) discussed inadequacy of antibiotic treatment, delay in performing tests and misinterpretation of result and (b) concluded that if the proper antibiotics had been used, amputation would not have been necessary.).

In his report, Dr. Buynak stated that "I hold the opinion to a reasonable degree of medical certainty that the defendant, University of Chicago, by and through the actions of its agents, deviated from the applicable standard of care in this matter in July and August, 2006. The deviation(s) by all defendants below proximately caused or contributed to the plaintiff's death and accordingly a reasonable and meritorious basis for suit exists." The report goes on to describe that the antibiotics prescribed to treat Nemirow's infection were not effective and that surgery was never attempted. The report suggests that if defendants had accepted Nemirow into their care sooner or had attempted treatments beyond antibiotics, Nemirow might have had a better outcome.

This is a close call. The report is not a model of clarity or precision. It is not a treatise on Nemirow's medical problems or the proper treatment thereof. The Court, however, is mindful of the fact that the statute exists to deter frivolous suits rather than to require a plaintiff to establish the merits of her suit at the pleading stage. Accordingly, the Court concludes that the report adequately describes the physician's reasons for his conclusion that plaintiff has a meritorious cause of action. Furthermore, the Court is less troubled than are defendants about the fact that the physician's report fails to list the individuals who treated Nemirow at the University of Chicago. The naming of individuals is important where the defendants are individuals. Here, however, plaintiff alleges that the care providers were employed by defendants and that defendants are vicariously liable. So the names of the individual care givers was not relevant to the physician's assessment of whether plaintiff's claim is meritorious. Accordingly, the Court concludes that the physician's report is sufficient to withstand a motion to dismiss.

### B. Failure to state claim

Next, defendants argue that plaintiff's first amended complaint should be dismissed for failure to state a claim upon which relief may be granted. The Court disagrees.

Neither party recognized the proper standard for dismissing claim for failure to state a claim. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Not all claims require the same level of detail in order to be considered plausible. *See Tamayo*, 526 F.3d at 1083. The Seventh Circuit noted, as an example, that "[t]o survive dismissal at [the 12(b)(6)] stage, the complaint need not state the respects in which the defendant was alleged to be negligent (i.e., driving too fast, driving drunk, etc.), although such specificity certainly would be required at the summary judgment stage." *Tamayo*, 526 F.3d at 1084-1085.

To establish a claim of medical malpractice, plaintiff will have to prove (1) the proper standard of care; (2) an unskilled or negligent failure to comply with the appropriate standard; and (3) a resulting injury proximately caused by the failure of skill or care. *Wipf v. Kowalski*, 519 F.3d 380, 384 (7th Cir. 2008). The Court finds that the plaintiff has asserted sufficient facts to withstand a motion to dismiss for failure to state a claim. Among other things, plaintiff alleges that defendants' treatment of Nemirow failed to conform to the standard of care and proximately caused her death. Specifically, plaintiff alleges that defendants failed to change the antibiotics they prescribed Nemirow when the antibiotics they had prescribed failed to have the

desired effect.  Plaintiff alleges that defendants failed to perform a surgical intervention with respect to Nemirow's infected hematoma.  Plaintiff alleges that defendants failed to monitor properly Nemirow's narcotics doses and her cardio-pulmonary status.  Plaintiff further alleges that these failures proximately caused Nemirow's death.  Plaintiff alleges that the University of Chicago and the University of Chicago Hospitals are vicariously liable for the failures of their employees.

Plaintiff has sufficiently stated a claim, and the Court will not dismiss the first amended complaint on that basis.  Defendants' motion to dismiss is denied.

## IV.  Conclusion

For the reasons set forth above, the Court denies defendants' motion to dismiss.

ENTER:

/s/ George M. Marovich
George M. Marovich
United States District Judge

DATED: October 7, 2008